UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                        :
UNITED STATES OF AMERICA                :
                                        :
        against                         :
                                        :        08 CR 214 (KMK)
PETER AREST,                            :
                                        :
                Defendant.              :
                                        :
-------------------------------------------------------x

---

## SENTENCING MEMORANDUM SUBMITTED
## ON BEHALF OF PETER AREST

---

MORVILLO, ABRAMOWITZ, GRAND,
  IASON, ANELLO & BOHRER, P.C.
Attorneys for Defendant Peter Arest
565 Fifth Avenue
New York, New York 10017
(212) 856-9600

Of Counsel:

John J. Tigue, Jr.
Barbara L. Trencher

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

I.        PERSONAL HISTORY .......................................................... 2

    A.    Peter's Family Background........................................................... 2

    B.    Peter Becomes a Social Worker for Troubled Teens ...................................... 3

    C.    Peter Arest Marries, Re-enters the Business World and Starts a Family ......... 6

    D.    Peter Enters the Hotel Business ................................................ 7

        1.    Peter's Work at the Roger Williams Hotel and his Support of the American Red Cross Family Respite Center ...................................... 7

        2.    Peter and His Partners Purchase and Revitalize the Hotel Metro and With Their Success are Able to Invest in Additional Hotels ........ 8

    E.    The Critical Role Peter Plays With Respect to His Employees........................ 9

    F.    The Role Peter Plays in His Family and Caring for His Elderly Mother and In-Laws ............................................................................... 14

        1.    Peter's Relationship with His Children and Extended Family .......... 14

        2.    Peter's Devoted Care for His Elderly Mother and In-Laws .............. 16

    G.    Peter Arest's Charitable and Community Work ............................................ 19

II.       THE OFFENSE AND PETER'S ACCEPTANCE OF RESPONSIBILITY ....... 24

III.      SENTENCING CONSIDERATIONS ................................................. 26

    A.    Peter's Personal Characteristics, Including His Family Circumstances and Contributions to the Community, Warrant a Non-Guidelines, Non-Custodial Sentence.................................................................. 28

        1.    Peter's Life of Good Works Justifies a Non-Guidelines, Non-Custodial Sentence.................................................................. 28

        2.    The Critical Role that Peter Plays in Caring for His Mother and His Employees Justifies a Non-Guidelines, Non-Custodial Sentence.................................................................. 31

B.    A Non-Guidelines, Non-Custodial Sentence Is Available and
      Appropriate ................................................................................................. 33

CONCLUSION .................................................................................................................. 35

## PRELIMINARY STATEMENT

This memorandum is submitted on behalf of Peter Arest in connection with his sentencing scheduled for July 18, 2008.  The purpose of this memorandum is to present to the Court the factors we believe are of primary importance in determining a just and fair sentence.

On March 18, 2008, Mr. Arest entered a plea of guilty to a one count information. The information charged him with failing to report income, and thereby evading a substantial part of the taxes due and owing by him for the tax years 2001 and 2002, in violation of section 7201 of Title 26 of the United States Code.  The total maximum sentence of incarceration on this count is five years.  Based on his offense conduct, the initial Presentence Investigation Report ("PSR") identifies the applicable Sentencing Guidelines range as 10 to 16 months, with the possibility of a portion of that term being served through home confinement.[1]  We submit that based on the facts discussed below, and particularly Peter's substantial contributions to the community as well as the critical role he plays in caring for his family and his unique skill set that qualifies him to provide truly meaningful community service, the Court should exercise leniency in sentencing Peter, and should sentence him to a period of home confinement and community service.

We have received dozens of letters on Peter's behalf in connection with his sentencing.[2]  These letters, written by family members, friends, colleagues and employees of Peter, demonstrate that Peter is a remorseful man who, aside from his offense conduct, has led a lawful, kind and charitable life.  These letters also serve to demonstrate that Peter's conduct in connection with this offense was an anomaly, and inconsistent with his life of good deeds.[3]

---

[1] See PSR ¶¶ 72-73.

[2] Letters submitted in support of this memorandum are annexed as Appendix A and cited as "Ex. _ to Appx. A."

[3] See PSR ¶¶ 40-42.

Simply stated, Peter's actions in this case were the result of a serious lapse in judgment, and were in contrast to the life that he has led as a model father, husband and member of the community.

Nothing excuses the conduct that led to the plea in this case. Peter accepts full responsibility for his offense. He understands the impact his conduct has had on the government, his loved ones and employees, and he feels shame from the simple fact that he violated the law. Since pleading guilty, he has made every effort to correct his conduct, filing amended tax returns and paying the taxes due and owing, and agreeing to pay the related civil fraud penalty.

In light of the foregoing considerations, we respectfully submit that the Court should exercise leniency in sentencing Peter Arest, and should sentence him to a term of home confinement and community service. We respectfully submit that under the circumstances here such a sentence meets precisely the mandate of section 3553(a) and the ABA policy statements related to sentencing.

## I.    PERSONAL HISTORY

### A.    <u>Peter's Family Background</u>

Peter was born on January 29, 1946, in Jamaica Queens, the younger of two brothers. The family into which Mr. Arest was born was not wealthy. To the contrary, Peter's parents both worked long hours and struggled to support their children. Thus, at the time of Peter's birth, his father, James Arest was in the Merchant Marines, and he subsequently worked in concession stands in drive-in movie theaters, roller rinks and beach clubs, selling hotdogs, hamburgers and sodas.

Peter's mother, Lily Arest, grew up during the depression and worked at the Western Union as a telegraph operator in order to help support her family; she put some of her

brothers and sisters through school, including putting one of her brothers through medical school.  After marrying James Arest and giving birth to her sons, Jeffrey and Peter Arest, she continued to work, assisting her husband in running the drive-in and beach club concession stands.

From his parents, Peter inherited the entrepreneurial spirit and learned the importance of hard work.  As a child, he worked at the concession stands during the summer, watching his father and developing business skills and instincts.  In particular, Peter learned from his father the importance of treating employees well.

In 1963, Peter graduated from Herricks High School in New Hyde Park, New York.  Thereafter, he attended American University in Washington, D.C. for one semester and then took classes at Hofstra University in Hempstead, New York.  In 1964, Peter moved to California and attended college in the California state system.  Because his parents were unable to pay for Peter's higher education, Peter worked and struggled to put himself through school.  Unable to balance school and work, in 1966, Peter left school and opened a Jewish delicatessen restaurant in the San Fernando Valley.

### B.   Peter Becomes a Social Worker for Troubled Teens

While Peter was living and working in California, his brother and sister-in-law, Jeffrey and Marsha Arest, were running a group home in Queens, New York, for emotionally disturbed teenagers.  They served as surrogate parents for the teens, living with them full-time while also maintaining full-time jobs.

In 1970, Jeffrey and Marsha planned a two week vacation to Spain.  Because the program was designed to provide stability for the teens, Jeffrey and Marsha asked Peter whether he would be willing to serve as a substitute surrogate parent in their absence.  Peter agreed, and

for two weeks he served as the surrogate parent for seven emotionally disturbed teenagers, living with the teens in their group home.

The experience of serving as a surrogate parent changed Peter's life dramatically. He loved the job and working with the teens, and he decided to stay in New York and work in an experimental "cottage" at Hawthorne Cedar Knolls. Hawthorne is a residential facility for emotionally troubled children. The center uses several methods of treatment, including "cottage parents," who act as surrogate parents for the teens. The "cottage parents" work within a team approach with social workers, teachers, psychiatrists and administrators, to help the teens, who are mainly inner-city kids from poor families that have histories of violence, drug abuse and/or sexual abuse. In the ensuing months, Peter observed that the Hawthorne employees who were most effective with the teens were those who had masters degrees in social work, and he came to believe that he could help the troubled teens more effectively if he returned to school, completed his undergraduate degree and went on to earn a masters in social work.

Thus, in 1971, at age 25, Peter returned to school. In a short time, he completed his undergraduate studies and obtained a degree in psychology and sociology from Adelphi University. Peter went on to attend Columbia University School of Social Work, where, in 1975, he was awarded a two year masters degree in social work. Throughout this period, Peter remained devoted to the teenagers at Hawthorne, working with them during evenings and weekends while attending all of his classes, and taking his exams, during the day as a full-time student. Additionally, while studying at Columbia, Peter worked for the New York State Department of Probation as a caseworker in Harlem for abused mothers who were on probation and their children.

While at Hawthorne, Peter worked with Arthur Cutler, a childhood friend who was also a "cottage parent."  Arthur's widow Alice recalls that,

> [W]hen Peter and my husband were child care workers at Hawthorne Cedar Knolls, a residential treatment center in Westchester[,] [Peter's] Masters in Social Work coupled with his calm and caring demeanor gave him the skills and ability to develop a trusting relationship with the residents, many of whom stayed in touch with him for years.[4]

Similarly, Peter's brother Jeffrey notes that "[i]n his role as a 'cottage parent,' Peter helped untold numbers of emotionally disturbed teenagers to cope with the stress in their lives."[5]

In 1975, Peter left Hawthorne and joined the Pleasantville Cottage School, a coed residential treatment center that cares for several hundred emotionally troubled youngsters.  There, Peter served as the school social worker for the Mount Pleasant Union Free School District.  He also acted as a liaison for the teens who were returning to the public school system from the Cottage School.  Additionally, he served as the Leisure Time Activity Director for both the Cottage School and the Edenwald Center[6], planning all of the recreational activities for 340 full-time residential students, including activities for after school, weekends and vacations.  Peter also developed both facilities' summer programs.  In these roles, Peter was responsible for, inter alia, interviewing hundreds of applicants to fill the approximately 50 positions needed for the summer program, as well as serving as camp director and supervising the employees during the summer program.  Although Peter's administrative duties consumed most of his time, Peter continued to make an effort to interact with the troubled teens because he enjoyed the work and believed that he could make a lasting, positive impact on the students.

---

[4] See letter of Alice Cutler, Ex. 1 to Appx. A.

[5] See letter of Jeffrey Arest, Ex. 2 to Appx. A.

[6] The Edenwald Center is an adjacent treatment facility serving the needs of children and adolescents who have mild mental disabilities.

### C.    Peter Arest Marries, Re-enters the Business World and Starts a Family

While working at Pleasantville Cottage School, Peter met Iris Knight, a New York University Ph.D. candidate in Psychology, who was fulfilling her internship requirements by working at Pleasantville. Iris was "immediately drawn to Peter's outgoing, friendly, warm, and empathetic disposition, the way he so easily interacted with the most difficult youngsters with humor and respect."[7]  Peter and Iris fell in love and became engaged. Iris's parents were opposed to the marriage because they believed that Peter's family background, combined with his job as a social worker, meant that Peter would be unable to support his wife financially. In June 1976, despite the disapproval of Iris's parents, Peter and Iris wed.

Shortly after the wedding, Peter decided to leave his job as a social worker and return to the business world. This decision was driven, in large part, by the fact that his role at Pleasantville Cottage School had become almost entirely administrative in nature, and he no longer worked directly with the troubled teens. Peter concluded that if his job was going to involve budgeting and human resources issues, he could better support his wife and future family by returning to business and doing the same work in a more lucrative field.

In 1979, Peter opened a sporting goods store in Brooklyn. Through Peter's hard work, the store thrived, and two years later, Peter opened a second store with a business partner. He later constructed, with partners, a highly successful nightclub in New Rochelle. The two stores and nightclub required Peter to work long hours, seven days a week, but Peter nonetheless remained a devoted, attentive husband to his new wife, while she continued to pursue her Ph.D.:

> Even while working seven days/week and holding down two jobs, Peter always made sure to bring home food for me for dinner while working on completing my dissertation. I can remember like it was yesterday the day I returned home from defending my dissertation to find a license plate

---

[7] See letter of Iris Knight Arest, Ex. 3 to Appx. A

with IRIS Ph.D. and a box of stationery with the letterhead, Iris Knight Arest, Ph.D.[8]

Indeed, despite the disapproval that her parents expressed when she married Peter, Iris Arest has "always felt like one of the luckiest women in the world to be married to one of the most devoted, loving, selfless and supportive husbands in the world."[9]

In 1980, Iris gave birth to Peter and Iris's son, Justin Arest.  Four years later, Peter and Iris welcomed a daughter, Alana Arest.

### D.    Peter Enters the Hotel Business

#### 1.    Peter's Work at the Roger Williams Hotel and his Support of the American Red Cross Family Respite Center

In 1982, while Justin was still an infant, Peter's father-in-law, an accountant, asked whether Peter had any interest in running the Roger Williams Hotel on Madison Avenue. At the time, the hotel was losing money and rundown, and was frequented by drug addicts and prostitutes.  The partners who owned the hotel were hoping to bring in someone who would revitalize it.  Despite the fact that Peter already was working full-time in his sporting goods stores and nightclub, he agreed to take on the hotel.

Over a period of one year, Peter successfully turned the Hotel Roger Williams around.  He hired security guards and worked closely with the local precinct of the New York City Police Department.  He also instituted strict policies concerning room rentals, prohibiting hourly room rentals and requiring guests to show identification.  These steps discouraged illegal activity at the hotel.  In an effort to attract reputable, paying customers, Peter contacted the Officer of Underdeveloped Nations at the United Nations; on behalf of the hotel, Peter entered into relationships with some of the underdeveloped nations, agreeing to rent rooms at reduced

---

[8]  See id.

[9]  See id.

rates when the United Nations was in session.  Through Peter's hard work, the Roger Williams became a clean, safe hotel after just one year.

As the Roger Williams Hotel prospered, Peter remained committed to helping people who are less fortunate.  Thus, from 1985 to 1995, the Roger Williams housed the American Red Cross Family Respite Center, a homeless shelter program for mothers and children.  Although the hotel could have generated more revenue by not housing the Red Cross program, or by working directly with New York City's Department of Homeless Services, and the hotel's controller suggested to Peter that the hotel not participate in the program, Peter was insistent that the program remain in the hotel.  Sister Barbara Connolly, the social worker who served as the Program Manager for the American Red Cross Family Respite Center, recalls,

> Peter was always very professional and responsible.  He had a good rapport with this own staff as well as the staff of the American Red Cross. He was compassionate and understanding of the women and their children, treating them with dignity and respect while holding them to being personally responsible for themselves and their children.  Peter was always accommodating to the needs of the program and the staff of the American Red Cross.[10]

Peter's son Justin recalls that his father explained to him the importance of the program:  "He explained to me that some of these women only needed the chance to get back on their feet and that the Red Cross and The Roger Williams gave them a safe environment to do that."[11]

### 2.    Peter and His Partners Purchase and Revitalize the Hotel Metro and With Their Success are Able to Invest in Additional Hotels

In the early 1990s, the lease for the Hotel Roger Williams was due to expire, and the hotel was in need of renovations.  Peter decided to move on.

---

[10] See letter of Sister Barbara Connolly, LMSW, Ex. 4 to Appx. A.

[11] See letter of Justin K. Arest, Ex. 5 to Appx. A.

Because he liked working in the hotel business, Peter began looking for a hotel to purchase. The owners of the Hotel Collingwood, located at 45 West 35th Street in Manhattan, offered to sell the hotel for $5 million. Peter did not have sufficient funds to purchase the hotel. Arthur Cutler, with whom Peter had worked at Hawthorne Cedar Knolls, introduced Peter to Ira Drukier and Richard Born, two businessmen who were successful hoteliers. Together, the three men negotiated a lower price and raised the funds to purchase the Hotel Collingwood. Peter became responsible for revitalizing the renamed Hotel Metro.

Ira Drukier credits Peter with the Hotel Metro's success:

> The old Collingwood was a blight on the neighborhood (35th Street and Avenue of the Americas) when we first start[ed] to renovate it. Now, as the Hotel Metro it has dramatically changed the neighborhood for the better. As witness to this transformation, two new hotels are being built a few doors down from the Metro, where empty lots once stood.[12]

The success of the Hotel Metro allowed Peter to invest with his partners in additional hotels. Peter also went on to make small investments in various other businesses.

**E.    The Critical Role Peter Plays With Respect to His Employees**

Since entering the business world, Peter has consistently served as a leader, role model and friend for the employees of his businesses. Thus, he has supported them both emotionally and financially in times of need, and encouraged their successes, even when success meant that the employee would move on to a new job.

At the Hotel Roger Williams, for example, Peter promoted Jose Acosta to Chief Engineer. At the time, Jose was 18 years old, and the promotion made him the youngest hotel Chief Engineer in the city. When, a year later, Jose's wife was committed to a psychiatric hospital as a result of postpartum depression, Peter and Iris Arest visited her and arranged for her

---

[12] See letter of Ira Drukier, Ex. 6 to Appx. A.

9

release; Iris then provided <u>pro</u> <u>bono</u> counseling to Jose's wife.  Nine years later, when Jose

sought a new job at the Millennium Broadway (and later when Jose sought other jobs), Peter

provided excellent reference letters and advice.  Peter consistently encouraged Jose to move

forward in his field, and as a result, Jose credits Peter for this success:

> I have been the Secretary, Coordinator and Co-President of the Hotel
> Engineers Association in NYC.  I went back to school [at] NYU &
> BOCES Tech for certifications and other licenses that were required for
> advancement in my field and Peter always encouraged me to move
> forward in my field.  He is an excellent role model and I am glad to have
> had him in my life and very proud to know him after all these years.  He
> visited my Art event at Amsterdam Whitney gallery in NYC and I was so
> proud that he could see that I was also succeeding as an artist.  I still have
> the photo of him and Iris in my Gallery book and I will always point out
> that picture and say there is my first hotel boss Peter Arest one of the
> greatest men around.  I will always feel that way about Peter and all his
> wonderful family because they are very special.[13]

Another Hotel Roger Williams Employee, Phillip Fields, recalls that he was hired

by Peter despite having no experience, and that Peter,

> allowed me to develop and gain experience and to this day, thanks to him
> I'm still working in the industry. . . .  He also took me out of the hotel
> business [and] gave me an[] opportunity to manage another business of his
> and also put me in an apartment in Jersey City, since [the other business]
> was not in New York.  [A]fter 2 years the business faltered and [Peter]
> promptly brought me back to the hotel to ensure that I would have a job.[14]

Similarly, when Peter and his partners took over the Hotel Collingwood, Peter's

partners believed that all of the employees should be fired.  Peter disagreed.  Thus, for example,

he successfully argued that Francis "Frankie" Troy, an 18-year-old, be kept on.  Ira Drukier

explains that at the time, Frankie was "troubled" and "non-communicative."[15]  Yet,

> Peter saw something in Frankie, a young man who did not graduate high
> school that made him want to help.  So Frankie stayed on with the hotel.

---

[13] <u>See</u> letter of Jose Acosta, Ex. 7 to Appx. A.

[14] <u>See</u> letter of Phillip Fields, Ex. 8 to Appx. A.

[15] <u>See</u> letter of Ira Drukier, Ex. 6 to Appx. A.

> Under Peter's tutelage, Frankie was taught many aspects of hotel
> operations, the front desk, the bell station, housekeeping and others. He
> went on to complete high school, and is a valued employee at the front
> desk. Personable and friendly, Frankie is a changed person. He now has a
> solid life. Without Peter, this would have never happened.[16]

Moreover, when Frankie's grandmother, with whom Frankie and his mother lived, passed away,

Peter stepped in and helped Frankie find an apartment:

> Not only did he help alleviate the pain I felt from the los[s] of my
> grandmother with his kind words and open heart, but he also helped me
> get an apartment in a building that he owned in Yonkers N.Y. This would
> be a very big step in my life, as I received numerous promotions since and
> now, after starting out as a bellman, I am the Reservation Supervisor.[17]

Peter also supported Frankie with respect to Frankie's education. When Frankie could not afford

to pay for his last semester of college, Peter personally lent Frankie the money. In June 2007,

Frankie was award his bachelors degree in accounting. According to Frankie,

> [n]ot only does this help enhance my future and my career, but it gave my
> son the opportunity to see his dad graduate, and hopefully it will help
> influence him to do the same. . . . Not only do I think of Mr. Arest as the
> man who owns the property I work for, but I also consider him a role
> model and friend. Mr. Arest goes out of his way to make people around
> him feel comfortable. He gives off the feeling that you are just as
> important as he is, even though he owns the hotel. I believe that any
> employee would describe Mr. Arest in the same light.[18]

Indeed, Peter is beloved by the Hotel Metro employees.[19] Bella Ilyayeva, the 52-

year-old Controller, says, "within my work experience dating back to USSR I have never seen an

employer be so kind, generous, big hearted and friendly with his colleagues and his employees

---

[16] See id.

[17] See letter of Francis J. Troy, Ex. 9 to Appx. A.

[18] See id.

[19] See e.g., letter of Vernette J. Johnson, Ex. 10 to Appx. A.

like Peter Arest."[20]  In 1995, Peter hired Bella, who had been a bookkeeper in the Soviet Union,

while Bella was attending college to obtain her accounting degree.  Bella emphasizes,

> Shortly after my employment with Peter Arest I was in a situation with my
> two adolescent sons where we wanted to buy an apartment.  Peter even
> helped me fund our purchase of a new home in which I reside till this day.
> . . .  I also do the bookkeeping for Mr. Arest's apartment buildings in
> which some of our staff resides.  At times these people aren't able to pay
> their rent on time (a situation you'd see anywhere else) and Peter never
> gives them a hard time.  He is patient and allows some time for them to
> catch up.  He is definitely not your typical land[lord].[21]

These sentiments – Peter's caring personality, commitment to his employees,

generosity both financially and emotionally – are echoed again and again by Hotel Metro

employees.  Alba Nahar, a Hotel Metro employee for 11 years, says that Peter,

> is the most kind, humanitarian, so comfortable person to be around of, he
> has done many things [o]n behalf of his employees and theirs families[.]  I
> have to mention that he give me chance to grow within the company[.]  I
> started at the hotel as a regular house keeper with so many difficulties in
> my communication[.]  [S]lowly he was giving me the opportunity to
> explore new challenges trusting only in my capability gained during the
> time worked for him . . . [A]nd that's not the only reason of my
> appreciation for him[.]  [I]n my family, my father in law who works for
> the hotel and is 69 years old had a open heart surgery that took him 7
> months out of work[.]  [Peter] was so concern about his health, giving and
> facilitating him time and health insurance support[.][22]

Alba also recalls that when one of her staff members was diagnosed with breast cancer, Peter

was very supportive, retaining her on the hotel staff:

> Another case that I really feel I have to mention is related to one of my
> department employees[.]  [H]er name was Maria Iruac[.]  [S]he was
> diagnos[ed] with breast cancer in 2001[.]  [S]he was one of the most
> respected persons in our department [and had] been with the hotel since it
> opens[.]  [A]t the beginning of her treatment, Peter was totally supportive
> to her[.]  [S]he was under chemotherapy for about 4 years, been out of
> work for two consecutive years and two more on and off[.]  [A]s the

---

[20] See letter of Bella Ilyayeva, Ex. 11 to Appx. A.

[21] See id.

[22] See letter of Alba Marina Nahar, Ex. 12 to Appx. A.

> department supervisor I was always aware of this situation and during this time I [always] see Peter with a sense of du[ty] to help her and her family[.][23]

Similarly, Nancy Trojeckas, the receptionist at the Hotel Metro's breakfast room,

says,

> [Peter] always seeks to help all employees, and has never denied us his support in difficult situations.  In my case, in February, 2006, after the death of my son, who lived in Brazil, Mr. Arest immediately left his office and approached me, offering his condolences and his unconditional support.  On that same day, I left for Brazil for my son's funeral and was offered the ticket and a leave from work for an indefinite period.  I do not know if it is pertinent to mention monetary values, but it is important to me that others know a little about Mr. Arest's generosity on this occasion as he spent around 5000 dollars on me and never accepted a return payment.[24]

Simply stated, and as demonstrated by the letters of Peter's employees and the anecdotes described therein, Peter is a model employer who cares deeply about his employees, and who provides opportunities, financial support, emotional support, and an environment where self-esteem and personal growth flourish.  Peter's kindness towards his employees, and the opportunities that he has given to employees who might not have been hired by others, often do not benefit Peter or the Hotel Metro financially; to the contrary, his commitment to his employees sometimes causes Peter and the hotel to lose money and experienced employees.  Yet, Peter's generosity of spirit and his commitment to helping others, are unwavering.

---

[23] See id.

[24] See letter of Nancy Trojeckas and accompanying translation, Ex. 13 to Appx. A.

**F.**    **The Role Peter Plays in His Family and Caring for His Elderly Mother and In-Laws**

    **1.**    **Peter's Relationship with His Children and Extended Family**

Since his children were born, Peter has been a model father, absolutely devoted to his children, their growth and development, and their physical and emotional needs. According to Iris,

> His devotion to his family is incomparable. He has always put his family first, before his own needs. He has been my partner in raising two incredible children who admire, adore, and respect their father. . . . Both children depend on their father in a healthy way for his sound advice, good counsel, and support. They hate to disappoint him in any way. Unlike most homes where the mother is often the go-to person, in my home it has always been the father. For many years I did not even carry a cell phone because the children would automatically call Peter with questions.[25]

Moreover, Peter's children recognize his devotion to them, and understand the values that he instilled in them. Thus, Peter's daughter Alana says,

> I have been extremely fortunate to grow up in such a warm and supportive household with a father who was always present. No matter how many obligations my father had to attend to, he always found time to watch my dance recitals, improve my softball skills, and teach me how to drive. Looking back at the countless hours we spent together it is hard to even fathom how one man could have such patience and enthusiasm. At the start of every summer, my father would also spend days sewing in nametags to every article of my clothing and packing up all of my camp trunks. . . . Throughout my life my father has always instilled in me a hard working ethic and an appreciation for everything I have been given. Whether earning money as a lifeguard, doing chores around the house, or volunteering at a soup kitchen, I learned early on that privileges must be earned and that it is essential to give back. . . . I am not sure if my father is aware of how much I have learned from him over the years. He has taught by example to respect and appreciate others and to never take anything for granted.[26]

---

[25] See Id.

[26] See letter of Alana Nicole Arest, Ex. 14 to Appx. A.

Justin, Peter's son, echoes many of the same sentiments:

> My father has worn many hats.  He has been the family doctor, mechanic, and adviser.  I hope that he has never felt taken for granted but I am not sure if it would be possible for my family to ever show enough appreciation. . . . [He] is the kind of father that missed a total of one game during the ten plus years I participated in various youth sports. . . . My sister and I never had to worry about fighting for my father's time growing up, especially when it related to schoolwork.  I will never forget the hours that he spent with me each week in tenth grade going over my [math] extra credit assignments. . . .  He is the kind of father that altered his work schedule around my fear of taking the bus in elementary school.[27]

As a result of the warm, nurturing home that Peter and Iris provided to their children, Justin and Alana have become successful adults.  Justin graduated from New York University Stern School of Business with a bachelor of science in finance, and was awarded his juris doctorate from George Washington University.  After working as an associate at O'Melveny and Myers, Justin, who is now 27-years-old and married to Allison Arest, a credit trader at a hedge fund, began working with his father in real estate management.  Alana is now 23-years-old and recently earned dual masters degrees in childhood and special education from Fordham University.

> Allison Arest, Peter's new daughter-in-law, says that Peter,

> makes everyone want to be a better person, to be thankful for what they have and to return their good luck to those less fortunate.  He is the most kind-hearted, generous man I have been blessed to encounter and I am proud to call him family.  I have watched him lend money to both friends and family, I have watched him make philanthropic investments in Harlem [despite the fact] that [they] continue to be in the red and I have watched how he so patiently cares for his elderly mother.[28]

In addition to creating a nurturing home for his own children, Peter consistently has welcomed his children's friends, and well as the children of family members.  Thus, when

---

[27] See letter of Justin K. Arest, Ex. 5 to Appx. A.

[28] See letter of Allison H. Arest, Ex. 15 to Appx. A.

Peter's niece Melanie was struggling with adolescence, Peter welcomed her into his home for several months.  Melanie's mother Marsha Arest, who is Peter's sister-in-law, believes that the time Peter spent with Melanie during those few months was invaluable to Melanie.[29]  Similarly, Melanie, who is now 36 years old, says,

> When I was struggling throughout my adolescence, Peter was always there for me to offer support and guidance.  When I needed a place to stay, he opened his home to me without question or stipulation.  In the time that I resided with Peter and his family, I witnessed how a successful relationship between a father and his children should be.  His unwavering patience and understanding have not only played a fundamental role in his own children's upbringing but in mine as well.  The core of my individuality, including my morals, values, and family traditions, can be directly attributed to my time spent with Peter and his family.[30]

In addition to providing guidance and support to his own children and relatives, Peter played the same role for his children's friends.  He served as a father figure to Justin's and Alana's friends, welcoming them into the Arest home, comforting them in times of need, offering personal and professional advice, and teaching both practical skills and important life lessons.[31]

### 2.    Peter's Devoted Care for His Elderly Mother and In-Laws

Peter's mother Lily, who is 98-years-old, has been living with Peter and Iris in the their home in Connecticut for several years.  According to Lily's physician, Peter "is the primary caregiver for his mother and provides her with everything she needs.  She is extremely dependent upon him not only for her physical needs; she is also dependent upon him emotionally.  She is

---

[29] See letter of Marsha Arest, Ex. 16 to Appx. A.

[30] See letter of Melanie Arest, Ex. 17 to Appx. A.

[31] See letters of Eric J. Beardsley, Judd A. DeRario, Nina Levi and Brian Levy, Exs. 18, 19, 20 and 21, respectively, to Appx. A.

extremely anxious, disoriented, and quite depressed when he is not present."[32]  Peter's wife Iris,

who witnesses Peter's care of his mother every day, says,

> She depends on him 100% both financially and emotionally.  While he has
> an older brother, Peter has assumed the sole role of caretaker for his
> mother ever since his father passed away approximately 35 years ago.  His
> brother lives in Arizona and plays absolutely no part in her well-being.
> Peter is the most consistent person in her life, the one she trusts the most.
> He is often the only one she will listen to and oblige whether it is to take a
> shower or eat her food.  She can often be found at the kitchen table with
> her head down sleeping waiting for Peter to return home from work.  As
> time goes on, she is becoming increasingly more confused, disoriented,
> disorganized, and depressed.[33]

The tenderness and respect with which Peter cares for his ailing mother is the

subject of much admiration among Peter's family and friends.  Gary Adler, a friend of Peter's for

nearly four decades, says, "I hope my son treats his mother and me in the same way Peter treats

his mom as we get older."[34]  Alice Cutler, a friend of Peter's for over 50 years and the widow of

Peter's dearest friend, adds,

> Peter is the son all mothers wish they had.  He has taken care of her and
> made sure that all her needs, physical and emotional, have been met.  He
> is devoted and caring, kind and patient.  She has lived with him and his
> family for a very long time.  She has been able to develop very strong
> bonds with her grandchildren who adore her.  Lily is 98 years old, and
> there is no doubt in my mind that her longevity is directly related to the
> happiness she has felt being cared for with such respect and dignity.[35]

---

[32] <u>See</u> letter of Dr. James A. Brunetti II, Ex. 22 to Appx. A.

[33] <u>See</u> letter of Iris Knight Arest, Ex. 3 to Appx. A.

[34] <u>See</u> letter of Gary Adler, Ex. 23 to Appx. A.

[35] <u>See</u> letter of Alice Cutler, Ex. 1 to Appx. A.

"As [Lily's] health has significantly declined over the past few years, Peter has shown her

extraordinary care, arranging his busy schedule around her doctor appointments and hospital

visits."[36]

      In addition to providing extraordinary care to his elderly mother, Peter

consistently demonstrates the same level of care for his ailing in-laws, Ruth and Murray Knight.

Despite the fact that the Knights discouraged their daughter from marrying Peter, and did not

welcome him into their family, Peter has been a devoted son-in-law and continues to be now that

Ruth and Murray are in the 90s.  Gary Adler, who is aware of the cold reception that Peter

received from Iris's parents, says,

> I know from first hand experience that Peter's in-laws were not
> thrilled with their daughter the doctor marrying Peter the social
> worker.  Most people, including myself, would never have
> forgotten the unwelcome acts he faced. . . .  [A]n outsider would
> have no idea there were ever any issues between them.  Peter has
> taken care of them and their house/apartment since as long as I can
> remember.  After spending an entire day in the city he would stop
> at their house to change a light bulb or fix a jammed door.  I do not
> think they appreciate him as they should but Peter would never say
> no.[37]

      Peter's wife Iris notes that "it has always been Peter upon whom my parents

depend.  Whether it is to fix a leak in the sink, making their house handicap accessible, spending

countless hours in a hospital, Peter is the first one to offer his help."[38]  Barbara and Peter Gold,

the in-laws of Peter's son Justin, have found Peter's devotion to his in-laws remarkable:

> We have also witnessed the great respect bestowed by Peter on his in-
> laws, Ruth and Murray Knight.  Ruth and Murray require a great deal of

---

[36] See letter of Allison and Aaron Eiges, Ex. 24 to Appx. A; see also letter of Ellen R. Morehouse, letter of Steven and Stephanie Roth, Thomas Wallis and Paula and Jeff Weckstein, attached as Exs. 25, 26, 27 and 28, respectively, to Appx. A.

[37] See letter of Gary Adler, Ex. 23 to Appx. A.

[38] See letter of Iris Knight Arest, Ex. 3 to Appx. A; see also letters of Laureine Knight Greenbaum and Ken Greenfield, Exs. 29  and 30, respectively, to Appx. A.

> care and patience and, like a devoted son, we have watched Peter do more for them than most sons do for their own parents.  It is very telling that whenever there is a family occasion, Peter seats Ruth and Murray at the head of his table allowing them the respect that they are due as parents and seniors.[39]

Ninette Stiskin, Iris's first cousin, adds, "In my family, we've always believed that you can tell a man's character by the way he treats him mother (and in-laws).  This is certainly true of Peter."[40]

This sentiment is echoed by Connie Cohen, a teacher who has known Peter for more than 20 years:

> I have always admired Peter for his incredible commitment to people, but in particular, his devotion to his mother and in-laws, both who are now ailing.  He opened his house for them to live with him and has cared for them selflessly.  These acts of kindness are trying and unthinkable for most people, however, for Peter they came naturally.[41]

### G.    Peter Arest's Charitable and Community Work

Despite having ultimately chosen a career in business over social work, and while spending enormous time caring for his family, Peter has nonetheless remained committed to various charitable causes.  Thus, Peter's brother says,

> For many years, and even after Peter left social work and went into business, he remained acutely aware of and attentive of the needs of troubled youngsters and those less fortunate than himself.  I would often send young minority adults to him for advice, and on more than one occasion he offered them jobs in one of his businesses.  He has kept in touch with former students and to this day, remains both emotionally and financially supportive of the therapeutic residential community.[42]

For 16 years, Peter has been on the Board of Trustees for The Summit Children's Residence Center, in Nyack, New York.  The center provides board, care and treatment to 115

---

[39] See letter of Barbara and Peter Gold, Ex. 31 to Appx. A.

[40] See letter of Ninette A. Stiskin, Ex. 32 to Appx. A.

[41] See letter of Connie Cohen, Ex. 33 to Appx. A.

[42] See letter of Jeffrey Arest, Ex. 2 to Appx. A.

children and teens with emotional and neurological disabilities. Mayer Stiskin, the Executive

Director of the Center, describes Peter as a "guiding light" to the program.[43] When the Center's

main building was destroyed by fire, "Peter personally walked through the building, assisting us

in reconstruction ideas and concepts and offered his services 'pro bono' to our contractors."[44]

Peter has also offered his time, expertise and advice to others who are working

with children who have special needs. Thus, when Ellen Morehouse decided to apply for a grant

from the federal Office of Substance Abuse Prevention so that she could create a residential child

care facility, she,

> asked Peter many questions about the structure of residential child care
> facilities and about teens in these facilities. As a result of Peter's
> willingness to speak with me about these issues, provide feedback for my
> ideas, offer suggestions, and call key people in some of the facilities so I
> was able to meet with them and explain my ideas, I was able to submit an
> application which was funded. The grant provided funding to impl[e]ment
> and evaluate a new prevention model in six residential facilities located in
> Westchester County.[45]

Additionally, Peter has invested both time and money in a start-up minority

business in Harlem. Peter, along with two women who are long-standing residents of Harlem,

and Jeffrey Gural, the Chairman of Newmark Knight Frank, a real estate management company

in New York City, became partners in a business to help revitalize Harlem. According to Jeffrey

Gural,

> Part of our excitement about the project was the opportunity to mentor two
> enthusiastic entrepreneurial women. This has been a very challenging
> endeavor. There have been many stumbling blocks along the way. I have
> been very impressed with Peter's ability to support and nurture our young
> team. He is patent, caring, positive, and has constructively assisted them
> whenever possible.[46]

---

[43] See letter of Mayer A. Stiskin, Ex. 34 to Appx. A.

[44] See letter of Bruce Goldsmith, Ex. 35 to Appx. A.

[45] See letter of Ellen R. Morehouse, Ex. 25 to Appx. A.

[46] See letter of Jeffrey Gural, Ex. 36 to Appx. A.

Peter has also offered his time to the Rye High School, where Peter's wife serves

as a psychologist. When the class officers of the high school were selling hotdogs and other

refreshments at football games in order to lower the cost of prom and other events, Peter helped

the students grill the hotdogs. According to Dr. Jim Rooney, the principal of Rye High School,

> In all the many years of going to these games, I have never seen a spouse
> standing over a hot grill helping students roast frankfurters, but after I
> came to know Peter I was not surprised that he would show this level of
> generosity with his time. In addition, he has hosted end-of-year meetings
> at this house for my team of social workers, psychologists and guidance
> counselors. Typically he takes the day off from his own job and works in
> the kitchen providing imaginative meals for us and stimulating
> conversation.[47]

John Venetis, a contractor with whom Peter does business and whose father-in-

law also did business with Peter, views Peter as,

> a humanitarian. I know Peter to be involved in many charitable
> organizations. That is why it was no surprise to me that this past year
> when he heard of my involvement in my church, St. Nicholas Greek
> Orthodox Church, he was a willing contributor. When it came time to
> solicit donations for our last golf outing Peter insisted on donating
> $2,000.00 even though he knew he and his son would be unavailable to
> play.[48]

Some of Peter's most charitable acts have been done privately, without

acknowledgement, and sometimes without the beneficiary even being aware of Peter's role.

Thus, after Peter's friend Arthur Cutler died unexpectedly, Peter immediately stepped in to help

Alice Cutler run her late husband's restaurant business:

> Peter and his family have been Alice's biggest support since her loss. He
> has also spent countless hours counseling Artie's wife Alice with the
> business. What I really think is amazing is that most of the hours Peter
> has spent helping Alice she does not even know. Many of Artie's former
> partners and vendors have a close relationship with Peter and have called

---

[47] See letter of Dr. Jim Rooney, Ex. 37 to Appx. A.

[48] See letter of John Venetis, Ex. 38 to Appx. A.

21

him with concerns about the business and Peter has made sure that no one was taking advantage of Alice. Peter would never tell her about most of these conversations. When he would have to get her involved he would make sure to make her think that the outcome was her idea[.][49]

Similarly, when Peter's friend Richard Hoffman was injured last year in an explosion that left him hospitalized and incapacitated, Peter was,

there for my family and me during our most difficult times. . . . He visited me in the hospital to the point of me asking him not to come any more. Once I returned home he was at my doorstep with enough food to feed my wife and me for weeks. There wasn't a day that went by without a call asking how I was feeling. In addition, he constantly called my wife and sons to ask if there was anything he could do to make their situation easier.[50]

Peter also has provided support and "shows positive concern and genuine encouragement" as he "regularly checks on" his cousin, Tom Wallis, who was diagnosed with Parkinson's disease six years ago.[51]

These types of charitable, kind acts date back many years for Peter. Gary Adler recalls,

Over twenty years ago my father was murdered in an armed robbery. Peter called me every day after my loss and used the experience of losing his father to help me tremendously. I have type 1 Diabetes and whenever I have medical problems Peter could not be more available for me and my wife. I also have had financial problems. Peter was always there for me with advice and unfortunately also money. In a tough time for me Peter lent me $250,000 to make sure my company stayed in business and that I could provide for my family. He has never been paid back. Most would think that I would have lost him as a friend. I remember coming to his office to apologize and I was crying. I thought for sure he would be upset and throw me out. But not Peter. Somehow he felt badly and was only supportive and encouraging.[52]

---

[49] See letter of Gary Adler, Ex. 23 to Appx A; see also letter of Alice Cutler, Ex. 1 to Appx. A.

[50] See letter of Richard J. Hoffman, Ex. 39 to Appx. A.

[51] See letter of Thomas Wallis, Ex. 27 to Appx. A.

[52] See letter of Gary Adler, Ex. 23 to Appx. A.

As a member of the Board of Governors of the Ridgeway Country Club, and as its President for three years, Peter was in charge of a membership of over 500 people and "an unwieldy staff[.]  [He] navigated his duties with grace, sincerity, and compassion."[53]  Under Peter's leadership, the country club had "huge turnouts" for its charity weekend.[54]  Peter mobilized the club community to support its charitable foundation, which, in turn, provides substantial support to various causes including pediatric cancer research, breast and prostate cancer research, and cancer cures through early detection.[55]  Additionally, Peter "discreetly loaned money to several club personnel that were in financial difficulties or having family emergencies.  I have seen Peter lend emotional and monetary help to those in need, mostly done behind the scenes"[56]

\*    \*    \*    \*    \*

In sum, aside from the conduct related to making false statements on his income tax returns, Peter Arest has led an exemplary life, both personally and professionally.  He is devoted to his family and friends, always willing to lend a hand financially and emotionally.  He is the center of a hardworking, close-knit family that relies upon him and admires him deeply.  As a social worker, he positively impacted the lives of countless troubled teens.  And as a businessman, he has continuously earned the respect and admiration of his employees and his peers through the compassionate manner in which he conducts and runs his business.

---

[53] See letter of Dr. Douglas I. Rosen, Ex. 40 to Appx. A.

[54] See letter of Paul Schur, Ex. 41 to Appx. A.

[55] See letter of Richard A. Sporn, Ex. 42 to Appx. A.

[56] See letter of Dr. Michal J. Strongin, Ex. 43 to Appx. A; see also letter of Richard A. Sporn, Ex. 42 to Appx. A.

## II.    THE OFFENSE AND PETER'S ACCEPTANCE OF RESPONSIBILITY

For the tax years 2001 and 2002, Peter signed personal federal income tax returns that he knew were materially false.  Specifically, he failed to disclose on his 2001 and 2002 Forms 1040 that the Hotel Metro, of which he is a part owner, had paid for some of his personal expenses; the hotel's payment of these expenses should have been declared as Peter's income. Peter failed to disclose this income for the purpose of evading payment of a portion of his federal income taxes.  By failing to disclose these payments on his Forms 1040 for the years 2001 and 2002, Peter was able to evade a substantial part of the income tax that he owed to the United States for those years.  On March 18, 2008, Mr. Arest pleaded guilty to evading income tax for the years 2001 and 2002, in violation of section 7201 of Title 26, in the amount of $62,747.  He has since filed amended tax returns for the years 2001 and 2002, and has paid all taxes and interest due.

Beginning before his plea, and continuing afterwards, Peter has expressed to his family and friends his tremendous remorse.   Peter's wife Iris,

> know[s] better than anyone how greatly Peter has been suffering from the consequences of his past actions.  While he works hard to have a strong and brave face when he is with his children, his aging mother and in-laws, it is all a façade.  When alone with me, he rarely has a smile on his face and his usual positive and upbeat personality is wanting.  He tends to be rather somber, and uncommunicative, rather closed off, especially at night when we are alone.  The impact of his actions on his family worries him greatly.  The thought of having to leave his family for even a minute to care for themselves distresses him.[57]

Despite Peter's efforts to shield his family from the pain that he feels, Peter's friends and family are aware of the profound embarrassment and remorse that he experiences every day.  Thus, Peter's son Justin says,

---

[57] See letter of Iris Knight Arest, Ex. 3 to Appx. A.

24

> Ironically, my father the social worker is not the type to wear his emotions on his sleeve . . . . In the last ten years I can only think of a handful of times when he has become more than just teary eyed. One example of such emotion was during his speech at my grandmother's ninety-fifth birthday party. My father had just learned he was under investigation a few days prior to the party. He was so depressed and remorseful over the days that followed. As he spoke of my grandmother and our family all of the emotion that had been bottled up came to the surface. Most in attendance just thought my father was tearing up because of his love for his family. While his love for family was a factor, his remorse and embarrassment was what took over.[58]

With his closest friends, Peter has expressed his sense of shame in more detail. Thus, as close friends, Peter and Steven Gains have spoken,

> about what he did and he has always acknowledged his unacceptable and unlawful conduct[.] [Peter] deeply regrets the pain and anguish he has caused his family. . . . He is overwhelmed by the sense of embarrassment which he believes he has visited upon himself, his loving family, and his community by virtue of his misconduct.[59]

Yet, despite his embarrassment, as a devoted father Peter has nonetheless used his own bad acts to teach his children, in the hopes that they will never make the same error in judgment:

> As ashamed as my father is he has still made sure to talk about it with me. He has explained to me that what he did was wrong and he is embarrassed that he ever allowed it to happen. He has also apologized to me for being something of a hypocrite. He has always taught me that there is no easy way to make money.[60]

In sum, in addition to pleading guilty before this Court and paying all taxes due, Peter has expressed his remorse to his friends and loved ones, who have no doubt that Peter deeply regrets the conduct underlying the offense of conviction.

---

[58] See letter of Justin K. Arest, Ex. 5 to Appx. A.

[59] See letter of Steven H. Gains, Ex. 44 to Appx. A; see also letter of Connie Cohen, Ex. 33 to Appx. A.

[60] See letter of Justin K. Arest, Ex. 5 to Appx. A.

## III.    SENTENCING CONSIDERATIONS

Section 3553(a) of Title 18 of the United States Code provides, "[t]he court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes [of sentencing]."  In determining an appropriate sentence, sentencing courts must consider among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant," the need to address "the seriousness of the offense" and "the kinds of sentences available."  18 U.S.C. § 3553(a).[61]

The standards promulgated by the American Bar Association, which were designed to assist sentencing authorities in reaching the proper balance between the community's interest and that of the defendant, support the consideration of the section 3553(a) factors. Specifically, the ABA standards provide that "[a]ll impositions of punishment should be no more than necessary for the attainment of identified societal goals."  ABA Standards for Criminal Justice Sentencing, Commentary to § 18-2.4 (3d ed. 1994).  The American Bar Association has emphasized that "[t]he sentence imposed in each case should be the minimum sanction that is consistent with the gravity of the offense, the culpability of the offender, the offender's criminal history, and the personal characteristics of an individual offender."  Id. at 18-6-1(a).  Moreover, "[a] sentencing court should prefer sanctions not involving total confinement in the absence of affirmative reasons to the contrary."  Id. at 18-6.4(a).

In  United States v.Crosby, 397 F.3d 103, 113 (2d Cir. 2005), the Second Circuit explained that the excision of the provision in the Federal Sentencing Guidelines that made them mandatory places a new emphasis on the other factors enumerated in section 3553(a).  Courts in this district have held that consideration of the Guidelines range is only entitled to the same

---

[61] The remaining factors listed in section 3553(a), which include, inter alia, promoting deterrence, protecting the public, providing the defendant with training or medical care, avoiding sentence disparities and the need to provide restitution, are less applicable to Peter Arest given his background and the nature of the offense.

weight each other factor enumerated in section 3553(a) is accorded.  See Simon v. United States, 361 F. Supp. 2d 35, 40 (S.D.N.Y. 2005).  As explained in Simon:

> One of the many reasons to afford the same weight to the Guidelines sentence and the other factors is that the Guidelines permit a court to grant a departure based on certain offender-specific characteristics only in exceptional circumstances.  For example, age, educational and vocational skills, mental and emotional conditions, physical condition, employment record, and family ties and responsibilities are not normally relevant.  Yet these are the sort of characteristics a court is likely to find relevant when determining the history and characteristics of the defendant as required by 3553(a)(1).

Simon, 361 F. Supp. 2d at 40.

Thus, as explained in Crosby, sentencing judges are free to consider and required to focus on the facts in lieu of simply engaging in a mathematical sentencing formulation. "Following Booker and its progeny, although courts must consider the Guidelines, 'in doing so [they] should not follow the old 'departure' methodology.  The [G]uidelines are not binding, and courts need not justify a sentence outside of them by citing factors that take the case outside of the heartland.  Rather, courts are free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the [G]uidelines, so long as the ultimate sentence is reasonable and carefully supported by reasons tied to the § 3553(a) factors."  United States v. Ranum, 353 F. Supp. 2d 984, 987-87 (E.D. Wisc. 2005).

In this case, the compelling facts and circumstances surrounding Peter's improper conduct – including the fact that filing false tax returns was an anomaly given Peter's life of good works and commitment to family, friends and employees – demonstrate that a sentence of incarceration would be inappropriate, and that the Court should sentence Peter to home confinement and community service.  Such a sentence would adequately punish Peter for his crime, while allowing him to continue caring for his mother, in-laws and family.  While under home confinement, Peter could continue to work with, and support, the numerous employees

27

who depend on him for their livelihood.  Additionally, a community service component would

allow Peter to use his skills as a social worker and businessman to help others in need.

A.    **Peter's Personal Characteristics, Including His Family Circumstances and Contributions to the Community, Warrant a Non-Guidelines, Non-Custodial Sentence**

As noted, Peter pleaded guilty to evading income tax for the years 2001 and 2002,

in the amount of $62,747.  This is a substantial crime and one for which the Federal Sentencing

Guidelines, taking into account Peter's acceptance of responsibility, set the Guidelines level at

12 in Zone C, corresponding to between 10 and 16 months incarceration.[62]  See U.S.S.G. §§

2T1.1, 2T4.1(E), 3E1.1(a).  Peter is aware of the seriousness of his crime.  However, Peter's

crime should be balanced against his decades of good works, the critical role he plays in caring

for his elderly mother as well as his employees, and the substantial contributions he has made to

the community.  Taking all of these factors into account, a sentence of incarceration is not

warranted.

1.    **Peter's Life of Good Works Justifies a Non-Guidelines, Non-Custodial Sentence**

As noted above, Peter's commitment to helping others began nearly 40 years ago,

when he first began serving as a surrogate parent to troubled teens.  For close to a decade, he

worked with these teens in residential facilities, helping them overcome their difficult

backgrounds, and counseling them in the hopes that they would become productive members of

society.  The job was low-paying and grueling, and often required long hours and extraordinary

patience, but Peter was committed to the children.  His ability to connect with the teens was

admired by his peers.

---

[62] Sentences in Zone C "may be satisfied by a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention . . . provided that at least one-half of the minimum term is satisfied by imprisonment."  U.S.S.G. § 5C1.1(d).

Even after leaving social work to pursue business, Peter remained committed to helping others. Thus, as a manager of the Hotel Roger Williams, he welcomed the American Red Cross Family Respite Center. Although Peter knew that the hotel could make more money by renting the rooms to regular, paying customers or the City of New York, Peter believed that it was more important to provide safe shelter for homeless mothers and their children, and to afford the mothers the respect and dignity, and hopefully the confidence, that would allow them to take control of their lives and care for their children.

After Peter became an owner of his own hotel and gradually became more financially successful, his contributions to the community continued on a more direct and personal level. He has provided jobs to individuals who had little or no ability to speak English, or who had no education and no experience; he has encouraged his employees to return to school, and sometimes paid for their classes; he has rented apartments to his employees, and has been accommodating and understanding when they could not pay their rent on time; and he has treated his employees with such respect and dignity that they view him as family, relying on his advice and counsel because they know that he will look out for their best interests, even to his own detriment.

In addition to furthering his employees' careers, Peter has supported them financially and emotionally through some of their most difficult personal challenges. He has granted extended leaves of absence to employees who were sick, welcoming them back when they were able to return to work; he obtained medical care for the spouse of an employee; he paid for funeral expenses for another employee's child; and when a tragedy affects one of his employees, he is always quick to offer his support.

While serving as a model employer whose concern consistently has been the well-being of his employees, Peter has continued to support the causes to which he dedicated himself during his career in social work. Thus, he has stayed in contact with some of the teens for whom he served as a surrogate parent; he has helped friends in the social work field to pursue new ideas and facilities for at-risk children; he serves on the Board of Trustees for a residential center and school that assists children and teens with emotional and neurological disabilities.

In his personal life, Peter also has been extraordinarily giving, both financially and emotionally. He has helped others establish themselves in the hotel and restaurant business through advice and loans; he has invested both time and money in a start-up minority business in Harlem, and has continued to support it despite the fact that it is not profitable; he has made extraordinary loans to friends who have found themselves in difficult financial straits; he devoted much of his time as President of his country club to ensure better turnout at charitable events to raise money for cancer research; and he has helped nurse back to health, through frequent visits and psychological support, friends who have been sick or hospitalized, or who have lost a loved one.

Though Peter's conduct in filing false tax returns is certainly serious, and warrants punishment, the conduct and appropriate punishment should be considered in the context of Peter's generosity and many years of extraordinary commitment to others. Quite plainly, the offense conduct is inconsistent with his character and well-earned and well-established reputation in the community. His good acts and service to the community, and his nearly forty-year commitment to helping others – which is demonstrated through the dozens of letters that provide anecdotal evidence – are certainly relevant in determining an appropriate

sentence for Peter, and on balance, indicate that a non-Guidelines, non-custodial sentence of home confinement and community service is appropriate.

> **2.      The Critical Role that Peter Plays in Caring for His Mother and His Employees Justifies a Non-Guidelines, Non-Custodial Sentence**

A non-Guidelines, non-custodial sentence is particularly appropriate for Peter because while such a sentence will undoubtedly punish him – and thereby achieve the goals of sentencing – it will allow him to continue caring for his elderly mother.  Courts in this circuit may consider family circumstances as a reason to impose a sentence that is not within the Guidelines range where the family is uniquely dependent on the defendant for emotional or financial support.  See, e.g., United States v. Sprei, 145 F.3d 528, 535 (2d Cir. 1998); see also United States v. Faria, 161 F.3d 761, 762 (2d Cir. 1998).  United States v. Galante, 111 F.3d 1029, 1032, 1035 (2d Cir. 1997).  Indeed, when a person capable of assuming the defendant's care-giving responsibilities is not available, courts have granted more lenient sentences.  See United States v. Galante, 111 F.3d 1029, 1036 (2d Cir.1997); States v. Johnson, 964 F.2d 124, 129 (2d Cir. 1992); United States v. Alba, 933 F.2d 1117, 1122 (2d Cir.1991).

As noted, Peter's mother Lily is 98-year-old and lives in his home.  She is not well, and is often confused, disoriented, belligerent and unresponsive to people other than Peter.  Lily will not understand Peter's absence, and those close to her, as well as her physician, are very concerned about the potential effect on Lily of Peter being absent for any length of time.  No one else is capable of assuming Peter's role with respect to the care of his mother.

According to Dr Brunetti, Lily's physician, Lily is,

> extremely dependent upon [Peter] not only for her physical needs; she also is dependent upon him emotionally.  She is extremely anxious, disoriented, and quite depressed when he is not present.  He is extremely involved in every aspect of her care, and I believe that being away from her will be quite a strain on her fragile medical condition.  I appreciate

> anything that can be done to help Peter to aid his mother in her unstable
> and fragile medical condition. . . .  [H]is mom's dependency on [Peter] as
> her caregiver is quite strong and there have been times in which she slips
> into a different mental state when he is not around.[63]

This concern for Lily's well-being is echoed by family members and friends who have witnesses

Peter's devotion to his mother's care.[64]  For example, Peter's daughter-in-law says,

> [I]f Peter is taken from his home, [Lily] will be the most effected.  Lily is
> a stubborn woman who won't understand the situation.  She is a woman
> who needs constant care and it is clear Peter is her final link to reality.
> She loses her sense of time, location and memory multiple times per day.
> It is only Peter who can sit down and patiently remind his mother where
> she is, who she is and her plans for the day.[65]

Indeed, as noted above, even in her confused and disoriented state, Lily often sleeps in the

kitchen with her head on the table, waiting for Peter to return home after work.[66]  Peter's brother,

who lives in Arizona and cannot care for Lily in Peter's absence, believes "it would be

inordinately stressful for [Lily] not to have [Peter] around,"[67] and Justin, Peter's son, is "very

afraid for [his] grandmother should [his] father have to be away from her for any period of

time."[68]

Additionally, Peter's business colleagues are very concerned about the potential

effect Peter's absence will have on the Hotel Metro and its employees.  According to Peter's

business partner Richard Born,

> The partners and employees of The Metro Hotel will [] feel the loss if
> Peter is not at the helm.  Peter's watchful eye has been the key to the
> hotel[']s success and profits will, no doubt, suffer in his absence with the

---

[63] See letter of Dr. James A. Brunetti II, Ex. 22 to Appx. A.

[64] See e.g., letter of Allison and Aaron Eiges, Ex. 24 to Appx. A.

[65] See letter of Allison H. Arest, Ex. 15 to Appx. A.

[66] See letter of Iris Knight Arest, Ex. 3 to Appx. A.

[67] See letter of Jeffrey Arest, Ex. 2 to Appx. A.

[68] See letter of Justin K. Arest, Ex. 5 to Appx. A.

potential negative impact not only on owners but on a number of the employees.[69]

This concern is shared by Ira Drukier, another of Peter's business partners:

Peter has now become the heart and soul of the Hotel Metro. His absence from the hotel could only negatively affect both the employees and operations of that property. Since there are many partners and employees in this project, Peter's absence would affect many people.[70]

Given these circumstances, and the critical role that Peter plays in caring for his mother and managing the Hotel Metro and its employees, a sentence of home confinement and community service is most appropriate for Peter. A sentence of incarceration will unduly punish Lily Arest and the hotel employees, will burden countless other innocent people and is unnecessarily harsh in this case.

**B.    A Non-Guidelines, Non-Custodial Sentence Is Available and Appropriate**

The Sentencing Guidelines envision non-custodial sentences, including for defendants who commit tax evasion. See U.S.S.G. § 5C1.1(b)-(c). Peter is an excellent candidate for home confinement given the circumstances discussed above. And home confinement combined with community service is an ideal sentence for Peter because such a sentence would allow him to continue fulfilling his obligations at home and at work, while ensuring that the public at large would benefit from Peter's extraordinary skill set.

To that end, Sister Barbara Connolly, a licensed social worker who works at Hour Children, has proposed that as part of his sentence, Peter perform community service at Hour Children, which serves as a community service resource for the United States District Court for the Eastern District of New York.

---

[69] See letter of Richard Born, Ex. 45 to Appx. A.

[70] See letter of Ira Drukier, Ex. 6 to Appx. A.

> The organization works with incarcerated and formerly incarcerated women and their children.  We work in all of the New York State Correctional Facilities for women – Albion; Bayview; Beacon; Bedford Hills and Taconic.  We have five residences in Long Island City and Astoria, NY for women and Children.  Hour Children provides the women with a "second chance" assisting them with parenting the child they had in the Nursery at either Bedford Hills or Taconic or reuniting with a child from foster care or family.  The organization has a large volunteer base and many of our "volunteers" are community service workers referred by the US District Court – Eastern District.[71]

Sister Connolly believes that Peter would be especially valuable to Hour Children in helping create employment opportunities for the women who are no longer incarcerated, and through fundraising.[72]  Additionally, in the coming months, Hour Children is hoping to begin a large construction project at its Long Island City headquarters.  Peter's expertise gained through renovating and running hotels, combined with his knowledge of the needs of programs like Hour Children, could prove very valuable during this project.

Peter is a uniquely qualified defendant for community service at Hour Children. Not only does he have a degree in social work, but he also has experience working with troubled mothers (through his commitment to the Red Cross Family Respite Program during his tenure at the Roger Williams Hotel), as well as at-risk children.  Additionally, as a result of his own experience in pleading guilty and being sentenced, Peter likely will have an ability to relate to the women who participate in the program, and hopefully will develop connections with them that will benefit and the women and children.

Over the years Peter has worked as a social worker and a business manager and owner, he repeatedly has sought to give people – troubled teens, friends in financial need, employees with no experience or difficult personal circumstances – a second chance.  A sentence

---

[71] See letter of Sister Barbara Connolly, LMSW, Ex. 4 at Appx. A.

[72] See id.

of home confinement and community service would provide Peter with the same "second chance" that he has afforded others, while simultaneously punishing him appropriately for his failure to fully report his income for the tax years 2001 and 2002.

## **CONCLUSION**

Peter Arest has great remorse for the offense that has brought him before Your Honor.  He recognizes the harm he has done, is ashamed of his conduct and has committed himself to living his life as an upstanding and honorable person.  As the letters submitted on his behalf demonstrate, he is a man who consistently puts others before himself, and who prides himself on kindness, charity and devotion to his loved ones.

This Court can and should fashion a sentence that is non-incarcerative but that reflects the seriousness of the offense, promotes respect for the law, affords deterrence, protects the public and provides just punishment, without damaging innocent third parties.  For the foregoing reasons, we respectfully submit that the appropriate sentence in this instance is home confinement combined with community service.

Dated: New York, New York
      July 3, 2008

MORVILLO, ABRAMOWITZ, GRAND,
IASON, ANELLO & BOHRER, P.C.

By           /s/ John J. Tigue, Jr.

John J. Tigue, Jr. (JT-4818)
Barbara L. Trencher (BT-6722)
Attorneys for Defendant Peter Arest
565 Fifth Avenue
New York, New York 10017
(212) 856-9600

35

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                             :

UNITED STATES OF AMERICA      :
                             :

       against             :               08 CR 214 (KMK)
                             :

PETER AREST,               :

            Defendant.     :

                             :
------------------------------------------------------x

---

**APPENDIX A
TO SENTENCING MEMORANDUM SUBMITTED
ON BEHALF OF PETER AREST
(LETTERS)**

---

MORVILLO, ABRAMOWITZ, GRAND,
  IASON, ANELLO & BOHRER, P.C.
Attorneys for Defendant Peter Arest
565 Fifth Avenue
New York, New York 10017
(212) 856-9600

# **TABLE OF CONTENTS**

Tab/Exhibit

Alice Cutler.................................................................................................................... 1

Jeffrey Arest.................................................................................................................. 2

Iris Knight Arest ........................................................................................................... 3

Sister Barbara Connolly................................................................................................ 4

Justin K. Arest ............................................................................................................... 5

Ira Drukier .................................................................................................................... 6

Jose Acosta ................................................................................................................... 7

Phillip Fields................................................................................................................. 8

Francis J. Troy .............................................................................................................. 9

Vernette J. Johnson..................................................................................................... 10

Bella Ilyayeva ............................................................................................................. 11

Alba Marina Nahar ..................................................................................................... 12

Nancy Trojeckas ......................................................................................................... 13

Alana Nicole Arest ..................................................................................................... 14

Allison H. Arest .......................................................................................................... 15

Marsha Arest................................................................................................................ 16

Melanie Arest.............................................................................................................. 17

Eric J. Beardsley ......................................................................................................... 18

Judd A. DeRario ......................................................................................................... 19

Nina Levin ................................................................................................................... 20

Brian Levy ................................................................................................................... 21

Dr. James A. Brunetti II ................................................................. 22

Gary Adler ...................................................................................... 23

Allison and Aaron Eiges ................................................................ 24

Ellen R. Morehouse ....................................................................... 25

Steven and Stephanie Roth ........................................................... 26

Thomas Wallis ................................................................................ 27

Paula and Jeff Weckstein .............................................................. 28

Laureine Knight Greenbaum ........................................................ 29

Ken Greenfield ............................................................................... 30

Barbara and Peter Gold ................................................................ 31

Ninette A. Stiskin .......................................................................... 32

Connie Cohen ................................................................................. 33

Mayer Stiskin ................................................................................. 34

Bruce Goldsmith ............................................................................ 35

Jeffrey Gural .................................................................................. 36

Dr. Jim Rooney .............................................................................. 37

John Venetis ................................................................................... 38

Richard J. Hoffman ....................................................................... 39

Dr. Douglas Rosen ........................................................................ 40

Paul Schur ...................................................................................... 41

Richard A. Sporn ........................................................................... 42

Dr. Michael J. Strongin ................................................................. 43

Steven H. Gains ............................................................................. 44

Richard Born ............................................................................................................ 45

Herbert and Susan Adler ...................................................................................... 46

Jamie Faye Arest .................................................................................................... 47

Jeffrey Bank ............................................................................................................ 48

Michael Bonagura .................................................................................................. 49

Jody Cutler .............................................................................................................. 50

Sandy Degenhardt .................................................................................................. 51

Jerry Feldman ......................................................................................................... 52

Stanley Goldberg .................................................................................................... 53

David R. Greenbaum .............................................................................................. 54

Dr. Robert A. Kutnick ........................................................................................... 55

Robert Rimberg ...................................................................................................... 56

Thomas Roth ........................................................................................................... 57

Theresa Roth ........................................................................................................... 58

# EXHIBIT 1

**ALICE CUTLER**
**215 West 90th STREET**
**NEW YORK, NEW YORK 10024**
**212 875- 8554**

May 31, 2008

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Room 533
White Plains, New York 10601

Honorable Judge Karas:

I am the president of a group of restaurants in the metropolitan area.   I met Peter when I was thirteen years old which is about 50 years ago.  I consider him to be one of my closest friends.  Peter is one of the most generous people I have ever met.  He gives of himself to help others in a multitude of ways.  He is a supportive, caring, intelligent, insightful, and a loving human being.

Peter and my late husband shared a very close friendship and they had been friends for a very long time.  When my husband passed away suddenly, Peter, and his wife Iris, were my strongest support system.  Peter made himself available to me day and night.  He gave me advice and counsel that was heartfelt and helpful.  There was nothing he would not have done for me.  He would have made almost any sacrifice to help me during this very difficult time in my life.  I can never repay him for his kindness and concern.

I remember a very long time ago when Peter and my husband were child care workers at Hawthorne Cedar Knolls, a residential treatment center in Westchester.  His Masters in Social Work coupled with his calm and caring demeanor gave him the skills and ability to develop a trusting relationship with the residents, many of whom stayed in touch with him for years.  Peter continues to fulfill his commitment to children by being president of the Summit School Board.  Summit is a school for learning disabled, developmentally disabled, and emotional disturbed children.   He has been a board member for sixteen years.

The relationship that best exemplifies Peter is his devotion to his mother.  Peter is the son all mothers wish they had.  He has taken care of her and made sure that all her needs, physical and emotional, have been met.  He is devoted and caring, kind and patient.  She has lived with him and his family for a very long time. She has been able to develop very strong bonds with her grandchildren who adore her.  Lily is 98 years old, and there is no doubt in my mind that her longevity is directly related to the happiness she has felt being cared for with such respect and dignity.

My children love and adore Peter.  He has become a surrogate father to them.  He has helped to fill a deep void left by the loss of their father.  It gives me great comfort to know that he is there for them.  He would go anywhere, or do anything to help and support them.   Peter has an unwavering sense of responsibility, not just to my children, but to anyone he knows.

As you go through life's journey sometimes you are lucky enough to find a true friend.  I feel so grateful that Peter is that person in my life.  Words cannot sufficiently express how much he has given me.  He is a rare individual worthy of living his life with dignity and I believe worth a second chance to demonstrate to Your Honor his continued commitment to his family, his friends, and our community.


Sincerely,

*Alice Cutler*

Alice Cutler

# EXHIBIT 2

11365 North Skywire Way
Oro Valley, Arizona 85737
May 18, 2008

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Room 533
White Plains, New York 10601

Dear Judge Karas,

I am Jeffrey Arest, older brother of Peter Arest. I will be 65 years old next month, am a retired administrator of a residential center for disturbed adolescents, and reside in Oro Valley, Arizona. Obviously I have known Peter extremely well. He is a good person. We have always been close, even when living thousands of miles apart. My purpose in writing to you is to offer some details about Peter's life that I hope you might consider, and encourage you to be lenient when imposing his sentence.

In June of 1970 I asked Peter to give up a successful business venture in California, relocate to New York and come to work for the Jewish Board of Guardians' Hawthorne Cedar Knolls school in Hawthorne, New York. In his role as a "cottage parent", Peter helped untold numbers of emotionally disturbed teenagers to cope with the stress in their lives. At the same time, Peter paid for and attended Columbia University School of Social Work and obtained his Master of Science degree in Social Work. He attended school during the day and worked the evening shift in the cottage. He was regarded throughout his social work career as a person of high integrity who was skillful as well as intuitive in working with troubled youth.

Peter's work at Hawthorne was so successful that he was hired by the Mt. Pleasant Union Free School District, a Special Act School District, to work on the Pleasantville Cottage School Campus. (A Special Act District is set up by the State of New York for the education of children in residential treatment centers.) There he distinguished himself as a school Social Worker and eventually met his wife Iris, who was a PHD candidate and psychology intern employed by the Jewish Child Care Association.

For many years, and even after Peter left social work and went into business, he remained acutely aware of and attentive of the needs of troubled youngsters and those less fortunate than himself. I would often send young minority adults to him for advice, and on more than one occasion he offered them jobs in one of his businesses. He has kept in touch with former students and to this day, remains both emotionally and financially supportive of the therapeutic residential community.

I would like you to consider a second issue which is of great concern to me. My mother Lillian Arest, who will be 99 years old in October, has been under Peter's direct care for the past 15 years. They share a special bond and it would be inordinately stressful for her not to have my brother around now that she has become so secure in her surroundings. Unfortunately it is difficult for me to visit her, as I have a permanent lung condition which prohibits me from air travel. My mother and I both share a genetic predisposition, known as a Protein C deficiency, which makes long travel cause a susceptibility to blood clots. The resultant complications can be life threatening. Because of my illness, Peter has willingly assumed the day-to-day responsibility of caring for our mother for over 15 years. While Peter might not agree, this has been a substantial burden to Peter and his loving wife Iris. I am very grateful to him for this. May I repeat that separating my mother from Peter's care would be extremely stressful for her.

I greatly appreciate your taking into consideration the concerns and information that I provided in this letter when imposing what I hope will be a lenient sentence on my brother. Thank you.

Sincerely,

Jeffrey Arest

# EXHIBIT 3

# IRIS KNIGHT AREST, Ph.D.
## 12 DWIGHT LANE
## GREENWICH, CT. 06831
--------
### (203)552-1640 (home)
### (914)967-6100 ext. 1214 (office)
### (914)844-3325 (mobile)

June 5, 2008

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas, Rm. 533
White Plains, N.Y. 10601

Re: Peter Arest

Dear Judge Karas,

My name is Iris Knight Arest. I have been Peter Arest's wife for the past 32 years. We met at the Pleasantville Cottage School, a residential treatment center under the auspices of the Jewish Child Care Association, for at-risk youngsters with both learning and emotional problems. At the time I was fulfilling my internship responsibilities as part of my Ph.D. program in Psychology from New York University. I was working as a psychologist in the clinic and Peter was the school's social worker/administrator. We were both involved in many of the same cases. I was immediately drawn to Peter's outgoing, friendly, warm, and empathetic disposition, the way he so easily interacted with the most difficult youngsters with humor and respect. Currently, I am the Senior Psychologist in the Rye City School District, completing my 21st year.

I have always felt like one of the luckiest women in the world to be married to one of the most devoted, loving, selfless and supportive husbands in the world. Even while working seven days/week and holding down two jobs, Peter always made sure to bring home food for me for dinner while working on completing my dissertation. I can remember like it was yesterday the day I returned home from defending my dissertation to find a license plate with IRIS Ph.D. and a box of stationery with the letterhead, Iris Knight Arest,

Ph.D. This is a man who has nurtured my soul for 32 years. I treasure every day we have spent together. My life has been blessed because of him.

His devotion to his family is incomparable. He has always put his family first, before his own needs. He has been my partner in raising two incredible children who admire, adore, and respect their father. Justin who is 27 years old graduated from George Washington Law School and Alana 23 has just completed a dual masters in early childhood and special education at Fordham University with a 4.0 GPA. Both children depend on their father in a healthy way for his sound advice, good counsel, and support. They hate to disappoint him in any way. Unlike most homes where the mother is often the go-to person, in my home it has always been the father. For many years I did not even carry a cell phone because the children would automatically call Peter with questions. Peter also cares for his soon-to-be 99 year old mother who lives in our home. She depends on him 100% both financially and emotionally. While he has an older brother, Peter has assumed the sole role of caretaker for his mother ever since his father passed away approximately 35 years ago. His brother lives in Arizona and plays absolutely no part in her well-being. Peter is the most consistent person in her life, the one she trusts the most. He is often the only one she will listen to and oblige whether it is to take a shower or eat her food. She can often be found at the kitchen table with her head down sleeping waiting for Peter to return home from work. As time goes on she is becoming increasingly more confused, disoriented, disorganized, and depressed.

Peter has also been the glue keeping **my** family together. My mother has not been well enough to host family gatherings for many years. It is Peter who not only insists we all get together for holidays, but who does all the food shopping and cooking. He has included my daughter-in-law's family over the past few years even before she was married to our son. Even though I have two married sisters, it has always been Peter upon whom my parents depend. Whether it is to fix a leak in the sink, making their house handicap accessible, spending countless hours in a hospital, Peter is the first one to offer his help. My home has always been the one to which my children's friends gravitate. More than me, it has been Peter who welcomes each and every one of them with an open heart, warmth, humor, and loving smile, not to mention a delicious meal.

Peter's generosity of spirit is also shared with his friends. If you can call yourself Peter's friend, you are one very lucky person. His friends, like his

2

family, are very important to him. One often hears the expression that Peter would give the shirt off his back for a friend. He has always helped his friends financially to start up businesses and has always offered sound and trustworthy advice. Since Peter does not have a jealous bone in his body, his advice can be counted on to be truthful, honest, and helpful. His employees love him and are extremely loyal to him and as a result of his generosity remain with him for many years. He always encourages them to better their lives even if it means leaving him for a better job opportunity.

I always marvel at the respectful, kind, and courteous way Peter interacts with complete strangers. While most people do not take the time or the interest to even make eye contact, Peter always asks people how they are and how their day has been going. There are at least 20 strangers who would write letters about Peter's character if they were asked. These include the woman who puts the carts on the moving walkway at Costco. She recognizes Peter every time she sees him and strikes up a conversation with him. One of the managers at Shemins Nursery in Purchase who tells the men who load the plants into the car to take extra special care of Mr. Arest because he is his favorite customer. The list goes on to include cashiers in supermarkets, tellers at banks, waiters and waitresses in restaurants. The children and I are often impatiently waiting outside for him to stop talking so we can move on to our next activity.

I know better than anyone how greatly Peter has been suffering from the consequences of his past actions. While he works hard to have a strong and brave face when he is with the children, his aging mother and in-laws, it is all a façade. When alone with me, he rarely has a smile on his face and his usual positive and upbeat personality is wanting. He tends to be rather somber, and uncommunicative, rather closed off, especially at night when we are alone. The impact of his actions on his family worries him greatly. The thought of having to leave his family for even a minute to care for themselves distresses him. He has always been the one who makes things better, who has sheltered and protected all of us from pain. While I would like to consider myself an independent woman, Peter has out of love created a rather dependent wife. He makes all the big decisions and takes care of all the household responsibilities. He is the one who puts food in the refrigerator and makes sure there is dog food and paper goods for the house. I would be lost without him. We have only been apart a handful of days in all our years of marriage. I also worry terribly about Peter's health. I feel it would be imperative for his personal physician who knows his history to be

3

able to continue to oversee his medical issues. I worry about my own health as well. Ever since I was made aware of the investigation of Peter, I needed to increase my blood pressure medication as well as take sleep aids to have a good night's sleep so I could function at work.

In light of all the aforementioned information, I implore you for the sake of Peter, myself, and my family to be lenient when you decide my husband's sentence. Please especially for my mother-in-law's sake whose health is diminishing on a daily basis. I truly feel that if she doesn't see her son she will surely die. He is her lifeline!

Please keep in mind that this is a man whose worst flaw is seeing only the good in people often ignoring their negative qualities. People like Peter are few and far between. He is an all around wonderful person, family man, and dedicated friend. I would like to believe that all the good he has done over his lifetime has to have made this world a better place and has to outweigh such an error in judgment.

I am pleading for my husband. Seeing his pain, degradation, loss of self - esteem and shame has been one of the most painful heart wrenching things we as a family have had to watch.

Thank you so very much for your time and consideration.

Iris Knight Arest

4

# EXHIBIT 4

Sister Barbara Connolly, LMSW
279 North Broadway
Yonkers, New York 10701
Bcon616@aol.com

June 11, 2008

The Honorable Kenneth Karas
United States District Court
Southern District of New York
300 Quarropas - Room 533
White Plains, NY 10601

Dear Judge Karas,

My name is Sister Barbara Connolly and I am a licensed social worker, with 32 years of social work experience. I am currently working at an organization in Long Island City, NY – Hour Children. The organization works with incarcerated and formerly incarcerated women and their children. We work in all of the New York State Correctional Facilities for women – Albion; Bayview; Beacon; Bedford Hills and Taconic. We have five residences in Long Island City and Astoria, NY for women and children. Hour Children provides the women with a "second chance" assisting them with parenting the child they had in the Nursery at either Bedford Hills or Taconic or in reuniting with a child from foster care or family. The organization has a large volunteer base and many of our "volunteers" are community service workers referred by the US District Court – Eastern District.

I am writing on behalf of Peter Arest who is scheduled to be sentenced by you on the 18th of July 2008. Although I realize that Peter has pled guilty I would like to intervene on his behalf with regard to his sentencing. I knew and worked with Peter for ten years (1985 – 1995) while I was the Program Manager for the American Red Cross Family Respite Center – a homeless shelter program for mothers and children. The shelter program was housed in the Roger Williams Hotel where Peter was the manager.

During those ten years, Peter was always very professional and responsible. He had a good rapport with his own staff as well as the staff of the American Red Cross. He was compassionate and understanding of the women and their children, treating them with dignity and respect while holding them to being personally responsible for themselves and their children. Peter was always accommodating to the needs of the program and the staff of the American Red Cross. He always came across as a basically good person.

As I mentioned above, Hour Children is a resource for "community service" for the United States District Court – Eastern District of New York and I, personally would welcome Peter Arest to Hour Children should that be a possibility as an alternative to incarceration. I am confident that our Executive Director, Sister Teresa Fitzgerald, CSJ, would also welcome his expertise and services. If you would like to know more about the Hour Children organization, you can log onto our website: www.hourchildren.org.

Thank you for your time in considering this letter on behalf of Peter Arest.


Sincerely,

*Sister Barbara Connolly, LMSW*

Sister Barbara Connolly, LMSW
Social Work Coordinator of Mental Health @ Hour Children

COMMUNITY SERVICE POSSIBILITIES
FOR PETER AREST

1. ASSIST OUR JOB DEVELOPER, JOHANNA FLORES, IN COMMUNITY OUTREACH & PUBLIC RELATIONS TO EMPLOYERS IN THE LONG ISLAND CITY AND MANHATTAN AREA IN CREATING EMPLOYMENT OPPORTUNITIES FOR THE WOMEN OF HOUR CHILDREN.

2. ASSIST SISTER TERESA FTZGERALD, EXECUTIVE DIRECTOR AND DIANA MATTSON, DEVELOPMENT DIRECTOR WITH FUND RAISING FOR THE AGENCY.

# EXHIBIT 5

JUSTIN K. AREST, ESQ.

June 12, 2008

In regards to: Peter Dale Arest

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Street, Room 533
White Plains, NY 10601

Dear Judge Karas,

My name is Justin Arest and I am Peter Arest's eldest child and only son. I will be twenty eight years old this September and I was recently married to Allison Arest. I graduated from NYU-Stern with a BS in Finance and International Business and received my JD from GW (I transferred there from Pace Law School). I worked as an Associate at O'Melveny and Myers in their New York office and am currently fortunate to work with my father in the Real Estate Management field.

Peter Arest as a Father

My father has always worn many hats. He has been the family doctor, mechanic, and adviser. I hope that he has never felt taken for granted but I am not sure if it would be possible for my family to ever show enough appreciation. The relationship we share is rare. My experiences have shown me that a typical parent-child relationship falls into one of two categories. One is that of a classic parent-child relationship where the parent is always there for advice and structure but the familial hierarchy is clearly established. The alternative is that of friend-child where parents in this example spend plenty of quality time with their children but more as a peer than as a parent. Our relationship is rare because I have both. He has always been supportive, there to teach me right and wrong, and set boundaries. Yet, as I have grown, our relationship has evolved into a true friendship as well. I can easily say that he is my best friend.

Peter Arest is the kind of father that missed a total of one game during the ten plus years I participated in various youth sports. From the age of six until the age of eighteen I played at least one but usually two or three sports per year. Not only was my father present at all but one game/match, but he also attended many practices and even coached a few teams as well. It is important to note that his interest was not like that of many parents who have professional sports aspirations for their children. I think my father's main hopes were for me to have fun, become a team player and most importantly not get hurt. I was horrible and yet he never tried to deter me from joining any team or league and would never say 'no' when I would ask him to go to the backyard to work on fundamentals.

As luck would have it, the one game he was unable to attend I hit the only homerun of my baseball career. I remember Nick the umpire saying how badly he felt for me that my father was not there. My first thoughts however were my excitement to share the news with him and my worry as to how badly he would feel.

My sister and I never had to worry about fighting for my father's time growing up, especially when it related to schoolwork. I will never forget the hours that he spent with me each week in tenth grade going over my Sequential Math II extra credit assignments. He has always had the ability to get me to the answer while ensuring that I found the solution on my own and that I would be able to build on that knowledge.

He is the kind of father that altered his work schedule around my fear of taking the bus in elementary school. My father was leaving the house before 8am at that time so that he could miss morning traffic. When he saw my face as I was on my way to the bus stop he made me an offer. If I would take the bus home every day he would drive me in the mornings. I realize now what a sacrifice that was because his commuting time went from forty-five minutes to over an hour and a half. I also realize what a great lesson in socialization he had taught me because our deal helped make me forget my fears on the trip home.

Peter Arest is the kind of father who was able to spoil me rotten but also started me working at minimum wage at a young age to ensure he instilled the value of money.

He is the kind of man that when I originally brought my wife home he instantly recognized my care for her and has treated her as his third child ever since.

Peter Arest the Social Worker

My father has an MSW from Columbia University. He worked in residential treatment centers for troubled youths before I was born. While I have no firsthand experience with him in this capacity I do have memories of stories from some of his former coworkers. One such coworker, Steve Buck, worked with my father for some time. Steve, a five hundred pound teddy bear, was adored by the children he worked with. I would love to hear the stories about my father and his role with the children. He and my father would explain that most of the children they worked with were not inherently troubled, but rather products of damaged families. It was clear that many of them only needed an older brother/father figure. That is exactly what my father was for them. I probably owe those children a great deal. While allowing my father to help them find a better future for themselves they probably helped my father learn to be the incredible parent that he is. Steve unfortunately passed some years ago but I will always be grateful for the stories and the admiration for my father he expressed.

Peter Arest as a Businessman

My father came from a lower middle class family. He paid his way through undergraduate and graduate schools and took loans out in order to begin his career as an entrepreneur. While still in college, he bounced around from vocation to vocation searching for his path. The one constant however was that he was always the hardest worker. I remember my great uncles always telling me that I should just become half the worker that my father was and I would be a success. When my father left the social work field and found his calling as a hotelier and the for profit world, it was always clear that he never forgot his roots. I will never forget the look of pride in his eyes when he took me to the house he grew up in. It was a two bedroom one bathroom house that his father had closed off the garage so they could have a den. He told me how he used to mow the lawn every week during the warmer months and think it would take forever. He then looked at me with a smile and acknowledged that his parents' house had been no bigger than his current guest house.

My father is a poster child for the American Dream and the hard work it takes to make it happen. He is also an enormous champion for the less privileged and their search for their own such Dream. I am unable to count the number of times he has lent money, advice, and other resources to

employees. I remember about six weeks ago we were stopped on the street by a former employee of my father's at The Roger Williams Hotel. His name is Paulie and his English was not very good. My father and he had not seen each other in at least thirteen years. Paulie wanted to take the time to thank my father for being such a great boss and make sure that my father realized how appreciated he was. Paulie said that he and many other employees did not truly appreciate what an amazing boss my father was until he was gone. Apparently many employees had left that Hotel following my father's departure. What he was in fact doing was apologizing for taking him for granted and wishing him and our family nothing but the best.

My father makes a concerted effort to not only know every employee's name but also the names of their children. While employees are encouraged to follow the hierarchy in the Hotel when dealing with complaints, they know that he is always available to them (especially for personal issues). He has given employees opportunities for advancement when many others would have argued they were not and would never be qualified. One example is Alba Nahar. Alba began working at the Hotel Metro in the laundry room. She spoke very little English but worked hard and eventually became a housekeeping supervisor. At most Hotels and most likely at the Metro if it had been up to the General Manager, Alba had hit a glass ceiling. While one might not think that the Managing Partner of a successful business would take the time to recognize the work ethic of a housekeeper who spoke little English, my father instructed the General Manager to offer her the job of Executive Housekeeper when she offered herself for the position. I asked my father if he was sure that she was the right choice. The Executive position is demanding and I was concerned that the language barrier might alone cause a problem. My father looked at me with his usual smile and told me that she had something in her eye that made him certain that she would do whatever it took. Alba has become a pillar at the Hotel Metro and could not have been a better choice.

My pride for my father is not only due to his success but also to how he was able to achieve it. Something my father has repeated to me since I was young, and is something of a motto for him, is that 'you can make money with a heart'. The first time I remember him saying that to me was in his office as Managing Partner of The Roger Williams Hotel. There had just been a problem with one of the women who was a resident of the Hotel through the Red Cross of New York's program for battered women. His controller at the time, Betty, made a comment about their ability to generate more income by renting the rooms to City organizations.. My father immediately dismissed the notion. He was confident that Jack and (Sister) Carol would deal with the issue and that even if there were higher revenues to be sought elsewhere, the program was run well and was serving a noble purpose. He explained to me that some of these women only needed the chance to get back on their feet and that the Red Cross and The Roger Williams gave them a safe environment to do that. There were strict rules in the program including no men and no drugs or alcohol. He told me of women over the years that had come back to (Sister) Carol and thanked her and the program as well as the staff of the Hotel for helping to save their lives. As I grew older and realized that this attitude in business was not the norm I began to appreciate my father's actions even more.

Peter Arest's Remorse

Ironically, my father the social worker is not the type to wear his emotions on his sleeve. I am not sure if he has been like this his entire life but I am sure the loss of his father at a young age had some effect. In the last ten years I can only think of a handful of times when he has become more than just teary eyed. One example of such emotion was during his speech at my grandmother's ninety-fifth birthday party. My father had just learned he was under investigation a few days prior to the party. He was so depressed and remorseful over the days that followed. As he spoke of my grandmother and our family all of the emotions that had been bottled up came to the surface. Most in attendance just thought my father was tearing up because of his love for his family. While his love for family was a factor, his remorse and embarrassment was what took over.

I have never seen my father as down as he has been in recent times. He has received tremendous support from family and friends but he is clearly ashamed for letting them all down. He has such guilt as to how this has effected our family that he convinced my mother not to appear in court when he entered his plea before your honor. He needed her support and instead wanted to shield her in some way from his wrongdoings. My parents love for each other is too great however, and my mother listened to the whole proceeding from just outside your honor's courtroom. As your honor left the bench she entered and I could see a tear come to my father's eyes.

As ashamed as my father is he has still made sure to talk about it with me. He has explained to me that what he did was wrong and he is embarrassed that he ever allowed it to happen. He has also apologized to me for being something of a hypocrite. He has always taught me that there is no easy way to make money. That is why they call it earning a living he says. When we would hear of someone having a tax issue he would explain to me how foolish it was to commit such acts. He would say that the only reason you pay taxes is because you are earning money. If you are upset with the amount of taxes that you are paying then there is only one solution: make less money. I have no doubt in my mind that this was nothing more than a lapse of judgment and that there is no chance of recurrence.

My father has also expressed great concern about a possible absence. He is very concerned about my mother both emotionally and physically.. He knows that the great dependence put on him by the family would be shifted to me and does not think such a burden is fair. He is concerned for my wife and sister who have taken this very hard especially because my father's actions are so out of character.

He also worries for his other family at the Metro. His concern for his employees relates to their morale. He would not admit it but my father is more of a father figure in many ways for many of them. There have been concerns voiced about the impending recession and what it means for them and there is no doubt that it is my father's presence that relieves most anxiety.

Finally, and possibly most importantly, my father is very concerned about my grandmother. Lily Arest will be ninety-nine years old this October. She has lived with my parents on and off for the last twenty plus years. It started out as a summer arrangement. It was both an opportunity to spend time with the family and escape the oppressive California summer heat. Her stays became longer each year until my father bought her an apartment in New Rochelle (where we lived at the time). A number of years ago it became clear that she could no longer live on her own. It was the first time my grandmother did not put up a fight when the topic was broached. I think she was ready to complain when she heard that my parents would be happy to have her live full time with them and her face instantly lit up. I never realized how dependent she is on my father until recently. I have begun to realize that her strong will and independence has really been a display of confidence drawn from the sense of security instilled by my father. My father has always been a shout or a phone call away and would never say no to any request. He has been her sole provider since my grandfather passed away almost forty years ago. As her mind has started to wander it is clear that my father's presence is more and more necessary. She still has some great days when she remembers most of the family (not always by the right names) and is calm and happy. Unfortunately more and more often she slips into a bad place and becomes somewhat frightened. Sometimes she realizes that she should know who we are and plays along but there are times when she becomes very aggravated and confused. It is so difficult to see her like that. Fortunately, my father is able to stare her in the eye and calmly bring her back. I honestly do not know if she realizes it is him or if she sees my grandfather in him but regardless she returns with a smirk on her face and sometimes a tear. I am very afraid for my grandmother should my father have to be away from her for any period of time.

<u>My Feelings</u>

Since my father pled guilty before your honor in March, I have been asked by many friends and relatives how I feel. They realize that something like this has to be a strain on a family, especially one as close as ours. There is also a sense of reluctance, however, to discuss the matter. The feeling of many is that I may be embarrassed or ashamed. While I understand why one may assume that I have those feelings I do not. My father lost his dad when he was in his early twenties. I unfortunately know of many others who have lost a parent or dealt with a serious family illness. I just lost a close friend in a tragic boating accident in Hong Kong this past week. He was twenty eight years old. I can only consider myself blessed. What my father did was wrong and he knows it. How he dealt with it I believe to be admirable. Instead of fighting on in the court system, my father decided that his family had been through enough and that he would stand accountable for his wrongdoing.

I can only hope that your honor is able to see the amazing person that my father is and all the good he has accomplished and has yet to achieve. I pray your honor can show leniency at his sentencing.

Respectfully yours,

Justin K. Arest

# EXHIBIT 6

Ira Drukier
375 Greenwich Street
New York, NY 10013

June 18, 2008

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Room 533
White Plains, NY 10601

Dear Judge Karas,

I am writing this letter to you in hope that the information contained herein will give you some insight to nature of Peter Arest, which you will take into consideration in making your decision with regards to sentencing.

I have known Peter Arest for more than 15 years, and been his business partner for most of that time. We first worked together on the conversion of the Collingwood Hotel into the Hotel Metro. The old Collingwood was a blight on the neighborhood (35th Street and Avenue of the Americas) when we first start to renovate it. Now, as the Hotel Metro it has dramatically changed the neighborhood for the better. As witness to this transformation, two new hotels are being built a few doors down from the Metro, where empty lots once stood.

When Peter came to the Metro, there was a young lost soul working at the hotel, Frankie. Troubled, non-communicative, and looking a bit scary, he looked like many homeless people. The partners thought, the best thing for the project would be to fire everyone and start with new employees. The work ethic at the hotel we took over was not something to be proud of. But Peter saw something in Frankie, a young man who did not graduate high school that made him want to help. So Frankie stayed on with the hotel. Under Peter's tutelage, Frankie was taught many aspects of hotel operations, the front desk, the bell station, housekeeping and others. He went on to complete high school, and is a valued employee at the front desk. Personable and friendly, Frankie is a changed person. He now has a solid life. Without Peter, this would never have happened. Frankie might have become just another young person, caught up in drugs or worse.

Peter has now become the heart and soul of the Hotel Metro. His absence from the hotel could only negatively affect both the employees and operations of that property. Since there are many partners and employees in this project, Peter's absence would affect many people. I am sure that they would encourage the court to consider all these issues.

Peter is a good friend, business partner and most importantly a good person, and I hope this letter in his support will be taken into consideration in imposing your sentence.

Sincerely,
Ira Drukier

# EXHIBIT 7

Jose Acosta                                              Tel 845-473-5904
10 Degarmo Rd                                            Work 212-403-6624
Poughkeepsie, NY 12603                                   Cell 212-203-1401

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas. Room 533
White Plains, NY 10601

Dear Judge Karas

My name is Jose Acosta and I am the Director of Engineering for the Penn Club of New York
(University of Pennsylvania) 30W 44th Street since 2001. I am also an Artist and part owner of
G.A.S. (Gallery And Studio) in Poughkeepsie, NY. I am 42 years of age and live at 10 Degarmo,
Rd. Poughkeepsie, NY 12603.  I worked for Peter Arest as the Chief Engineer of Both Roger
Williams Hotel and Metro Hotel from 1986 till 1998.

I realize that Peter Arest has pleaded guilty in federal court and I am writing this letter so that
you will better understand the fine person that he is and will hopefully exercise leniency in
imposing a sentence.

I started working for Peter Arest at the age of 18 although I was young I had several years of
experience and Peter gave me the opportunity to become the Chief Engineer of the Roger
Williams Hotel.  At 18 I was the youngest Hotel Chief Engineer in NYC.  All I needed was the
opportunity and Peter was kind and wise enough to give it to me. I worked hard and I was
rewarded by raises and promotions throughout the years.  When I was married at 19 Peter and his
wife Attended our celebration, When my Daughter and Son were born Peter and his wife were
also helpful to our young family.  When my wife had post pardom depression after our first child
was born and the family of my wife placed her into the hospital for the Insane. I called Peter and
he arranged for his wife Iris who is a physiologist to visit my wife and get her released, Iris also
provided us free counseling and both me and my wife will always appreciate the extra efforts
they made on our behalf. Peter is like a father figure to me and I think he has the biggest heart of
anyone I know.  He is a family man and has the most beautiful family ever.  I left Peter Arest in
1998 to become the Director of Engineering for the Millennium Broadway and later on the St.
Moritz Hotel, the HUDSON and then here at the Penn Club of New York.  Peter always
provided excellent reference letters and advice for me and is very much a part of my success.  I
have been the Secretary, Coordinator and Co-President of the Hotel Engineers Association in
NYC.  I went back to school NYU & BOCES Tech for certifications and other licenses that were
required for advancement in my field and Peter always encouraged me to move forward in my
field. He is an excellent roll model and I am glad to have had him in my life and very proud to
know him after all these years. He visited my Art event at Amsterdam Whitney gallery in NYC
and I was so proud that he could see that I was also succeeding as an artist.  I still have the photo
of him and Iris in my Gallery book and I will always point at that picture and say there is my first
hotel boss Peter Arest one of the greatest men around.  I will always feel that way about Peter
and all his wonderful family because they are very special.

Dear Honorable Judge Karas please consider all these great things Peter Arest has done when
making your decision.

Jose Acosta
Jose Acosta
Director of Engineering

# EXHIBIT 8

Dear Judge Karas

My name is Phillip Fields, I am 52 years of age I have known Peter Arest for over 20 years to be exact since 1982. Initially, I approached him regarding working in the hotel business. I had no experience. he hired me upon a reccomendation of a callegue of mine which was a friend of his. Upon working for him, he allowed me to develop and gain experience and to this day, thanks to him I'm still working in the industry.

He has always been a fair man, and through my personal experiences with him he has always took the people around him feelings into consideration over time there has been mutual respect and loyalty which developed into a genuine friendship. Example: He also took me out of the hotel business gave me and

ROGER

*hotel roger williams*

131 Madison Avenue  New York  NY  10016  |  Res: 888 448 7788  |  Tel: 212 448 7000  |  Fax: 212 448 7007  |  www.hotelrogerwilliams.com

opportunity to manage another business of his and also put me in an apartment in jersey city, since it was not in New York; after 2 years the business faltered and promptly brought me back to the hotel to ensure I would have a job. I found this as admiral act and will never forget it. As a african american man. I respect his loyalty and fairness from my personal experiences with Peter. Hopefully this letter conveys my positive interactions with Peter Arest over the years. I know of many other acts with others but I personally wanted to share my experiences, Judge Karas Peter is a good person

Sincerly

Phillip Fields

# ROGER
*hotel roger williams*

131 Madison Avenue  New York  NY  10016  |  Res: 888 448 7788  |  Tel: 212 448 7000  |  Fax: 212 448 7007  |  www.hotelrogerwilliams.com

# EXHIBIT 9

Dear Judge Karas,

My name is Francis J. Troy. I am 33 years old. I am currently residing in Jersey City New Jersey. I am an Employee of the Hotel Metro and have been for the last 13 years. I hold the position of the Reservations Supervisor. The Hotel Metro is owned by Peter Arest, and this is how your relations began.

I am aware that Mr. Arest has pleaded guilty. I would just like to shed some light on the type of man my self and many other see him as. I hope it has some impact in regards to his up coming sentencing. As I mentioned, I am 33 years old and have been working for the Hotel Metro for last 13 years. I was only was only 20 years old when the Hotel opened. I actually met Mr. Arest when I was 18 years old. I was working at the property before Mr. Arest purchased the building and was kept on duty through the renovation process.    When the Hotel Metro opened, Mr. Arest and the new management decided to keep me. One of my first very first encounters with Mr. Arest gave me a hint of the type of man he is. It was during the renovation process of the Hotel Metro and Mr. Arest came by the property with is wife, his son and his daughter. The whole family looked very happy. He did not know me at the time, but still made it a point to came over and introduce his family to me. He was very humble and I did not feel intimated, as I was talking to the owner of hotel I work for. I actually felt welcomed and very comfortable. His children even came over and talked to me for a while. They where also very humble and polite, which in my eyes is a reflection of their parents.

When I was 21 year old my grandmother passed away. I was living with her and my mother at the time. It was very difficult time for my family. My mother decided to move to Marilyn because we had a lot of family there. I did not want to leave the New

York area. I did not want to leave my family at the Hotel Metro, or put my career on hold, as I just received a promotion to the front desk. Do to Mr. Arest kind heart and approachable personality; I felt no hesitating in pursuing the advice of a man of his stature and character. Not only did he help alleviate the pain I felt from the lost of my grandmother with his kind words and open heart, but he also helped me get an apartment in a building that he owned in Yonkers N.Y. This would be a very big step in my life, as I received numerous promotions since and now, after starting out as a bellman, I am the Reservation Supervisor. I also wound up receiving the best gift one can ever receive; my first child.

Mr. Arest has continually gone out of his way to ensure a brighter future for myself as well my family. I received my Bachelors degree in Accounting in June 2007. This would not have been possible with out the help of Mr. Arest. Because I have my child Frankie, it was difficult for me to go to school full time, so it took me a little longer than most to receive my degree. It also caused me to take out several student loans; so many that I actually passed the limit of which I was aloud to borrow. I did not become aware of this until my last semester. I did not have the funds to pay for my last semester my self, and I was unable to take any additional loans. Again, this was a difficult time for me, as I worked extremely hard to obtain my degree and now in my last semester I would not be able to attend school. I needed some guidance. Again, with out hesitation I approached Mr. Arest. Not only did he lift my sprits by reminding me how far and hard I worked to even be in the position to graduate, but he also personal lent me the money to pay for my classes, ensuring me that I would in fact be able to obtain my degree. Again, this had a profound effect on my life as I now have my bachelor's degree.

Not only does this help enhance my future and career, but it gave my son the opportunity to see his dad graduate, and hopefully it will help to influence him to do the same.

Mr. Arest took a chance on me on more than one occasion. First, by agreeing to keep me on when the hotel opened, knowing I was only 18 year old with no hotel experience. He put his reputation on the line and letting me move into a co op building that he owned, and if it ware not for him, I would have probably never received my degree. Mr. Arest's kind words and patience played a huge roll in my getting over the loss of my grandmother. He also helped to shape my life and career. Not only do I think of Mr. Arest as the man who owns the property I work for, but I also consider him a role model and a friend. Mr. Arest goes out of his way to make people around him feel comfortable. He gives off the feeling that you are just as important as he is, even though he owns the hotel. I believe that any employee would describe Mr. Arest in the same light. He goes out of his way to great each employee in the morning, and wish them a good night before he leaves. This gives the hotel the feel of a family. I feel honored to even know a man with such great qualities, and privileged to be part of his extended family at the Hotel Metro.

Sincerely,

Francis J. Troy

# EXHIBIT 10

May 25, 2008


The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas, Room 533
White Plains, NY 10601


Dear Judge Karas,


I, the undersigned, am writing on behalf of Mr. Peter Arest.

I am 33 years old and reside at 1420 Wood Road, Apt. #1B, Bronx NY 10462 and
for the duration of five years I have had the pleasure of knowing Mr. Arest.
During the years of our acquaintance, I have known him in the capacity of
employer and friend.

As I know him both professionally and personally and find him to be a fair and
just employer and man; I beseech you when making your decision for sentencing
that you consider leniency on him.   I am aware that Mr. Arest has pleaded guilty
but his honesty in this matter further augments my belief that Mr. Arest is an
honest man- honest to claim his guilt knowing full well the repercussions.  It is
for this reason that I feel that much consideration should be given with regards
to his sentencing.

Over the five years I have known Mr. Arest he has not only been a good and
reasonable employer to me but an excellent friend.  Mr. Arest has helped me
become more financial independent and has been supportive to me when I faced
personal problems.

I can attest that there are many individuals Mr. Arest has helped financially and
in other ways to help alleviate unfavorable conditions.  At heart he is indeed a
good person.   Any means within his power where he can help alleviate hardship
on others, he is quick to aid.

Based on my knowledge of Mr. Arest's character, the acts to which he has pled guilty are inconsistent with his character. I've known Mr. Arest to have always been a fair and just man, very giving, humble and always seeking ways to help others. He is a responsible individual, and a good person at heart. He is always helping others while always seeking to improve their overall well-being.

I am asking that you take my letter into consideration when imposing your sentence and please be lenient.

Thank you for your time and consideration.


Yours Sincerely,

Vernette J. Johnson

# EXHIBIT 11

Bella Ilyayeva
102-21 63rd Road
Forest Hills, NY 11375
(347)453-0668

May 24, 2008

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Room 533
White Plains, NY 10601

Dear Judge Karas,

My name is Bella Ilyayeva and I'm a controller/ sr. accountant at Hotel Metro. I've been employed there since January 1995 and the person that hired me was Peter Arest. Prior to my employment with Hotel Metro I was attending college to get my degree for accounting. Back in the USSR I was a bookkeeper and when I came to US I decided to stay in the same field and get my accounting degree. At the time I had an interview with Peter Arest I was still attending college. I spoke enough English to get a job but no degree yet. Peter was kind enough to offer me a position as an accountant and I had a chance to complete my college education by taking night classes. I consider my self very fortunate and blessed that I had Peter Arest as my employer. He is the most kind and down to earth individual I've ever met. Shortly after my employment with Peter Arest I was in a situation with my two adolescent sons where we wanted to buy an apartment. Peter even helped me fund our purchase of a new home in which I reside till this day. Thanks to my employment with Hotel Metro till this day I was able to repay Peter that loan that he helped me get to purchase my apartment.

In our work place Mr.Arest is very kind to his employees. Anyone who doesn't know that Peter Arest is a co-owner of Hotel Metro will never know unless they are introduced to him as such. That is how simple and down to earth he is. He even lends a hand to fix things around the hotel. I'm 52 years old and within my work experience dating back to USSR I have never seen an employer be so kind, generous, big hearted and friendly with his colleagues and his employees like Peter Arest.

I also do the bookkeeping for Mr.Arest's apartment buildings in which some of our staff resides. At times these people aren't able to pay their rent on time (a situation you'd see anywhere else) and Peter never gives them a hard time. He is patient and allows some time for them to catch up. He is definitely not your typical land lord. I consider myself truly blessed and honored to be working for Peter Arest and his company. In my 13 years experience working at the Hotel Metro I never even thought of finding another job for a pay raise, change of environment or even different work experience. I never had a reason to do that because of the family-like environment

2

Peter Arest has created in Hotel Metro. These are all facts. My experience at Hotel Metro is real, the work environment is friendly and NOT what the typical corporate world has to offer. I'm certain that other employees can attest to the way I feel.

Over the last 13 years that I have known Mr. Arest I realizes that he is not only trustworthy person but he also trust in other and only honest people can trust to the people who are around them.

I'm asking that when making your decision that you consider what a kind individual Mr. Arest is and be lenient on him.

Sincerely,

Bella Ilyayeva

# EXHIBIT 12

June 9, 2008

The Honorable Kenneth M. Karas
United State District Court
Southern District of New York
300 Quarropas, Room 533
White Plains, NY 10601

Dear Judge Karas:

My name is Alba Marina Nahar, I'm 41 years old, I live in the 1386 "O" Street of Elmont in New York, I work in The Metro Hotel as the Executive Housekeeping Department, where Mr. Peter Arest is not only the owner and Boss but also coworker.

I'm writing in behalf of Peter Arest with the purpose of give you an idea of what type of person he is in our day by day work environment, although I know he has pleaded guilty, I hope you consider this information when making the final decision about this sentencing.

I know Peter as long as I have been working in the Hotel, about 11 years and since the beginning we have a great work and human relationship, considering his status as owner, I would say that he is the most kind, humanitarian, so comfortable person to be around of, he has done many things in behalf of his employees and theirs families, I have to mention that he give me chance to grow within the company, I started at the hotel as a regular house keeper with so many difficulties in my communication slowly he was giving me the opportunity to explore new challenges trusting only in my capability gained during the time worked for him, I will always be so thank full to Peter for it, and that's not the only reason of my appreciation for him, in my family, my father in law who works for the hotel and is 69 years old had a open heart surgery that took him 7 months out of work, he was so concern about his health, giving and facilitating him time and health insurance support, today my father in law is back to work in great condition thanks to Peter.

Another case that I really feel I have to mention is related to one of my department employees, her name was Maria Iruac, she was diagnostic with breast cancer in 2001, she was one of the most respected persons in our department been with the hotel since it opens, at the beginning of her treatment, Peter was totally supportive to her , she was under chemotherapy for about 4 years, been out of work for two consecutive years and two more on and off, as the department supervisor I was always aware of this situation and during this time I ever see Peter with a sense of dude to help her and her family this is one more reason Peter has gained my respect and admiration.

Just to let you know how compassionate Peter is, we have a member in my department her name is Nancy Trojesckas, she lost her son , Peter ordered to cover all the funeral financial demands  and  gave her as much time as she need it to resolve her problems, she has been a hotel employed  for 13 years.

It's hard to believe but during all this years I had never see him treating or using a bad vocabulary tour anyone in the hotel, he always look cool, calm and mentally equilibrated, I have to say that I consider my self very lucky to be around a person like him.

Finally I just want to express that according to my knowledge of Peter's character and the human been he is, the acts to which he has pled guilty are totally inconsistent with the person and the history I know of him, that's why Honorable Judge Karas I will greatly appreciate that you take my letter in consideration and be lenient at the time you impose his sentence, thank you.

Att.

Alba Marina Nahar.

# EXHIBIT 13

New York 06-07-2008

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quaropas, Room 533
White Plains, NY 10601

Dear Judge Karas:

Marci Trojckas, nascida em 03-02-46 em São Paulo. S.P. Brasil, residente e domiciliada na 32-70-44 Street apt° 3 R, Astoria, N.Y 11103. Recepcionista da cafeteria localizada na 45 West 35th Street, N.Y Hotel Metro. Sou funcionaria do Sr° Peter Arest

Conheço o Sr° Arest por 13 anos e posso afirmar que é uma pessoa de alta moral, honestidade e generosidade. Neste tempo que trabalho nesta companhia, nunca presenciei descriminação de raça, cultura ou idioma por parte do Sr° Arest.

Seu relacionamento com seus funcionários é muito humano e cordial, procura ajudar a todos nós e especialmente quando nós nos encontramos em situações difíceis, nunca nos desampara.

Em meu caso particular sofri a perda do meu filho que morava no Brasil em fevereiro de 2006. O Sr. Arst quando se deu conta do ocorrido desceu do escritório onde eu me encontrava, me consolou e ofereceu-se para me ajudar em tudo que eu necessitasse. Fui para o Brasil no mesmo dia com passagem paga, dinheiro para o funeral e tempo indeterminado para retorno ao trabalho. Não sei se é o caso de colocar extras mas para mim é muito importante que todos saibam quem é o Sr. Arst. Ele gastou comigo cerca de 5.000 dólares e nunca quis receber o meu retorno. Assim como eu conheço o Sr. Arst conheço a sua família, sua mãe, esposa e filhos. Em meu contato com os mesmos tratam a mim e aos demais funcionários da cafeteria com muita cortesia, eles nos fazem sentir como membros de sua família e não como funcionários de sua empresa. Todos eles são muito simples e nunca tem atitudes de arrogância ou superioridade.

O Sr. Arst é uma pessoa que dá oportunidades para seus funcionários crescerem na sua empresa.

Eu e muito dos meus companheiros começamos em posições distintas que ocupamos hoje. Aprendi a lingua englesa por sua generosidade e compensão dos dificuldades que nos os imigrantes temos.

O Sr° Arst não mede o custo das despesas para comprazer seus funcionarios, sija em ocasiões difíceis ou alegres. Em nossas comemoracões no decorrer do ano ele nos proporciona o melhor mas o mais importante para todos os seus funcionarios e a presença da sua pessoa convivendo conosco um momento de confraternizacão isto nos da seguridade e nossa auto estima é elevada.

O Sr° Arst e uma pessoa de muita fe e muitas vezes acontecem coisas desagradaveis como o que stá se passando agora e tudo isto se deve a sua inocência e confiança no ser Humano.

Poderia continuar descrevendo muito mais coisas a respeito do Sr° Arst pois tenho uma parte da minha vida no Mitro Hotel. A espencia da personalidade do Sr° Arst stá descrita e seria retundancia repetir.

Agradeço por tudo o que êle me ajudou e

continua fazendo. Peço a Deus que o
proteja e abençoe sua pessoa e sua
família.

Sinceramente



**ASTA-USA Translation Services, Inc.**
6030 El Tordo, Suite A - Box 462, Rancho Santa Fe, California 92067-0462 USA
Tel.: 858.756-7156  |  Fax.: 858.756-7155  |  www.asta-usa.com  |
www.LegalTranslationSolutions.com

## CERTIFIED TRANSLATION

*Documents Translated For:*

| LAST NAME: Arest | FIRST NAME: Justin | MIDDLE NAME: |
|---|---|---|
| COMPANY: | DIVISION: | |

*List of Materials, Documents, Forms, Transcripts, Licenses, etc., translated.*

| Letter Written by Nanci Trojeckas regarding Mr. Peter Arest |
|---|
| |
| |

| Source Language(s): | Portuguese |
|---|---|
| Target Languages: | English |

---

**SAN DIEGO, CALIFORNIA**

WITH REFERENCE TO THE ABOVE MENTIONED MATERIALS/DOCUMENTS, we at ASTA-USA Translation Services, Inc., a professional document translation company, attest that the language translation completed by ASTA-USA's certified professional translators, represents, to the best of our judgment, an accurate and correct interpretation of the terminology/content of the source document(s). **This is to certify the correctness of the translation only.** We do not guarantee that the original is a genuine document or that the statements contained in the original document(s) are true.

IN WITNESS WHEREOF, ASTA-USA Translation Services, Incorporated has caused the Certificate to be signed by its duly authorized officer(s).

**By:** _____          **Date:**   June 16 2008

Alain J Roy, President          _____

A copy of the translated version is attached to this statement of certification.

---



**The National Association of**
**Judiciary Interpreters & Translators**

ASTA-USA Translation Services, Incorporated – Member #7031
*A Member in Good Standing*



F-C1206

New York 06/07/2008

The Honorable Kenneth H. Karas
United States District Court
Southern District of New York
300 Quaropas, Room 533
White Plains, N.Y. 10601

Dear Judge Karas,

I, Nanci Trojeckas born 03/02/46 in Sao Paulo, State of Sao Paulo, Brazil, residing and domiciled at 32-70-44 Street, apartment 3 R, Astoria, NY, 11103, receptionist of the cafeteria located in 45 West 35th Street, NY, Hotel Metro and employee of Mr. Peter Arest.

I have known Mr. Arest for 13 years and can therefore affirm he is a person of high moral values, honesty and generosity.

During the years I have worked at his company, I have never witnessed discrimination of race, culture or language on behalf of Mr. Arest.

His relationship with his employees is very humane and polite. He always seeks to help all employees, and has never denied us his support in difficult situations.

In my case, in February, 2006 after the death of my son, who lived in Brazil, Mr. Arest immediately left his office and approached me, offering his condolences and his unconditional support.

On that same day, I left for Brazil for my son's funeral and was offered the ticket and a leave from work for an indefinite period. I do not know if it is pertinent to mention monetary values, but it is important to me that others know a little about Mr. Arest's generosity on this occasion as he spent around 5000 dollars on me and never accepted a return payment.

In addition to Mr. Arest, I am also familiar with his family; his mother, wife and children. During the brief moments of contact with them, they have always treated all employees of the cafeteria with the utmost cordiality, and have always made us feel like members of their family and not employees of their company. They are all simple people and have never shown arrogance or superiority.

Mr. Arest has always given all employees the opportunity to grow in his company. I and many other work colleagues started in different positions to those we currently occupy. I learned English due to his generosity and understanding of the language limitations of immigrants.

Mr. Arest never measures expenses when pleasing his employees both in difficult and pleasant occasions. During yearly festivities and celebrations, he is always worried about providing the best and, most importantly, is always present in company get-togethers, which naturally grants security and improves our self-esteem.

*Portuguese > English Certified Translation by: ASTA-USA Translation Services, Inc.*
*June 16, 2008 www.asta-usa.com*

Mr. Arest has admirable faith and trust in human beings, making unpleasant moments such as my current situation all the more endurable.

I could continue describing Mr. Arest's virtues endlessly, as I have lived a good portion of my life in the Metro Hotel, but I believe the essence of Mr. Arest's personality is herein described and to continue would only be repetitive.

I am very grateful for all he has done and continues doing. May God protect him and bless him and his family.

Yours Sincerely,

(illegible signature)

*Portuguese > English Certified Translation by: ASTA-USA Translation Services, Inc.*
*June 16, 2008 www.asta-usa.com*



# EXHIBIT 14

# Alana Nicole Arest

155 East 47th Street Apt. 9B
New York, NY 10017

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Street, Room 533
White Plains, NY 10601

Dear Judge Karas,

My name is Alana Nicole Arest and I am Peter Arest's daughter. I am 23 years old and I currently reside in New York City. I completed my undergraduate degree at The George Washington University and have recently earned a dual masters in Early Childhood and Special Education at Fordham University with a 4.0 GPA. I am in the process of applying for a teaching position for September 2008.

I truly feel honored and blessed to have a father and role model like Peter Arest. His good-natured disposition, utmost integrity, and undying devotion to others are characteristics that I strive to emulate on a daily basis. I can attribute all of my strengths as an individual and morals as a citizen to this selfless, loyal, and hard-working man. Over the years my father has done so much for people that I could write a novel on his behalf; this letter merely scratches the surface of all of his contributions.

I have been extremely fortunate to grow up in such a warm and supportive household with a father who was always present. No matter how many obligations my father had to attend to, he always found time to watch my dance recitals, improve my softball skills, and teach me how to drive. Looking back at the countless hours we spent practicing together it is hard to even fathom how one man could have such patience and enthusiasm. At the start of every summer, my father would also spend days sewing in nametags to every article of my clothing and packing up all of my camp trunks.

When I think about how hard my father has worked for everything he has achieved I become overwhelmed with a feeling of pride. The life that he has created for my family is one that most people dream of. I am aware that I have been provided with many luxuries that most people live without but I have never for one day taken anything for granted. Throughout my life my father has always instilled in me a hard working ethic and an appreciation for everything I have been given. Whether earning money as a lifeguard, doing chores around the house, or volunteering at a soup kitchen, I learned early on that privileges must be earned and that it is essential to give back.

My parents moved to Greenwich, Connecticut during my sophomore year at New Rochelle High School. I attended Greenwich High School for one short week that felt more like an eternity. I was so depressed about leaving the friends I had grown up with that I literally did not eat for seven days and cried to my parents every night. Instead of forcing me to stick it out, my father insisted that I go back to New Rochelle and drove me to and from school each and every day for months. This trip must have added on an hour to his commute but my happiness was and always has been his number one priority.

I am not sure if my father is aware of how much I have learned from him over the years. He has taught by example to respect and appreciate others and to never take anything for granted. Routine trips to Costco with my father, for example, have provided me fundamental life lessons. My friends often joke about how my father buys clothes at Costco and how he is a friend to every employee there. While I laugh along with their jokes, I also acknowledge how these two simple acts make him the most humble and down-to-earth person I know. These experiences among countless others have taught me that money does not make a person, character does.

I believe my father and my relationship to be one that is exceptional and rare. Although my mother and I share a very strong bond, it is my father who I have always turned to in any situation. In college, my friends would sometimes keep a tally of how many times I would speak to him throughout the day. Whether I am confused, scared, happy, or upset, my father is the first person I want to speak to. His patience, understanding and quick-witted humor always fix every situation.

Although my mother is an extremely intelligent and capable person, my father has always been the rock that has held my entire family together.

2

He has taken on so many roles in our family that I question if he ever finds time for himself. Chef, mechanic, electrician, housekeeper, gardener, carpooler, and seamstress are just a few of the many jobs he has taken on. Not only does my father take on these roles but also excels at each one without ever asking for anything in return. In recent years, my father has added the new job title of caretaker to his long resume. I have watched him care for his almost 99-year-old mother Lily with warmth and dedication. It is easy to see why my father is so good at running hotels because he successfully runs my entire family with ease and grace.

My father has made a tremendous impact on the lives of so many others. For as long as I can remember, my father has not only opened up his home but has opened up his heart for everyone surrounding us. My house was always the go-to house for a home cooked meal, a warm bed, or just a light-hearted conversation. I have always loved how my father has included my friends as if they were his own children. I don't think he is even aware the extent of which taking them on family trips, calling to wish them happy birthday, and including them in holidays means to them.

I do not think anyone in my family is aware of how this current situation has truly affected me. Although I am a 23-year-old woman I will always be the baby in my parent's and older brother's eyes. In an effort to protect me they have chosen to keep most of the information about my father pleading guilty from me. Although I know he is trying to be strong for his family, it is hard to ignore how this situation has affected him. The change in my father's overall demeanor has been enough to show me the pain and suffering that he is undergoing. His charismatic and spirited persona has been replaced by one of somberness and anguish.

I do not feel shame for my father's wrongdoing because I know that it was aberrational. Instead, I feel remorseful that my father feels he has somehow let his family down. It kills me to know that a man who has such integrity could be subject to such punishment. I fear for him, I fear for my family, and selfishly I fear for myself. I often cry myself to sleep thinking about how I could possibly function in life without my father present.

Having a father like Peter is one of the main reasons I have chosen the teaching profession. If I can be half of the role model for my students that my father has been for me then I know my life will have great meaning and

purpose. My father's hard work, generosity of spirit and patience are things that I try to emulate on a daily basis. Peter Arest is truly my hero!

I hope this letter has provided you with insight into my father's character. Please take these thoughts into consideration when determining his sentence.

Sincerely,

Alana Nicole Arest

# EXHIBIT 15

ALLISON H. AREST

118 WEST 27TH STREET #10

NEW YORK, NY 10001


The Honorable Kenneth M. Karas

United States District Court

Southern District of New York

300 Quarropas, Room 533

White Plains, NY 10601


Dear Judge Karas,


I have known Peter Arest for eight years and, in that time, he has become a friend, a confidant, a role model and my father. This past March, I was lucky enough to marry his son, Justin. I met Justin and his family when I was eighteen years old. It was so easy to blend into the Arest family for their values were so simple and yet so hard to come by. Live every day to the fullest, always remember to tell each other that you love them, and always be kind and generous. I quickly became Peter and Iris' third child and way before I was even engaged; I was always referred to as their daughter in law. This of course, put a permanent smile on my face because I loved the Arest family and I loved that I was a part of it.


Peter is the center of my family. He has the kind of spirit and light that surrounds him that makes people want to rejoice, laugh and be happy. He brings us all together as one unit and he is our source of passion for everything wonderful in life. When you ask a person what makes them happy, most people will say family, friends, good fortune and good food. Peter embodies all of those things to the fullest. He can cook a feast that our friends will talk about for years, he can tell a story like a comedian and he can turn an idea into a flourishing business. If this is not success, I don't know what is. I can only

hope that my new husband and I are half as wonderful as Iris and Peter are at making a home, a family and a life together.

The love that Peter emits is one that is contagious. He makes everyone want to be a better person, to be thankful for what they have and to return their good luck to those less fortunate. He is the most kind-hearted, generous man I have ever been blessed to encounter and I am proud to call him family. I have watched him lend money to both friends and family, I have watched him make philanthropic investments in Harlem that continue to be in the red and I have watched how he so patiently cares for his elderly mother. He and his wife raised two children that everyone would want their children to marry – I just so happened to be wonderful/lucky enough to grab one!

I am a credit trader at a hedge fund called Perry Capital. I spend most of my time working with men that are not even on the same playing field as Peter. Peter is the kind of man that everyone wishes to work for. It goes without saying that Peter is an extraordinary employer – the people that work for him are extremely loyal. He encourages them to succeed and provides benefits that are over and beyond what is necessary. He has taught me not only to be driven to succeed, but more importantly to acknowledge those less fortunate.

The one characteristic that separates Peter from so many of the successful men I work with is his unselfish disposition. Peter cares so much more about those that surround him than he does himself. He knows what he did was wrong, but what is really killing him is the fact that he is putting his family through this pain. It is so hard to see Peter as unhappy as he currently is – he can't bear that he might have to temporarily leave his wife and children to care for themselves. He is the caretaker and he loves it. He loves knowing that he is responsible for making sure the house is in order, that there is food in the fridge and that there is enough toilet paper in the house for an army. He loves to bring Iris her breakfast in bed and he loves to meet his son at the office every morning to go over their daily projects. Lily, Peter's mother is going to be ninety-nine years old and if Peter is taken from his home, she will be the most effected. Lily is a stubborn woman

2

who won't understand the situation. She is a woman who needs constant care and it is clear Peter is her final link to reality. She loses her sense of time, location and memory multiple times per day. It is only Peter who can sit down and patiently remind his mother where she is, who she is and her plans for the day.

No matter how successful Peter became, his family always came first and it shows. Family is what makes life wonderful and if more people in this world understood that, more people would have a life as fantastic as Peter and Iris do.  It is so unfortunate that it is these wonderful people that so many should strive to be like that are those that have to overcome this misfortune.

So many people admire the Arests and I can only hope that I have expressed to you the wonderful impact Peter has had on me and so many other people. My wish is that you could take this information into consideration when deciding a sentence.  If only Peter could experience what it would be like to have someone act in a kind way as he has for so many of us. I love him dearly and in my opinion, he has, by the countless and varied good works he has performed and the many responsibilities he has shouldered, earned a second chance to continue to be a productive citizen who deeply regrets his failure to properly report all of his income.

Thank you so much for your time and consideration,

Allison H. Arest

3

# EXHIBIT 16

11365 North Skywire Way
Oro Valley, Arizona 85737
June 18, 2008

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Room 533
White Plains, New York 10601

Dear Judge Karas,

I am Marsha Arest, sister-in-law of Peter Arest. I am 64 years old, am a retired teacher of Spanish and French, and reside in Oro Valley, Arizona. I have known Peter since he was fourteen years old. He has always been the "brother that I never had". He is a caring, generous and loving brother-in-law. He is also an exceptional father, husband, uncle, brother and son. My purpose in writing to you is to offer some details about Peter's life that I hope you might consider, and encourage you to be lenient when imposing his sentence.

Peter is extremely close to his children. His son, a lawyer, now works with him on a daily basis while running the Metro Hotel. His daughter who is in graduate school studying to be a teacher also lives in Manhattan and sees her father weekly. Both children rely on his guidance and support.

Not only has Peter been a constant resource for his immediate family, but he has been an exceptional uncle to my children. When my oldest daughter was having difficulty in her mid teens, she went to stay with her aunt and uncle for a few months. This respite was invaluable to her. Peter was a caring, listening and understanding uncle. I am sure that his previous work and training with disturbed adolescents gave him the insight and patience to be so caring to his niece.

I would like you to consider another issue which is of great concern. My mother-in-law Lillian Arest, who will be 99 years old in October, has been under Peter's direct care for the past 15 years. For the last 5 years she has lived in Peter's home. Peter and my mother-in-law are very close and it would be inordinately stressful for her not to have Peter around now that she has become accustomed to her surroundings and routines. Of late she is so fragile that she has been unable to visit my husband and me in Arizona for some time. I try to see her at least twice a year, but my husband is unable to see her because he has a lung condition that prohibits him from flying. While Peter might not agree, this has had to be an emotional burden for Peter and his wife Iris. I am well aware of the trials of being a primary care giver, for I cared for my own mother for a year before she died. I am very grateful to Peter for his taking on this task.

I greatly appreciate your taking into consideration the concerns and information that I provided in this letter when imposing what I hope will be a lenient sentence on my brother-in-law. Thank you.

Sincerely,

*Marsha Arest*

Marsha Arest

# EXHIBIT 17

June 3, 2008

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas, Room 533
White Plains, NY 10601


Judge Karas:

My name is Melanie Arest and I am Peter Arest's niece. I am 36 years old and currently employed by the state of Arizona as a Loss Control Consultant. I am writing in the hopes of exemplifying the type of individual Peter Arest is, in the hopes that you will exercise leniency when imposing his sentence.

From the time I was born, Peter treated me as if I was his own daughter. He has always been the kind of role model that I wished my own father could have been to me. His unconditional and consistent love, support, validation, and encouragement all played an integral part in my growth and development into adulthood.

When I was struggling throughout my adolescence, Peter was always there for me to offer support and guidance. When I needed a place to stay, he opened his home to me without question or stipulation. In the time that I resided with Peter and his family, I witnessed how a successful relationship between a father and his children should be. His unwavering patience and understanding have not only played a fundamental role in his own children's upbringing but in mine as well. The core of my individuality, including my morals, values, and family traditions, can be directly attributed to my time spent with Peter and his family.

Not only is Peter dedicated to his wife and children but also to my grandmother, Lily Arest. Peter has been her primary caretaker for many years and such sincere dedication to her well-being has not only benefited her but has also allowed me to sustain a close relationship with my grandmother. That is, when Peter selflessly relocated my grandmother to his home to care for her, he enabled my sister and me to have an even closer relationship to my grandmother that we may never have been able to maintain with her living in California.

I hope that I was able to educate you further as to the type of person Peter Arest truly is and I hope that you will consider my comments when imposing his sentence. Thank you for your time.

Sincerely,

Melanie Arest

# EXHIBIT 18

Eric J. Beardsley
11 W. 70th St, Apt. 3F
New York, NY 10023

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Street, Room 533
White Plains, NY 10601

June 17, 2008

Dear Judge Karas:

My name is Eric Beardsley, and I am writing to request your leniency in the sentencing of Peter Arest. I have known Peter for nearly 20 years as a close friend of his son, Justin. In this time, Peter has demonstrated himself to be an extremely kind-hearted man with strong moral character.

Peter's kindness is evident in his continuous generosity towards others. Throughout my childhood, the Arest household was a second home to me and many of Justin's friends. Peter always made me feel welcome as a part of his family, and he went out of his way to do kind things. He taught me how to tie my first tie and took me to baseball games with his family dozens of times when my own parents were unavailable.

Peter's strong moral character can also be seen in the impressive values he has instilled in his own children. Both Justin and Alana have demonstrated their value for hard work and education through their pursuit of graduate studies. Since a young age, they have also shown a commitment to charity at Peter's encouragement. At age 13, Justin graciously decided to donate his bar-mitzvah money to help the homeless in New York City, and Alana has demonstrated a passion for helping others by teaching special-needs students.

Lastly, Peter's responsibility and goodwill is on display everyday at the Hotel Metro in New York. The numerous times I have walked into the hotel to meet Justin or Peter, I have been wowed by the warmth and care of the staff under Peter's direction. The hospitality industry is based on serving others, and Peter has exemplified this trait in all aspects of his life.

I hope you take this letter into consideration in Peter Arest's sentencing. He is truly one of the kindest and most genuine people I have met in my life, and he is the consummate "good man."

Sincerely,

Eric J. Beardsley
MBA Candidate, Class of 2009
Columbia Business School

# EXHIBIT 19

Friday, June 13, 2008

To:
The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Room 533
White Plains, NY 10601

From:
Judd A. DeRario
81 Holls Terrace West
Yonkers, New York 10701

Dear Judge Karas:

The purpose of this letter is to express my appreciation and adoration for Peter Arest.
Peter is the father of my close friend, Justin. As a friend of Justin, both Peter and his
wife, Iris, have always welcomed me into their home and treated me as if I were their
own son. Spending time at the Arest's home is much like time spent with my own family
– plenty of love and laughter!

Justin and I have been friends since 1994, our freshman year in high school. Our
friendship grew stronger over time as we attended New York University's Stern School
of Business together. Since 2000, our junior year in college, my relationship with
Justin's family also grew stronger. Throughout the years, I sought not only the personal,
but professional advice of Peter. When graduating from college, I asked his opinion
about career selection for my first job. My decision to work for Deloitte Consulting as a
management consultant was based on Peter's advice. Two years later when I switched
careers to become a mortgage broker, I again consulted Peter for his guidance. Whether
it is his recommendations about dealing with friends, determining career direction, or
pursuing a new investment opportunity, Peter's constant sound, reliable, rational,
compassionate advice has been a valuable input into many critical decisions.

The current circumstances of Peter's plea were shocking to me and in stark opposition to
his high moral standards. Therefore, it is with great respect for the criminal justice
system that I ask for leniency in sentencing Peter. I look forward to Peter's sound advice
in the future and many more years of spending time with the loving Arest family.

Respectfully Submitted,

Judd A. DeRario
917.892.6402

# EXHIBIT 20

27 Homeside Lane
White Plains, 10605

June 10, 2008

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas, Room 533
White Plains, NY 10601

Dear Judge Karas,

A college essay once asked me to choose one word to describe myself. While it took me days to determine the appropriate word, it only took a few moments for me to decide one for Peter Arest: generous. To be generous means to be giving, unselfish and thoughtful of other and therefore it is the perfect word to represent Peter. In fact, it is a word I spent much time teaching my first grade students this year because I feel it is a value so important for people to learn at an early age.

I met Peter thirteen years ago when I was 10 years old and became friends with his daughter, Alana. As my relationship with Alana grew into a sisterhood, my relationship with her parents grew as well and I proudly became part of the Arest family. I still remember the first time Peter referred to me as his "second daughter" because I was not only flattered but honored as well.

Having grown into a member of the Arest family I have spent much time with Peter. Together, Peter and I have shared countless meals, traveled many places, celebrated numerous holidays and major events and simply enjoyed one another's company. During these different activities, I witnessed abundant examples of Peter's generosity. From helping his elderly mother and providing her with wonderful care to giving a stranger advice, Peter has always been willing to help anyone and everyone. It is clear that he thoroughly gets pleasure from making other people happy and in our world today that is a characteristic that is often lost.

It is because of all of the moments I have shared with Peter and how I have come to know him as the generous "second father" that he is, that compelled me to write this letter. While I understand that Peter has already pleaded guilty, I hope that this glimpse of the impression he has left on me helps you to better understand the core character of this man and make a decision with this in mind.

Sincerely,

Nina Levi

# EXHIBIT 21

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Room 533
White Plains, NY 10601


Dear Judge Karas,

First off let me start by introducing myself. My name is Brian Levy. I am 28 years

old and a life long resident of New Rochelle, NY.  I have been a close friend to the Arest

family for most of my life. What started as a friendship with Peter's son Justin has

blossomed into a bond between me and his family that will last a lifetime.

Through the past 20 some odd years, I have spent much time with Peter and the

rest of the Arest family, both in New Rochelle & in Greenwich. Our families belonged to

the same country club for many years and socialized on a regular basis throughout our

pre teen and teen years. I have spent countless weekends (after Little League,

Soccer, Family Functions etc...) swimming at Justin's while Peter so graciously BBQ 'd

and watched out for us in the process. Peter is the kind of man who always has a smile on

his face when he sees you with his big smile you feel it. He is a good man, great father

who raised two amazing kids in Justin & Alana.

In the early stages of our friendship, I was always invited to sleep over the Arest

home. Iris & Peter were always so happy to have me there as I recall. Unfortunately,

during the early years half way through the night I would get frightened & nervous, as

most 7 or 8 years old do away from home. Justin, who was always a heavy sleeper would

be snoring away, so I would set out for his parents room with tears in my eyes and a stomach in knots. They would always get right up and comfort me. Peter especially would go out of his way to play cards and talk till I was ready to get back to bed. I remember this like it was yesterday and to this day it is one of my fondest childhood memories.

The Arest family has meant so much to me its hard to put it all down in a letter. They are kind, compassionate & generous people. Peter & Iris have been like an Uncle and Aunt to me over these last 20 years. They are good friends that always open their door and hearts to me, my friends and my family

Sincerely,

Brian Levy

# EXHIBIT 22

FRANCIS X. WALSH, M.D.
JAMES A. BRUNETTI, D.O.
31 RIVER ROAD, SUITE 200
COS COB, CONNECTICUT 06807
(203) 661-9433
Fax: (203) 661-2918

June 3, 2008

The Honorable Kenneth M. Karas
United States District Court
Southern District New York
300 Quarropas  Room 533
White Plains, NY 10601

Re: Peter Arest

Dear Judge Karas,

I have known Peter Arest for the past five years. Over these years I have had the opportunity to take care of his elderly mother. His mother lives with him and he is the primary caregiver for his mother and provides her with everything she needs. She is extremely dependent upon him not only for her physical needs; she also is dependent upon him emotionally. She is extremely anxious, disoriented, and quite depressed when he is not present. He is extremely involved in every aspect of her care, and I believe that being away from her will be quite a strain on her fragile medical condition. I appreciate anything that can be done to help Peter to aid his mother in her unstable and fragile medical condition. I have known Peter quite well over the past five years and he has been very warm, quite attentive to his Mom's needs, and has been extremely helpful in her medical care. I have been a physician in internal medicine for the past eleven years and have seen only a handful of patients who have taken care of a parent with such fine detail and as meticulous as he. I believe that his Mom's dependency on him as her caregiver is quite strong and there have been times in which she slips into a different mental state when he is not around. If there is anything that we can do to help Peter's case, please feel free to call. Peter has always been a very respectful and kind individual to both his mother and medical professionals aiding in her care. If there are any other questions or any further information I can provide, please feel free to call.

Sincerely,

Dr. James A. Brunetti II, D.O.

# EXHIBIT 23

GARY ADLER
48 Thistle Drive
Paramus, NJ 07652

Dear Judge Karas,

My name is Gary Adler and I am writing this letter on behalf of Peter Arest. I am fifty six years old and live in Paramus New Jersey with my wife Jamie of thirty six years. We have one son Jesse who refers to Peter as "Uncle Petey". I sell Premium and Promotional products to companies and serve as a team dealer to various High Schools and Colleges in the tri-state area. Peter is not only a dear friend but someone I consider my best friend, mentor and confidant.

I first met Peter in 1975 when he was a social worker in Pleasantville. Peter was a customer of the sporting goods store that I worked at. Over the thirty three years that I known Peter we have established a very close relationship. We have gone on vacations together, sporting events, charitable golf outings and attended all of each others family events including Bar and Bat Mitzvahs, Weddings and unfortunately funerals.

Peter's father past away at an early age and Peter has taken financial and emotional care of his mother Lilly ever since. She is 98 years old and lives in Peter's home. I think one of the main reasons Lilly has lived all these years is because of her relationship with her son. I only hope my son treats his mother and me in the same way Peter treats his mom as we get older.

Peter has also helped family and friends by not only giving his advice and time but also his money. I have been told not to write forever but I swear that I could write of Peter's desire to help others for pages. Instead I will give three additional examples of how I have witnessed Peter make a difference.

1

Eleven years ago Peter's closest childhood friend Arthur passed away. Artie was a very successful restaurateur and left his wife a lot to deal with. Peter and his family have been Alice's biggest support since her loss. He has also spent countless hours counseling Artie's wife Alice with the business. What I really think is amazing is that most of the hours Peter has spent helping Alice she does not even know. Many of Artie's former partners and vendors have a close relationship with Peter and have called him with concerns about the business and Peter has made sure that no one was taking advantage of Alice. Peter would never tell her about most of these conversations. When he would have to get her involved he would make sure to make her think that the outcome was her idea and not that he was calling just to criticize her.

Second, I know from first hand experience that Peter's in-laws were not thrilled with their daughter the doctor marrying Peter the social worker. Most people, including myself, would never have forgotten the unwelcome acts he faced. Peter may not have forgotten them but an outsider would have no idea there were ever any issues between them. Peter has taken care of them and their house/apartment since as long as I can remember. After spending an entire day in the city he would stop at their house to change a light bulb or fix a jammed door. I do not think they appreciate him as they should but Peter would never say no.

Finally, Peter has always been there for me and my family. Over twenty years ago my father was murdered in an armed robbery. Peter called me every day after my loss and used the experience of losing his father to help me tremendously. I have Type I Diabetes and whenever I have had medical problems Peter could not be more available for me and my wife. I also have had financial problems. Peter was always there for me with advice and unfortunately also money. In a tough time for me Peter lent me $250,000 to make sure my company stayed in business and that I could provide for my family. He has never been paid back. Most would think that I would have lost him as a friend. I

2

remember coming to his office to apologize and I was crying. I thought for sure he would be upset and throw me out. But not Peter. Somehow he felt badly and was only supportive and encouraging. To this day his hotel is my customer. Peter has also stepped in and made sure that Alice's restaurants buy from me as well. I have had "friends" also try to get me new accounts and make sure I keep them. But what they really want is a commission. Peter only insists that I charge fair prices and give good service so that he does not look bad.

I try to meet Peter at least once every couple weeks for lunch at his hotel and on one of those occasions I could tell something was wrong. He looked upset and embarrassed. He told me he pleaded guilty and that he was remorseful and sorry for his actions. Never did he mention himself but only the effects on his family.

On behalf of Peter and his family, my family asks you to take this letter into consideration when sentencing Peter and I ask you to be lenient. I do not know a better person in the world.


Sincerely Yours,

Gary Adler

3

# EXHIBIT 24

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas, Room 533
White Plains, NY 10601


Dear Judge Karas,

We, Alison and Aaron Eiges, reside at 14 Dwight Lane, Greenwich, CT and have lived at this address for 17 years. We are involved in many different facets of real estate, much of it in and around Greenwich. We are neighbors of the Arest family, and have known Peter for more than 8 years. We have come to value Peter as a good neighbor, and also as a dear and trusted friend.

Although we are aware that Peter Arest has pled guilty, we are writing this letter in the hopes that you will find it in your heart to offer leniency when issuing sentence to him. We have always found Peter to be a good and dependable friend and he has proven this to us on numerous occasions. He has always been there to help dig us out during a snowstorm or to welcome us into his home when we have lost power in our house.

We have great admiration for the role that Peter plays in his family. We have watched his children, Justin and Alana, grow from teenagers into wonderful young adults. We are constantly awed by the love and respect that they show towards him, and hope that our own 17 year old son will feel the same for us. When we first met Peter, his mother Lily, then in her late eighties, lived alone in Westchester. Later, Peter insisted that Lily move in with them. As her health has significantly declined over the past few years, Peter has shown her extraordinary care, arranging his busy schedule around her doctor appointments and hospital visits. As Peter's only sibling lives across the country, he is truly the one person that Lily has come to depend on.

We have spent much time in the Arest home and are always struck by his warmth and generosity. He is a welcoming host to his friends and family members, as well as those of his children. It is clear that we are not the only ones who understand what kind of friend Peter Arest is. A number of years ago, we spent an evening celebrating Peter's 60th birthday and were amazed at the expressions of love from all who attended. We met people who had flown across the country to be there.

We truly believe that Peter Arest is a good and decent person. We hope that you will consider what we have expressed as you contemplate your decision.


Kind regards,

Alison and Aaron Eiges

# EXHIBIT 25

Ellen R. Morehouse
26 Eastern Drive
Ardsley, NY 10502

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas St. Room 533
White Plains, NY 10601

Dear Judge Karas:

This letter will provide you with some additional information about Peter Arest that you will hopefully consider in your decision about his sentencing.

I have known Peter Arest since 1975 when he began dating my longtime friend Iris Knight Arest. While I am aware that he has pleaded guilty to tax fraud, I wanted you to know that he is a kind and wonderful person who has repeatedly gone out of his way to help others, and that many people have benefited from his actions.

I am a licensed clinical social worker who directs Student Assistance Services (SAS) Corp., a not-for-profit substance abuse prevention agency based in Tarrytown, NY. SAS is an affiliate of the National Council on Alcoholism and Drug Dependence and an affiliate of the National Association for Children of Alcoholics. SAS implements substance abuse prevention programs in 60 secondary schools in Westchester County and provides training and consultation to professionals, parents, law enforcement, and community and government organizations.

In the mid 1980s after developing and effectively implementing a national model substance abuse prevention program for public secondary schools, Peter asked me if I ever thought about adapting the program model for residential child care facilities for troubled youth. Peter had worked at Pleasantville Cottage School, a residential facility for abused and neglected youth with emotional and behavioral problems. I realized after talking with Peter that these young people were the most high risk for developing substance abuse problems but they weren't able to participate in any of the model substance abuse prevention programs because they didn't attend public schools.

In 1987 remembering Peter's suggestion, I decided to apply for a grant from the federal Office of Substance Abuse Prevention to adapt my public school program to residential child care facilities. Over the many weeks involved in preparing the grant application, I asked Peter many questions about the structure of residential child care facilities and about the teens in these facilities. As a result of Peter's willingness to speak with me about these issues, provide feedback for my ideas, offer suggestions, and call key people in some of the facilities so I was able to meet with them and explain my ideas, I was able to submit an application which was funded. The grant provided funding to impliment and evaluate a new prevention model in six residential facilities located in Westchester County.

This program, known as the Residential Student Assistance Program (RSAP), was able to demonstrate effectiveness among program participants in both preventing substance use among non-using teens and reducing substance use in teens who were already using substances. In the two facilities that were comparison sites with no programming, more non-using teens began using substances and the using teens increased their use. As a result of these findings the RSAP was one of the first eight programs to be designated a "Model Program" by the US Dept. of Health and Human Services, Substance Abuse and Mental Health Services Administration's Center for Substance Abuse Prevention. This designation lead to the RSAP's replication in facilites in states as diverse as Arkansas, Colorado, Florida, Indiana, Massachusetts, Texas, and Utah. In 2007 the RSAP was designated a model "Blueprints" program by the U.S. Dept. of Justice's Office of Juvenile Justice and Delinquency Prevention.

Thousands of teens have benefited from the RSAP. This would not have happened without Peter Arest's willingness to answer my many questions, provide lots of feedback and suggestions, and build on his personal relationships with staff at residential child care facilities in Westchester to create the opportunity for me to met with them to discuss their participation in the initial grant. During the approximately six years of developing, implementing, evaluating, and refining this model program, Peter was never too busy to take my calls, make calls on my behalf, and help me and my agency in any way he could without asking for anything in return. He was happy to be helpful to me in a way that would eventually help thousands of teens. This example is just one to illustrate how Peter's generosity of spirit and willingness to go out of his way has positively impacted many.

Other examples of Peter's willingness to help others are illustrated by his relationships with his mother and in-laws. For as long as I have known Peter, he has provided unconditional financial and emotional support for his widowed mother, Lilly, who would not be alive today it wasn't for Peter's attentiveness and concern. Lilly Arest has lived with Peter and Iris since 1997. During this time Peter has payed for his mother to visit relatives (when she was able to travel), accompanied her to medical appointments when she was not able to understand medical advice, and always included Lilly in all social gatherings in their home. Lilly calls Peter her "rock" and depends on him emotionally.

Peter's in-laws also depend on Peter to help them with many of the day-to- day issues that have arisen as they have become less independent and self-sufficient. Again Peter is always willing to help. A period of incarceration would cause a tremendous hardship for Lilly and for his in-laws. Peter Arest is an incredibly helpful and kind man who is punished every day by the potential impact of his actions. Please consider the impact on 99 year old Lilly Arest, 90 year old Murray Knight, and 90 year old Ruth Knight as well as all the good Peter has done in considering your sentence.

Please feel free to contact me at 914-332-1300 if you have any questions or need additional information. Thank you for your consideration.

Respectfully submitted,

Ellen R. Morehouse, LCSW

# EXHIBIT 26

**STEVEN ROTH, C.P.A.**
**8 SLEEPY HOLLOW ROAD**
**RYE BROOK, NY  10573**


June 17, 2008


The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas, Room 533
White Plains, NY  10601

Dear Judge Karas,

We have been friends of Peter and his wife, Iris for over 20 years.  We are writing on his
behalf to try to tell you why we think Peter is so special and deserves consideration in the
sentence you give him.  Peter is extremely dedicated to his family – his wife and two
children, Justin and Alana.  This devotion to his family is exemplified by the devotion
and dedication to his mother, Lily.  While most of our peers abdicate their responsibility
to their parent or parents, Peter, has with great sensitivity and respect, taken care of his
mother.  She has lived with Peter and Iris since 1999.  During this time she has always
been included in their family activities.  We know her life has been enriched and possibly
extended by the love and dedication Peter has shown her.  His relationship with his
mother has set an exemplary model of what a son/daughter should aspire to be.

In addition to being a devoted family man, Peter has been a true friend.  During the more
than twenty years we have known each other Peter has helped us celebrate the joyous
times in our lives and supported us in the sad times, especially after the deaths of our
parents.  He is a valued friend.

We would hope that you take the above into consideration when you impose Peter's
sentence.  We hope you will show as much leniency as you can.

Very truly yours,


Steven Roth

Stephanie Roth

# EXHIBIT 27

# Thomas Wallis
## 4731 NE 28th Ave.
## Fort Lauderdale, Fl. 33308
### 954-647-2248

The Honorable Kenneth M. Karas
United States District Court
Southern District of New Yoek
300 Quarropas Room 533
White Plains, NY 10601

Dear Judge Karas,

I am writing this letter in an effort to provide you with a comprehensive understanding of the type of person my first cousin, Peter Arest is. Our families lived just a few miles apart as we grew up in Long Island over 50 years ago. Peter is a relative, but I am proud to call Peter a close friend by choice. In situations resulting in disaster and grief, or success and euphoria, Peter is one of the few people I would count on for unparalleled support in both good times and bad. I will state with confidence that I would trust Peter Arest with my life and that of my family.

My name is Tom Wallis, son of Joseph Wallis the brother of Lillian Wallis Arest, Peter's mother. I am currently employed as National Director of Marine Sales for The Coleman Company based in Fort Lauderdale. My wife Denise and I have been residents of Florida for almost the entire 30 years of our marriage. Living on the East Coast, we have been privileged to enjoy frequent visits with the entire Arest family.

Our family is fortunate to have nearly 20 first cousins, extending to dozens of spouses, children and grandchildren. Peter, although not the oldest, always seems to be the one the entire family gravitates to for support and guidance. Weddings, funerals, significant birthdays and other family obligations are treated as an opportunity to visit with relatives, never an inconvenience. One only has to experience the incredibly strong bond Peter has with his wife Iris, and his two children Justin and Alana to quickly understand the importance Peter places on the true meaning of family.

Many of us find ourselves struggling with the challenges associated with caring for elderly parents. Peter, the younger of two brothers, and his family have unselfishly welcomed his mother to live in their home. At nearly 100 years old I am sure that her presence creates daily challenges that only those that experience them first hand could comprehend. Never have I heard a single complaint from her son, her daughter-in-law or her grandchildren about the burden of care they have chosen to accept. My Aunt Lily is a lucky woman to have Peter as a son.

My own mother is in her eighties and until recently lived alone in Southern California. I am not aware of a single time Peter was on the West Coast and he did not go out of his way to visit her. Peter is definitely her favorite nephew, visiting and calling

often. Peter understands that family relationships are a full time obligation, not just for holidays and special occasions.

My older brother Robert was diagnosed HIV positive several years ago. He suffered typical side effects patients with this disease experience. My brother demonstrated signs of depression, denial and isolation. As he retreated into himself, Peter repeatedly made efforts to reach out to my brother in an attempt to keep him in touch with the family and help him through tough times.

I am grateful for Peter's support as I deal with the unpredictable effects of Parkinson's disease. Diagnosed six years ago, Peter shows genuine concern and offers positive encouragement as he regularly checks on my condition. His consistent and sincere support has become more important to me than I ever expected.

Peter, Iris, Justin and Alana have always been an incredibly close family. The children were included and happily participated in nearly every event, decision, success and failure the family experienced their entire lives. They have become freethinking, compassionate adults that any parent would be proud of. They are a product of a strong family unit with involved, concerned and tireless parents. Any time Peter is away will be a burden to all.

People make mistakes in life. I have written this letter in an effort to expose a side of Peter not related to the current circumstances he finds himself in. I hope you have learned that Peter has been and remains a dedicated father, son, husband and friend. He is a man who unselfishly helps others, including doing all be can to make his mother comfortable as she struggles through the last years of her life. I encourage you to consider all aspects of Peter's character and the total effects on others as you debate his future.

Thank you for taking the time to make an informed decision.

Respectfully submitted,

*Thomas W. Wallis*

# EXHIBIT 28

June 5, 2008

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Room 533
White Plains, NY 10601

Dear Judge Karas,

Peter Arest has been a friend of ours for over twenty years. We met when our sons were both in kindergarten at Davis School in New Rochelle. Our families have shared special occasions including graduations from elementary school through college, bar mitzvahs and most recently the weddings of both of our sons. It has been to joy watching both our families "grow up" together.

We value our friendship with Iris and Peter Arest. Throughout the years, we have spent many wonderful evenings together, and have also shared many enjoyable family vacations. Whenever I coached our sons in baseball or soccer, Peter was one of the few fathers that took time out from work to assist me and at the same time support his son.

In all the years we have known Peter, he has always been a kind, caring husband and father. Peter has always found the time to be present at all important events in his children's lives and has given them the nurturing and support that has helped them to become the outstanding people that they are today. Peter has also devoted himself to the care of his mother, Lily. She has always been welcomed and appreciated in his home.

Paula is an elementary school teacher for over twenty years. Jeff has a financial background and owned an executive recruiting firm until 2002. Jeff is currently working in marketing for a credit card processing company

We hope that you will take this letter into consideration when you are imposing sentence as we believe that Peter deserves your leniency.

Sincerely,

Paula Weckstein

Paula and Jeff Weckstein

# EXHIBIT 29

Laureine Knight Greenbaum
1000 Park Avenue
New York, NY 10028

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas, Room 533
White Plains NY 10601

June 17, 2008

Re: Peter Arest

Dear Judge Karas:

I am a sister of Peter Arest's wife, Iris, and am writing to you to provide you with some information that I hope you will consider in making your decision with respect to the upcoming sentencing of Peter on July 18, 2008.

I am 56 years old, live with my husband, David, and two daughters in Manhattan and am an attorney who formerly practiced with CBS Inc. I currently engage in charity work as a National and New York City Board Member of the Jewish National Fund and as co-chair of Project Cicero, a city-wide book drive that collects books for donation to under-resourced New York City public schools.

I have known Peter since his courtship and marriage to my sister over thirty years ago. Peter is a loving, supportive and thoughtful husband, father and son. Family is extremely important to both Peter and Iris, who are very close to their children, Justin and Alana, and to Peter's 98-year old mother, Lily, who has lived with them for over 25 years. Peter loves to entertain family and friends and is a superb cook who every Thanksgiving wakes up at 4 in the morning to place his incredibly large turkey in the oven so that it will be done in time for his now traditional multi-course and multi-dish Thanksgiving banquet. At the wedding of Peter and Iris's son Justin this March, Justin's best man made the point in his toast that he and Justin's friends always would find themselves hanging out at Justin's home because of the warmth and comfort extended by Peter and Iris and Peter's mother, Lily.

Peter has also carved out an important role for himself in the world of charity, having served on the Board of the Summit School in Nyack, New York, for 16 years and as President of the Board since 2001. The Summit School addresses the needs of severely emotional disturbed children. Peter has always been interested in helping children with these issues—when Iris first met him he was a social worker at the Pleasantville Cottage School in Pleasantville, New York, which is a residential treatment center for emotionally troubled youngsters.

Peter Arest                                                                    Page 2

I have always admired Peter as an independent, self-made man, whose father died when Peter was in his early twenties and whose widowed mother looked to Peter for financial and personal support thereafter. Peter is not only highly intelligent and capable, but he also has an intuitive understanding of the mechanical operation of anything from a computer to the oil burner of the Hotel Metro that he manages. My parents have always called Peter for help and advice whenever anything breaks and Peter has always been available to them. Finally, Peter is a loyal and long-standing friend. Many of his friends are childhood friends. He also goes out of his way to help out whether it is to simply look in on a neighbor's pet while they are away or lend a valued camera to my daughter when she has expressed an interest in photography.

Please take into consideration Peter's good works when you consider his sentencing next month. I know that he and his family suffer greatly from this matter and everyone prays that you will show leniency.

Thank you for your time and attention.

Sincerely,

*Laureine Knight Greenbaum*

Laureine Knight Greenbaum

# EXHIBIT 30

Ken Greenfield
320 W. 87th St.
New York, NY 10024


The Honorable Kenneth M. Karas                    June 25, 2008
United States District Court
Southern District of New York
300 Quarropas, Room 533
White Plains, NY 10601                    Re: Peter Arest


Dear Judge Karas:

I am a brother-in-law of Peter Arest. I met him while dating his wife's sister who I subsequently
married. I have known Peter for 25 years and hope that you will consider my views of Peter with
respect to the upcoming sentence on July 18, 2008.

I am a guidance counselor in New York City. Early on in my relationship with Peter I was
informed that he was a social worker at a special school in Westchester County. Although this
surprised me as I always viewed Peter in the business world, I could tell by his relationships with
young people that he really cared alot about them and would help them out any way he could.
Starting with his own family, I can see the special relationship that he has with both his son and
daughter----to me it's more a frienship than playing the parent role. At Justin's Bar Mitzvah
they wore matching ties and vests. Peter is always including Justin in his life and they spend
much time together. I always see them talking and horsing around at family gatherings. Peter's
home has always been open to his childrens' friends as well as his and Iris's friends. He is an
incredible host and always has ten times as much food as needed for the holidays. Peter also has
his mother living with them in their home. He watches over her closely and provides the care
needed to see that she is as comfortable as possible.

Peter has helped out his and my parents-in-law dozens of times when they were living in their
home in Westchester. Whether is was replacing a bulb or fixing up their living room, Peter was
always the first person to offer help when the topic turned to the needs of our parents-in-law.
As they aged and eventually moved out of their home, Peter got more involved with helping
them transition to apartment life in New York City. At family gatherings I was always amazed at
how quickly Peter would jump in to help them when they needed it.

Children need their parents. Even young adults in their twenties and starting careers and
families need their parents. I know the closeness of Peter's relationships with all his family
members. I see it at dinners, parties, family gatherings, etc. I believe that separating Peter from
his family for an extended time will cause much pain and anguish to all. Further, Peter's aging
mother (now 98) would be heartbroken if her son were taken away.

I am a part-time tennis teaching pro.  Peter has always offered me the opportunity to teach tennis on his tennis court.  This could have been especially useful as for many, many years my wife and I rented a house in Armonk, NY which was only about 5-10 minutes from Peter.  Even though I never took him up on his offer I realized that he was interested in helping me and thought enough about me to make the offer.

I believe that  it would constitute an incredible hardship for Peter and his family if a harsh sentence was meted out.  Peter is a kind, generous, thoughtful and responsible person who cares deeply for his friends and family.  I ask you to consider my comments and show leniency when sentencing next month.  Thank you very much for your time in this matter.

Sincerely,

Ken Greenfield

# EXHIBIT 31

Mr. and Mrs. Peter Gold
455 Rosedale Avenue
White Plains, New York 10605

June 12, 2008

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas  Room 533
White Plains, NY  10601

Dear Judge Karas:

Seven years ago, my husband, Peter Gold, and I had the pleasure of meeting Peter Arest for the first time. It was on the occasion of his son's twenty-first birthday. Our daughter was dating Justin, his son, and this past March they were married. The years leading up to the marriage of our children allowed us unique insight into the private life of Peter Arest. We came to know him as a man of great heart and hospitality. His home was always open to us, his myriad friends and, most important to us, it was a second home to our daughter. His warmth and generosity extended not only to our immediate family, but to grandparents and siblings, as well.

Lilly Arest is Peter's ninety-eight year old mother. She lives with Peter and Iris, but their relationship with her is so much more than the fact of sharing a home. Peter and Iris have made her the centerpiece of their lives making sure that she wants for nothing and including her in all of their activities. The love and respect she is given by both Justin and Alana and our daughter, Allison, is a mirror of the love and respect offered Lilly by her son, Peter.

We have also witnessed the great respect bestowed by Peter on his in-laws, Ruth and Murray Knight.  Ruth and Murray require a great deal of care and patience and, like a devoted son, we have watched Peter do more for them than most sons do for their own parents. It is very telling that whenever there is a family occasion, Peter seats Ruth and Murray at the head of his table allowing them the respect that they are due as parents and seniors.  We all know that children live by example. Both Justin and his sister, Alana, reflect the manner in which they were raised by showering their friends and family with loving kindness.

As the parents of Justin's wife, we have always watched the manner in which Peter related to his wife, Iris.  Certainly there could be no more devoted husband than Peter

Arest. He is loving, generous, kind, respectful and takes such pride in her scholarship and her career. In addition to all of this, he is proficient in the kitchen. Once again, we witnessed the example set for Justin and knew, as well, that our daughter's future would be a happy one.

My husband and I have also had elderly and wonderful parents in our lives. We had two fathers, both attorneys, who lived well into their nineties. Peter took them into his heart offering them his great hospitality as well as according them the due and respect that he shows to his own family. It was with great patience that he would always find time to sit and listen to their stories and with great humility share the stories of his own life. We deeply regret that they were no longer with us to share the joy when the two families came together for the marriage of Justin and Allison.

When we observe the four Arests, Peter and Iris and Justin and Alana, there is no question in our minds as to the love and respect that they show one another. When a family unit takes such responsibility for one another and for the people who surround them, we know that something special has been taught and that this is a family that easily could serve as a model for others. As we watched this family interact with each other and their friends and their family, we knew that our daughter would always find with them the kind of love and support that we all want to envision as part of our child's future.

Peter is a fiercely loyal friend, a loving and charitable man, and above all, a man devoted to the well being of his family. We have heard countless stories and witnessed many events in which Peter came to the aid of family, friends, and many times those who were more removed, but whose problems touched his heart.

In conclusion, we have written this letter in support of Peter because of what we understand to be his value and measure as a man. We hope these fine qualities will be taken into consideration as decisions are being made concerning his future.

Most respectfully,

Barbara Gold &
Peter Gold

# EXHIBIT 32

June 23, 2008

The Honorable Kenneth M. Karas
United States District Court
300 Quarropas, Room 533
White Plains, NY 10601

Re: Peter Arest

Dear Judge Karas,

My name is Ninette Stiskin, and I am a first cousin to Iris Knight-Arest., Peter's wife. I am 68 years old, live in Manhattan, and am the Founding Co-Director of The Summit Camp, a sleepaway program for children with special needs, located in Honesdale, Pa. I write to you on behalf of Peter Arest. Although I am aware that Peter has pleaded guilty to one or more of the charges against him, I hope that my comments might be helpful in your consideration of his sentence.

I've personally known Peter to be a kind, caring, and sensitive person. I first met him shortly before his marriage to my cousin in 1976. I was impressed with his character, which was evidenced in his caring for his widowed mother and his close relationships with his family and friends.

Over the years Peter has continued to support and care for his mother with great love and respect. Additionally, he has arranged for the care and comfort of my aunt and uncle, now in their 90's, who are both frail and in need of 24 hour per day supervision and health care. In my family, we've always believed that you can tell a man's character by the way he treats his parents. This is certainly true of Peter.

Peter is also a wonderful husband and father and has been an ideal role-model for his children. Peter has always treated his friends as if they, too, were family members. When his best friend, Artie Cutler, died suddenly at a very young age, Peter immediately made himself available to Alice Cutler, Artie's widow, and to her two daughters (one of whom is a special-needs child). I know that he has continued to be helpful and supportive to this family.

Both Iris and Peter have dedicated their lives to children with Special Needs, to families in need, and to friends and relatives in need of help.

I've personally gone to Iris and Peter on several occasions through the years for their advice and counsel. They've always been fair, wise, kind, and very helpful. I don't know of another couple who are so well matched and so consistent in their unconditional love and support for friends and for family members.

I hope and pray that you will consider all the good Peter has done in his life, as well as his many acts of loving kindness, as you consider his sentence. Thank you for taking the time to read this letter.

Sincerely,

Ninette Stiskin
190 east 72nd Street
NY, NY 10021

# EXHIBIT 33

Tuesday, 20, 2008

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Room 533
White Plains New York, NY 10601

Dear Judge Karas,

My name is Connie Cohen and I am writing this letter to talk about my friend, Peter
Arest. I am aware that he has pleaded guilty and is being sentenced in July, however, I
wanted to take the time to tell you something about him that may give you some
additional insight into who he is. First, let me tell you something about myself, and my
relationship with Peter. I am 58 years old, and have been a teacher at Solomon Schechter
School in White Plains since 1990. I brought my children up in Rye and moved to
Tarrytown a year ago.

I met Peter and his wife, Iris, over 22 years ago. Even though Iris and I became close
girlfriends, I developed a separate friendship with Peter that has remained strong. We
often shared family excursions, holiday dinners, and life's joys and sorrows, along the
way.

During my divorce, a very difficult time in my life, Peter guided, supported, and
encouraged me to move ahead and create a new life. From running over to fix a broken
appliance to receiving a phone call for comfort at all hours, he was always available.
Peter's generosity of spirit has always been felt. All I would have to do is mention that I
was looking for something or needed something and Peter would either locate it for me or
actually get it for me. He took the time to be a true friend who expressed his friendship
in actions not only words.

I have always admired Peter for his incredible commitment to people, but in particular,
his devotion to his mother and in-laws, both who are now ailing. He opened his house
for them to live with him and has cared for them selflessly. These acts of kindness are
trying and unthinkable for most people, however, for Peter they came naturally.

I am certain that you have heard from a number of people, the kind of husband and father
Peter is, but some qualities bear repeating; they're special, they're meaningful, they're
what life is all about.

As good friends we've had the opportunity to talk about this unfortunate event, and Peter has confided how badly he feels about this.  This letter is only the tip of the iceberg about Peter's character. I and so many others who have been touched by Peter, would most sincerely appreciate your thoughtful consideration in determining what sentencing would be most appropriate for this good man.

Sincerely,

Connie Cohen

Connie Cohen

# EXHIBIT 34

# The Summit Children's Residence Center



June 12, 2008

The Honorable Kenneth M. Karas
United States District Court
300 Quarropas, Room 533
White Plains, NY 10601

Re: Peter Arest

Dear Judge Karas,

I am the Founding Executive Director of an agency known as The Summit Children's Residence Center, located in Nyack, NY. Since 1974, the Residence Center, licensed by the NYS Office of Children and Family Services has provided board, care, and treatment to 115 children and teens with emotional and/or neurological disabilities referred to us by School Districts and Social Service agencies throughout New York State. These adolescents are provided with educational services by our sister agency, The Summit School, chartered by the Board of Regents, and sharing a campus with the Residence Center. (The school also has a day-treatment branch located in Queens, NY , servicing some 275 children.). The Residence Center and the School share a common Board of Directors.

I am writing to you on behalf of Mr. Peter Arest, who has been a member of the Board of Trustees for the past 16 years, and the President of our Board since 2001.

I first met Peter through my wife's first cousin, Iris, who became Mrs. Arest in 1967.
He was introduced to me as a former employee of Pleasantville Cottage School in Westchester, also a long-established treatment center. He was a provider of direct services to Emotionally Disturbed adolescent boys. I knew immediately that I was not only gaining a new cousin but also a potential leader whose guidance would help our agency grow while maintaining quality programs. As they say, "the rest is History".

Peter has been a "guiding light" to our programs. He is a sincere, talented, well-intentioned person whose advice has been indispensable to us. Based on my knowledge of Peter's character, high moral standards, and integrity, the current situation in which he finds himself is completely out of character.

Equally important, I have come to know Mr. Arest as a caring father, husband and son. He has always taken care of his mother, now in her 90's and living with Peter and his family. He has also been a good son to his in-laws, now also in their 90's. I personally know of situations in which he has provided emotional support in times of crisis not only to his immediate family, but to the families of friends who died sudden and untimely deaths.

I would hope that you will take this letter into consideration when sentencing Mr. Arest, and that you will find it possible to display leniency.

Very truly yours,

Mayer A. Stiskin
Executive Director

339 North Broadway • Upper Nyack, New York 10960 • 845-358-7772
Fax — 845-358-5288

# EXHIBIT 35

# The Summit School at Nyack

An Educational-Treatment Program For Children With Learning and Adjustment Difficulties

June 9, 2008

The Honorable Kenneth M. Karas
United States District Court
300 Quarropas
Room 533
White Plains, New York  10601

Re:  Peter Arest

Dear Judge Karas:

In my capacity as Executive Director of The Summit School, I have come to know Peter Arest quite well over the past sixteen years.  Summit is a not-for-profit day and residential treatment facility with units in Queens and Rockland County, currently serving in excess of 400 emotionally handicapped and/or learning disabled students and their families, and employing 130 persons in Queens and an equal number in Rockland County.

Over the past sixteen years, I have consulted with Peter on several occasions within his capacity as Board of Directors member and Board of Directors President for our agency.

Peter's support and guidance was always available.  Most recently, when we had a devastating fire to the residential area of our Rockland campus, Peter personally walked through the building, assisting us in reconstruction ideas and concepts and offered his services "pro bono" to our contractor.

I would ask the court to consider the good works that this man has accomplished over the length of his career, both on behalf of our students and their families as well as to the wider community.

Very truly yours,

Bruce Goldsmith, Ed.D.
Executive Director

339 North Broadway • Upper Nyack, New York 10960 • 845-358-7772
Fax — 845-358-8810

# EXHIBIT 36



**Newmark**
**Knight Frank**

125 Park Avenue
New York, NY 10017

T 212.372.2400
F 212.372.2409
www.newmarkkf.com

Jeffrey R. Gural
Chairman

June 12, 2008

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Room 53
White Plains, N.Y. 10601

Dear Judge Karas:

My name is Jeffrey Gural, and I am the Chairman of Newmark Knight Frank, a real estate management company in New York City.   I am 66 years old and I have had the pleasure of knowing Peter Arest for approximately 15 years.  I met him through our mutual friend, Artie Cutler. Our fifteen year relationship has been primarily a social one.

Approximately two years ago we developed a business relationship and became partners in an exciting project to help revitalize Harlem along with two women who are long standing Harlem residents.   Part of our excitement about the project was the opportunity to mentor two enthusiastic entrepreneurial women.    This has been a very challenging endeavor.    There have been many stumbling blocks along the way.  I have been very impressed with Peter's ability to support and nurture our young team.   He is patient, caring, positive, and has constructively assisted them whenever possible.

I believe Peter to be one of the nicest people I have ever known.  He has been a very involved board member in Harlem Lanes.    Please take this into consideration when considering his case.

Regards,

Jeffrey Gural

Although all information furnished regarding property for sale, rental, or financing is from sources deemed reliable, such information has not been verified, and no express representation is made nor is any to be implied as to the accuracy thereof, and it is submitted subject to errors, omissions, change of price, rental or other conditions, prior sale, lease or financing, or withdrawal without notice and to any special conditions imposed by our principal.

# EXHIBIT 37



# RYE HIGH SCHOOL
One Parsons Street, Rye, New York 10580  Tel 914-967-6100  Fax 914-967-4380

*June 3, 2008*

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas, Room 533
White Plains, NY  10601

**Dear Judge Karas,**

My name is Dr. Jim Rooney and I have been the principal at Rye High School for nearly two decades.  I've known Peter Arest for many years.  I met him through his wife, Dr. Iris Arest who is a valued colleague and an indispensable psychologist at Rye High School.

A few years ago, Peter's wife served as a faculty advisor to elected student class officers.  One of the jobs of class officers is to fundraise in order to lower the cost of proms and as such they spend many Saturdays at football games selling hot dogs and other refreshments.  In all the many years of going to these games, I have never seen a spouse standing over a hot grill helping students roast frankfurters, but after I came to know Peter I was not surprised that he would show this level of generosity with his time.  In addition, he has hosted end-of-the-year meetings at his house for my team of social workers, psychologists and guidance counselors.  Typically he takes the day off from his own job and works in the kitchen providing imaginative meals for us and stimulating conversation.

I am also indebted to Peter who has very kindly acted as a mentor to my daughter who is just starting out in the restaurant business.  One of her first jobs, while she was on an internship during her studies at the Culinary Institute of America, was working as a pastry chef at one of Peter's restaurants.  He went out of his way to encourage her and to serve as a reference, and to even use his contacts to provide new opportunities for her.  When he took her under his wing, I knew I could rely on him to follow through.  This sort of concern for others is typical of how he has always acted towards me, my family and my colleagues.

I appreciate that he has pled guilty and that in deciding the appropriate sanction, I would ask you to take into consideration his many acts of generosity that have been multiplied over the years with many other people he has come in contact with.  I know that he began his career as a social worker and despite the fact that he is a builder now, which seems pretty remote from social service work, he has always struck me as an empathetic person with a good heart—more like a social worker than a developer.

*Sincerely yours,*

Dr. Jim Rooney

---

Dr. Jim Rooney, *Principal ext. 1908*    Mrs. Patricia B. Taylor, *Ass't Principal ext. 1948*    Mr. Wayne Matteis, *Ass't Principal ext. 1918*

# EXHIBIT 38

154-32 17th Road, Whitestone, NY 11357

# John Venetis

July 1, 2008

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Street, Room 533
White Plains, NY 10601

Dear Judge Karas:

My name is John Venetis and I am the owner of Vema Contracting, Inc., a contracting company in New York City. I am 36 years old and live in Whitestone, NY with my wife and three children. My father-in-law has been doing plumbing repairs for Peter for over a decade. Through this connection I started doing building repairs for Peter a few years ago. It has been my pleasure over the last few years to not only know Peter as a client but also a friend. I am aware of the crimes that he has committed but would like to assure your honor that this is not the Peter Arest I know.

Not only do I view Peter as a customer and friend but also a humanitarian. I know Peter to be involved in many charitable organizations. This is why it was no surprise to me that this past year when he heard of my involvement in my church, St. Nicholas Greek Orthodox Church, he was a willing contributor. When it came time to solicit donations for our last golf outing Peter insisted on donating $2,000.00 even though he knew he and his son would be unavailable to play.

*July 1, 2008*
*Page 2*

I hope that this brief letter sheds some insight into the man that Peter Arest is. I hope that your honor can show Peter leniency at his upcoming sentencing.

Sincerely,

John Venetis

# EXHIBIT 39

**RICHARD J. HOFFMAN**
**14 ROBINHOOD ROAD**
**WHITE PLAINS, NY 10605**
**914-683-0185-HOME**
**914-253-6666-OFFICE**
**914-523-8290-MOBILE**
**914-683-2598-FAX**

May 15, 2008

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas  Room 533
White Plains, NY 10601

Dear Judge Karas:

My name is Richard Hoffman. I reside in White Plains, New York and I am 62 years old. I'm currently the President and CEO of Business Outsourcing Solutions Systems LLC, a financial and technology outsourcing company with 20 employees worldwide, with our main office in White Plains. I have known Peter Arest for over 15 years and consider Peter and his family dear and close friends.

I sincerely hope the content of this letter will, in some way, enable you to appreciate the deep respect, admiration and love that I and others feel towards Peter and to assist you in better understanding the man who will stand before you at this sentencing.

Peter and I met almost 15 years ago as new members of Ridgeway Country Club in White Plains. We immediately became fast friends due to mutual interests and our devotion to our respective families. We each had two children of like ages and wives who were full time working mothers. This allowed for us to communicate and compare notes about raising children, prospective college prospects and being the best fathers and husbands possible while we adhered to all the principals that were instilled in us by our parents. I always marveled at how much time Peter spent with his wife and children while he juggled the demands of working in Manhattan and the hours he devoted to business.

Peter has been there for my family and me during our most difficult times. Last year I was involved in a horrific explosion that left me incapacitated for months. He visited me in the hospital to the point of me asking him not to come any more. Once I returned home he was at my doorstep with enough food to feed my wife and me for weeks. There wasn't a day that went by without a call asking how I was feeling. In addition, he constantly called my wife and sons to ask if there was anything that he could do to make their situation easier. Fortunately, I have recovered but still need to remind him that I am no longer incapacitated. He is one of the most sincere and caring individuals a friend could have. It is also a pleasure to see that his children have inherited his wonderful sense of caring and generosity. He is a terrific father and husband.

I have never acknowledged publicly how important Peter has been to me and my children's success. When one of my children was starting a new retail endeavor Peter lent his knowledge, time and encouragement to this startup enterprise. His generosity, personally, to me allowed me to help my child realize his dream. Peter has always made his home available to all our family and friends. His generosity goes far beyond his philanthropic donations to organizations which he does not publicize. Peter devoted his time and energies for years to the betterment of Ridgeway Country Club, serving in many capacities including, President. He personally supervised the reconstruction of their clubhouse and improvements to their golf course that has allowed Ridgeway to remain an integral part of the White Plains community while never asking for or receiving any personal glory.

I can't impress enough on Your Honor how distressed, disturbed, saddened and surprised that someone of Peter's character would find himself in the position he now occupies.  I truly hope that this letter might have some positive influence in your decision as to Peter's fate.

I implore you, from the bottom of my heart, to take into consideration the wonderful person, family man and true friend that Peter is when considering his sentence.

Please feel free to contact me if you need me to expand on any of the above.


Sincerely,

Richard J. Hoffman

# EXHIBIT 40

**Douglas I. Rosen, M.D.**
**Dermatology**
*3620 East Tremont Avenue, Bronx, New York 10465*
*Tel.(718)792-4700     Fax(718)792-1255*

The Honorable Kenneth M. Karas                                      June 9, 2008
United States District Court
Southern District of New York
300 Quarropas Room 533
White Plains, NY10601

Dear Judge Karas,

My name is Douglas Rosen and I am writing to you in support of my friend Peter Arest. I am aware that Peter is due for sentencing on July 18, 2008 and would like to provide you with my experience of Peter in hope that you will consider this at the time of sentencing.

I am currently a practicing dermatologist in the Bronx, having attended Brooklyn College and Albert Einstein College of Medicine. I currently reside in Chappaqua, New York and have known Peter, his loyal wife Iris and his children Alana and Justin for the past twelve years. I had the opportunity to meet Peter when I joined the Ridgeway Golf Club in Westchester at which time he was the President. While in charge of both a diverse group of members and an unwieldy staff, Peter navigated his duties with grace, sincerity, and compassion. All members and more importantly all employees were treated with respect and a helping hand at all times. Volunteers in these types of organizations tend to be too often interested in wielding power, yet Peter never displayed any of these characteristics. He was always even handed and willing to listen to all sides of an issue before acting, traits that are rare among successful individuals.

On a more personal note, my youngest son, Zachary, is currently a freshman at the Cornell School of Hotel Management. While deciding to pursue his career, my son enlisted Peter's counsel on numerous occasions. His willingness to listen, mentor, and reflect on his efforts, success and pride that he enjoyed during his career in the hotel industry was invaluable in helping Zachary become comfortable with his career choice.

Many people are encountered along life's journey but few stand out as people of substance and character. Peter Arest has always been an honorable and compassionate person and I am proud to call him my friend. I only hope Peter can be afforded the same level of compassion that I have witnessed him provide to others.

I thank you in advance for your taking the time to reflect on my ruminations.

Respectfully,

Douglas I. Rosen M.D.

# EXHIBIT 41

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Room 533
White Plains, NY 10601

Dear Judge Karas:

     I am writing this letter on behalf of my good friend Peter Arest. I have known Peter for about 9 years and deeply disturbed by the situation in which he finds himself. I am 64 years old. I owned a business manufacturing textiles, which I sold close to 4 years ago. My wife, Judy and I now run a small horse farm in North Salem, New York.

     The moment I met Peter, I took an immediate liking to him. He is the type of person you can call upon when you need him and you can trust that he will deliver upon his word. Through his close friends and family understand that he has pleaded guilty to a tax charge, that does not and cannot change the fact that he is a contributing member of that ever shrinking club of honorable men.

     He is a caring individual who has proven to me innumerable times that he is committed to his community. Though it would bring him no financial reward and though it would require a tremendous time commitment, Peter ran for election as the president of Ridgeway Country Club because he wanted to give back to that community and knew he was the best man for the job. A great majority of the members, including me, apparently felt the same way and ultimately elected him to the board and that office. While he was president, he greatly improved the facility while keeping the club on budget and the assessments down, which was a great task considering the mess he inherited. Every member consistently praised his efforts. He is a take charge individual who has the remarkable ability to make things happen. In fact, we had huge turnouts for our charity weekend under Peter's leadership.

     He operates under the adage that a friend of a friend is a friend. There were many times he has offered to help members of my family; from making business introductions to calling on his friends to look after my children upon their travels in different parts of this country. I have witnessed this offer to others as well.

     Peter is worth so much more to this society as a free man than an honest man locked up for committing an offense that he regrets soulfully and deeply. I urge you take this letter into consideration in imposing sentence. Peter has been a true friend, and I hope that many of the good things he has done in his life will be considered. Thank you for your time.

Respectfully,

Paul Schur

# EXHIBIT 42

 **Richard A. Sporn**

134 McLain Street
Bedford Corners, N.Y. 10549
Telephone: (914) 241-6313
Fax: (212) 986-4688

Cable: SPORTAX
E-Mail: sportax@verizon.net

June 24, 2008

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas, Room 533
White Plains, New York 10601

Dear Judge Karas:

I am writing on behalf of my friend, Peter Arest, in the hope that you will take into account that despite his plea, that he is truly an inherently wonderful and remarkable person in all respects. Quite simply, his transgression in the matter before you is inconsistent with the Peter that I have known for many years. I have lived in Westchester County for twenty years, and have been a practicing attorney in Manhattan for the past thrity years. My relationship with Peter is purely social.

I first met Peter and his family as a result of our membership at Ridgeway Country Club, in White Plains, New York, and have had the honor of knowing Peter for approximately fifteen years. I got to know Peter quite well because both of us were elected by the membership to serve on the Board of Governors of the club for many years, and in addition, Peter and I each served terms as President, Peter having been elected before me. As you can imagine, our common experience as President of a club consisting of a community of 300 or so families with annual revenues exceeding $6 million, created common ground for Peter and I to commiserate, consult, and cooperate with each other over the years. In addition, an important component of this community is its own charitable foundation, where under the President's leadership substantial financial support

is raised for various causes, including pediatric cancer research by support for the Pediatric Cancer Foundation, and other life saving causes, such as support for the Strang Cancer Prevention Center, which conducts research to prevent breast and prostate cancer and promote cures through early detection. Peter mobilized the membership to support the club's charitable activities, which is an integral part of the community experience. Fortunately for me, my term followed Peter's and I thus had the benefit of learning from him. Peter rightfully earned the respect of the entire membership because he had integrity---he was always honest with the membership about all phases of the club's operations, finances, management and problem areas, and he confronted problems head on, with a marvelous sense of humor, all in a way that was truly best for the community. He always put the entire membership's interest first, selflessly devoting huge amounts of his time, all for the benefit of a community consisting of three hundred or so families. Sometimes the best evidence of a person's character manifests itself in how he interacts with employees---I can assure you that from my own observations, during his terms as President, Peter was loved and respected by all of the club's employees, which created a very positive result for the membership. Peter's soft heart, fairness, and approachable manner facilitated the respect and trust of the club's employees, and they in turn reciprocated to all of us. I know that on more than one occasion he, without any expectation of return, lent financial assistance to employees who fell on hard times or otherwise needed his advice or assistance. That's the Peter I know.

My wife and I frequently socialize with Peter and his wife, Iris, and we are fortunate to have them as friends. You should know that I am writing this letter not because Peter or anyone from his family asked me to write. He has no idea that I am writing to you, but from the bottom of my heart, I hope that you exercise your discretion toward Peter in a way that I have seen Peter himself be compassionate toward others.

Respectfully,

Richard A. Sporn

# EXHIBIT 43

# OB-GYN ASSOCIATES, P.C.

45 EAST 85TH STREET
NEW YORK, NEW YORK 10028
TELEPHONE (212) 535-4611    FAX (212) 517-7488

MICHAEL JAY STRONGIN, M.D.          IDA ELLEN SCHWAB, M.D.                    ASAF FERBER, M.D.

June 3, 2008

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Room 533
White Plains, NY 10601

Dear Judge Karas,

My name is Michael J. Strongin. I reside in White Plains and in New York City and I am 59 years of age.

I am a practicing Obstetrician and Gynecologist in New York City for 30 years. I have known Peter Arest for over 15 years and consider him a dear friend.

I hope the content of this letter, in some way, can present a side of Peter that will help you in your decision with regards to sentencing.

Peter and I met at Ridgeway Country Club over 15 years ago. I was extremely active in the club and served in many capacities including President and Vice President for a total of 8 years. In a leadership role, I took special interest in Peter both as a friend and fellow club member. I was taken by his demeanor and willingness to help the club grow and improve. He moved through the ranks and became club president. He worked tirelessly to improve the club without the need for personal gain. He unselfishly worked long hours to help with the re-building of the club house and other improvements on the golf course.

In that capacity I was taken by the manner in which he dealt with workers, club personnel, waiters, locker-room attendants etc. He was consistently courteous, gentle and nice. His counsel was consistently sought and he gave his personal time to help those less fortunate than himself. He discreetly loaned money to several club personnel that were in financial difficulties or having family emergencies.

# OB-GYN ASSOCIATES, P.C.

45 EAST 85TH STREET
NEW YORK, NEW YORK 10028
TELEPHONE (212) 535-4611    FAX (212) 517-7488

MICHAEL JAY STRONGIN, M.D.         IDA ELLEN SCHWAB, M.D.                    ASAF FERBER, M.D.

I have seen Peter lend emotional and monetary help to those in need, mostly done behind the scenes.  His desire to help others makes me proud to know him.  I have seen how he cares for his elderly mother, wife and children.  His family is the most important aspect of his life.  I believe, for the most part, he has been a superb role model.

I was very saddened and surprised to hear of Peter's misstep, nevertheless, my feeling and admiration remains strong and I hope that you will take this into account when you consider his sentence.

Sincerely,

Michael J. Strongin, M.D.

# EXHIBIT 44

Steven H. Gaines
50 Beechwood Road
Hartsdale, New York 10530

June 9, 2008

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas, Room 533
White Plains, New York 10601

Re: Arest

Dear Judge Karas:

I write to provide you information which I believe is relevant to the Court's sentencing of Peter Arest. I am hopeful you will consider the information I provide in arriving at your decision.

By way of introduction, I am a member of the bar, admitted to practice in 1977, and presently practice in all New York State courts, the Federal District Courts for the Southern and Eastern Districts and the Second Circuit Court of Appeals. I reside in Greenburgh, New York with my wife Barbara, and we have known Peter Arest and his family for over twenty years. Specifically, my wife Barbara began working with Peter's wife, Iris, in 1986. Initially, my time spent with Peter and his family was during various social gatherings. I developed a social friendship with him. During the most recent ten years of our friendship, I have represented Peter and his family in numerous business and family matters. In fact, it was me Peter called when the government agents first appeared unannounced at his home in Connecticut and I spent that day with him when he was interviewed and his home was searched. However, other than that and assisting him in obtaining counsel, I have played no part in his defense. In short, I know Peter and his family very well and am, as such, very comfortable providing your Honor with my observations of Peter.

I am mindful that Peter has admitted, to me and this Court, that he is guilty of what the government has charged, specifically, income tax evasion. We have spoken, as close friends, about what he did and he has always acknowledged his unacceptable and unlawful conduct and deeply regrets the pain and anguish he has caused his family. I have little doubt whatsoever that the conduct to which he has admitted was aberrational and the unfortunate product of an isolated episode of extraordinarily poor judgment. To be sure, there are certain lapses in judgment which, despite one's fervent desire to undo, cannot be undone and one must bear the consequences of that conduct. Based upon my conversations with Peter, he has learned that lesson and is genuinely remorseful over his conduct. I also know that Peter's unlawful behavior in evading income taxes is totally out of character. I know that to be the case, first hand. Over a

The Honorable Kenneth M. Karas
June 9, 2008
Page Two

long period of time, I have personally observed Peter make business and personal decisions with
integrity and fairness. I have observed Peter's honesty and forthright disclosure in numerous
business and family contexts. Peter has always respected and performed his legal and ethical
obligations in various business relationships I have witnessed, first hand. I have also observed
Peter's wonderful relationship with his wife of 32 years, Iris and his two wonderful children,
Justin and Alana. His family relationships are a testament to his loving and honest parenting.

I have also witnessed, first hand, how Peter has and continues to care for his elderly
mother, Lily, who lives with him in his Connecticut home. While Peter's business obligations
and schedule can only be described as full-time, he always provides his mother, on almost a daily
basis, with the emotional and physical care she needs and deserves. I have, many times,
accompanied Peter, during a busy business day, when he leaves and attends to his mother's needs
at home. Notwithstanding her age and ill health, Peter always personally makes sure she is cared
for and is included in all family events.

On a personal basis, Peter has freely expressed to me his utter remorse about this
situation. He is overwhelmed by the sense of embarrassment which he believes he has visited
upon himself, his loving family, and his community by virtue of his misconduct. While I
imagine that it is common in letters of this kind for the author to claim that the subject already
has suffered enormously from his own conduct, that such an observation is perfectly genuine in
Peter's case based upon my conversations with him. I sincerely doubt that Peter's life ever will
return to the normalcy he once enjoyed, his personal sense of well-being and stature has been
immeasurably diminished in his own mind, and the shame that he bears each day is punishment
of the greatest magnitude. I am hopeful these are appropriate and important considerations to
take into account as Your Honor seeks to impose a fair and merciful sentence.

I am informed that Peter has paid the Internal Revenue Service all that was previously
due, including taxes and interest, and will pay appropriate substantial IRS penalties. I respectfully
request this Court, in sentencing Peter, to exercise leniency. Peters takes what he has done very
seriously and is truly sorry for what he did. I know that Peter will never make that kind of
mistake again. Thank you for your consideration.

Respectfully submitted,

Steven H. Gaines

# EXHIBIT 45

# RICHARD BORN
## 1010 FIFTH AVENUE
## NEW YORK, NEW YORK 10028
## 212-879-3157

June 5, 2007

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas room 533
White Plains, NY 10601

Dear Judge Karas,

I am writing to you in support of my good friend and business partner, Peter Arest, who is scheduled to be sentenced by you on July 18, 2008.

I am the principle partner in BD Hotels, LLC. We are the largest independent owners and operators of hotels in New York City and have been in business here for over 25 years. We have ownership interests in 20 Manhattan hotels. I live in New York City with my wife of 28 years and have raised our three children here.

I have been fortunate to have known Peter Arest, his wife Iris and his children Justin and Alana for over twenty years. I consider Peter to be one of my closest friends. My wife and I socialize with Peter and Iris on a regular basis and we have watched our children grow up together. I have always known Peter to be a kind and generous sole. He is a devoted husband, a loving father, a dear friend and the most charitable person I know.

I have been in business with Peter Arest since 1994 when we purchased and developed the Metro hotel. Since then we have partnered on five other hotel developments. I have always known Peter to be and honest, strait forward businessman. He is hard working and smart and conducts himself with the utmost integrity. Peter and I have had many long and deep conversations concerning the matter for which he will appear before you. I can state with out hesitation that Peter is consumed with remorse over his acts. I should also state that it is in no way consistent with the manner in which he has conducted himself during all of our years in business together.

Please consider my words as you decide on his sentence. This entire affair has been a great tragedy for Peter and his entire family. It is hard to imagine the extent to which his wife and children will suffer if he were to be physically separated from them. I along with Peter's entire close circle of family and friends would share in their pain. The

partners and employees of The Metro Hotel will also feel the loss if Peter is not at the helm. Peter's watchful eye has been the key to the hotels success and profits will, no doubt, suffer in his absence with potential negative impact not only on owners but on a number of employees.

I sincerely hope that you pass judgment with forgiveness and compassion.


Sincerely yours,

Richard Born

# EXHIBIT 46

# HERBERT & SUSAN S. ADLER

4 GREENE LANE
WHITE PLAINS, NEW YORK 10605

June 13, 2008

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Street – Room 533
White Plains, New York 10601

Re:    Peter Arest

Honorable Sir:

My wife, Susan, and I are writing to you in connection with the sentencing of Peter Arest scheduled for July 18, 2008. We have both known Peter and his family for some 15 years. We reside in White Plains, New York.

I am an attorney at law, with offices in White Plains, admitted to practice before the courts of the State of New York, the Federal District Courts for the Southern and Eastern Districts of New York, the Second Circuit Court of Appeals and United States Supreme Court. My wife is a licensed psychologist with a private practice in Rye Brook, New York. She has a Doctorate in Psychology and is a board certified school neuropsychologist.

Although we understand that Peter pled guilty we can truly say that the acts and behavior he admitted are not characteristic of him. We have known Peter to be a devoted father and family oriented man. His widowed mother resides with him and his wife and he is devoted to her care. He has raised and educated two children, with college and post graduate degrees, who are now young adults and a credit to the community. His son Justin is a graduate of Cornell University, holds a J.D. from George Washington University. He is a member of the Bar of the State of New York. His daughter Alana earned her undergraduate degree from George Washington and received a

Masters Degree in Special Education from Fordham University. She is currently applying for jobs in Special Education.

Peter has served on the Board of Governors, and as the President, of Ridgeway Country Club, of which we are members. During Peter's tenure on the Board, and particularly during his presidency, Peter demonstrated characteristics of ethical leadership and moral compassion, qualities which are inconsistent with his behavior in connection with the acts for which he pled guilty. He presided over, and led, a body of more than 200 members, who were not always in agreement, by logic, fairness and a sense of ethics and morals which brought about a harmonious decision process, despite heated and divergent views, during a difficult period of the club's growth.

Peter has not only been a devoted family man and leader, he has been a good and trusted friend. Both of us have sought out Peter's advice and counsel on personal and business decisions. We have found him to be caring and concerned.

These demonstrated character traits, his sense of, and commitment to, family; his fairness and ethics in dealing with others; and his devotion to his friends warrant due consideration by the Court in its consideration sentence.

We respectfully request that you take this letter into consideration in imposing sentence and request that you allow Peter the utmost leniency.

Respectfully yours,

HERBERT ADLER

SUSAN S. ADLER

# EXHIBIT 47

13287 N. Hammerstone Lane
Oro Valley, Arizona 85755
June 10, 2008

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Room 533
White Plains, New York 10601

Dear Judge Karas,

My name is Jamie Faye Arest. I am Peter Arest's niece. I am 34 years old. I live in Oro Valley, Arizona with my husband and two sons, ages 2 and 1. I currently am home raising my children. I have known Peter my entire life. He is now and always will be my favorite uncle. He is one of the most exceptional people I know. He is a wonderful uncle as well as a wonderful great-uncle to my sons. I have always known him to be kind, generous, thoughtful and giving. He has been there for me in many ways over the years. He has always been there to listen and offer advice and comfort. He is like a second father to me.

I truly believe that Peter is an extraordinary person. I believe our family is unusual in the fact that we all remain so close even though we live so far apart. For the large part of my life I lived within 15 minutes of Peter and spent a lot of time with him, his wife and my cousins. Even though I now live on the other side of the country, I still feel very close to him. We usually speak on the phone at least once a week. He has always managed to make time for me. He still listens to me like he did when I was younger and is always interested in what is going on in my life. The day I got married, Peter was the first person I called after my parents. This is true for both of my pregnancies and the days my children were born.

I am writing this letter with the hope that you might consider this information when imposing Peter's sentence, and be lenient.

Thank you,

Jamie F. Arest

Jamie Faye Arest

# EXHIBIT 48

Jeffrey Bank
650 West End Avenue
Apt G-AB
New York, NY 10036

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Room 533
White Plains, NY 10601

June 23, 2008

Dear Judge Karas,

My name is Jeffrey Bank, I am 42 years old and I am the managing partner of Artie's Deli, a restaurant located in Manhattan, where I currently reside with my wife and 2 children. I have known Peter Arest for over 9 years. I am writing this letter in the hopes that it will give you a glimpse into my relationship with Peter, and that you will take this information into consideration upon sentencing.

I know Peter has made mistakes and is taking responsibility for them. I respectfully ask the court to consider being as lenient as possible, for the Peter I know is a compassionate, intelligent, thoughtful kind man. He has helped guide and mold me through some difficult business and personal situations, and because of that he has given me the confidence not only to turn my business into a success in an ever changing economic climate, but to grow as a person as well.

I first met Peter when I was opening Arties, which is named for Artie Cutler, Peter's best friend, who passed away almost 11 years ago. We were introduced through Alice, Artie's widow. Peter knew that opening a deli was a lifelong dream of Artie's, and expressed interest in being a minority partner in the deli. In my experience, minor silent partners are usually not so silent, and I was honestly not that excited about having a partner that I did not know, but in deference to Alice, I accepted.

My relationship was Peter over the years has grown from that of a mentor to true friendship. In the past, I had been involved in businesses on Long Island, and this was my shot in the "big city". I honestly do not think that I would be as successful as I am today without having Peter as a friend and sounding board. Through the years, Peter has always been there to lend his support without pushing advice on me. He has taught me to see the bigger picture when running a business and how to stay focused on that picture.

In the business world it is rare to find someone who, though only a minor partner in your business with very little to gain monetarily from that small business, still takes the time to listen, advise and council. I am fortunate to have met him, and will consider him a lifelong friend. I appreciate your taking the time to read my letter, and hope you will consider the traits I have mentioned, and the quality of the man, when deciding on a sentence.

Thank you,

Jeffrey Bank

# EXHIBIT 49

The Honorable Kenneth M. Karas                                              June 17, 2008
United States District Court
Southern District of New York
300 Quarropas, Room 533
White Plains, NY 10601

Dear Judge Karas:

By way of introduction my name is Michael Bonagura and I'm writing to you on behalf of Peter Arest who is scheduled for sentencing in your court on July 18, 2008. As you consider Peter's guilty plea and determine his sentence please consider the following information as you render your final decisions affecting this case.

Allow me to share some insight into Peter Arest. Peter is a consummate family man. While I would consider him 'one of the guys' it's Peter who tries to always find a way to include our wives in every plan. I seriously doubt that he would make a critical business decision without consulting his wife for her feedback.  As a Dad he is involved closely with his son and daughter speaking to them on a daily basis. I know this first hand because our daughters have been close friends since grade school and currently share an apartment in NYC for the past two years. We live only a few miles away from Peter and many a time he will take our grown daughters back to Manhattan himself rather than have them be inconvenienced by the weekend train schedule. You don't find many men busier than Peter Arest and I'm sure you won't find very many who finds as much time to do whatever he needs to be there for family and friends.

I've heard it said that at a man's funeral you can tell how great a person he is by the number of people in attendance. I think a better measurement of who a man is comes down to how many people are willing to speak nicely about you when you're still alive. My wife and I attended Pete's 60th birthday party a couple of years ago. There were a couple of dozen people there to surprise Peter when he arrived. A couple of hours into the evening one person followed by another stood up before all in attendance to make a prepared speech. Everyone who spoke seemed to have a funny anecdote, several in fact about their experiences with Peter. I too had written down a few lines about my experiences over time with Peter. Funny thing was everyone there had written something and stood up to deliver a speech. Most interesting of all was no one asked us to write or say anything in advance yet everyone there seemed compelled to speak kindly about this man. I hope one day people find me in such high regard to pay me such an honor.

Your Honor has a lot to consider when sentencing a man. The real crime here would be to miss the opportunity to put Peter's time to the best use for those who could use his skills. Have him contribute to a mentoring program for disadvantaged youths interested in business studies. Have Peter guest lecture at Columbia University Business School where MBA students can dig into the mind of a successful entrepreneur. Use this man's skills to help those who could really use it rather than allowing it to sit idle. His mind would be a terrible thing to waste.

Thank you for your considerations,

Michael Bonagura

# EXHIBIT 50

   

443-535-9321          443-535-0212          443-535-9400          443-535-0200

June 20, 2008

My name is Jody Cutler. I am 40 years old and I live in Highland, MD. I am an acupuncturist and on the faculty of Tai Sophia Institute, a master's level Acupuncture Institute. I also own retail businesses, which focus on health and the environment.

I have known Peter Arest my whole life. He was my father's dearest friend from high school and I consider him an uncle. His wife—my aunt, his kids—my cousins. When I think of Peter, I think of a family man. He is a committed father and husband. When I was young, I often looked at him with a longing to have a father more like him. He cooked and cleaned. He took his kids to school. He got to know their parents. He made parties at the house. He knew how to make his children feel special and cared about. He never seemed afraid to be in a feeling place with his children. He created strong, loving bonds with them that continue today. I am very moved by the fact that his children desire so much contact and closeness with him and his wife. It's a testament to the kind of fathering Peter gave them. Peter has always been active in the community as well—the neighborhood, the country club, the synagogue, the schools. And, on top of it, he is highly successful businessman. In some ways he's a Mr. Mom and Mr. Business all wrapped in one. I have often scratched my head in wonderment at how he is able to wear so many hats, handle everything with ease, and create amazing outcomes.

When I think of Peter, I think of a genuine, warm person with a great sense of humor, and a kind and generous heart. He's a person who enjoys life and he brings enjoyment to others. He's not afraid of going all out and he would for anyone he loved. I know he would do anything he could to help me if I needed him. There's a solid strong presence to him. He is a good listener and a good problem solver. Because his personality is so warm and inviting, some might miss his sharp mind. He's one of the smartest people I know. I call him when I need business advice. I know he'll come up with ideas I've never thought of.

So, in conclusion, I can say that Peter is a dear person in my life. He has been a very loving part of my family. And I think the world of him. I am getting married in Ontario, Canada on July 19th, 2008. It would be devastating to me if Peter could not be present at the wedding so I very much hope that he can attend.

Thank you,

Jody Cutler

Clarksville Square Shopping Center, Clarksville, MD 21029

# EXHIBIT 51

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Room 533
White Plains, NY 10601

June 2, 2008

Dear Judge Karas,

Please allow me to briefly introduce myself. My name is Sandy Degenhardt, LCSW.
I have been an employee of the Rye City School District for the past 16 years. I am 42
years old and live in Montclair NJ.

The purpose of my letter is simply to share with you my experiences as a friend of Peter
Arest. I have known Peter for the last 16 years as I am a close colleague of his wife, Iris
Knight Arest, PhD., who also works for the Rye City School District.

In my experience as a close family friend of Peter's, I have been a witness to his
unbelievable kindness, generosity of spirit and humility. Peter is a family man like no
other I have ever known. I have nothing but respect for the way he cares for his children,
his wife, and his aging mother. One of the most incredible qualities Peter possesses is that
when you are his friend, you too are family to him. I can recall numerous times when I
have needed a mentor, advice or emotional support in my life. Peter has consistently been
available to listen, guide and reassure me in difficult decisions I have been faced with. I
have never doubted that Peter has always had my best interests at heart when he has
shared his ideas and advice with me. Peter has also welcomed my family into his home
and heart. Peter has been a sincere friend to all of us and one I could never live without.

My heart is heavy while I ask you to consider my humble request for leniency as you
decide what you deem the most appropriate sentence for Peter Arest in this very out of
character situation.

Respectfully Submitted,

Sandy Degenhardt
25 Oxford Street
Montclair NJ 07042

# EXHIBIT 52

Jerry Feldman
28 Whippoorwill Road
Armonk, NY 10504

THE HONORABLE KENNETH M. KARAS
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT COURT
300 Quarropas, ROOM 533
White Plaines, N.Y. 10601                    June 5, 2008

Dear Judge Karas;

I am 64 years old, married to my wife, Marcia, for 38 years, we have two sons Jonathan and Cory. I own and operate a janitorial and building supply business with my two sons servicing the apartment house industry in the NYC area.

Peter and I first met about ten years ago and we became instant friends. We had the same likes, dislikes and sense of humor. Through our friendship our wives and children have become close enough to think of each other as part of our families.

What impressed me the most about Peter is his dedication to his family-- his wife, Iris, his son and daughter-in- law, Justin and Ali, his daughter, Alana, and his mother, Lily, who is 97 years old and lives with them. Under whatever his circumstances, they will always come first. Justin and Alana have turned into fine, educated, wonderful young adults. I believe Peter and Iris instilled in them their values and beliefs to make them the people they are today.

Peter treats his friends the same way he treats his family. Peter and Iris are always there for you. You never have to ask. Peter is also a very generous person, if it is borrowing something or giving his time, he never says no. You couldn't ask for a better friend.

We have spoken about his circumstances many times and I know for a fact that he is very sorry for what he did and the effect it is having on his family and friends.

Your Honor, I just want you to know from my heart that Peter is a kind, responsible, good person and I hope in some small way you can appreciate what I'm saying and in your heart try to be as lenient as possible in his sentencing.

Thank you for your time and consideration.

Very truly yours;

Jerry Feldman

# EXHIBIT 53

*Stanley Goldberg*

*17110 Grand Bay Drive*
*Boca Raton, Fl 33496*
*561-241-0152*

*stansocks@aol.com*

..................................................................

The Honorable Kenneth Karas
United States District Court
Southern District of New York
300 Quarropas Room 533
White Plains, NY 10601

June 3, 2008

Dear Judge Karas,

My name is Stanley Goldberg and I am writing this letter on behalf of Peter Arest of which I hope you will take into consideration when making your decision on the sentencing of Peter.

After spending my entire business career in the New York metropolitan area, I have recently retired and am residing in Boca Raton, Florida with my wife Libby. I have known and been a friend of Peter's for the past twenty years.

I had been a member of Ridgeway Country Club in White Plains, New York for twenty five years. During the time of my membership at Ridgeway Country Club, was when I met Peter. Both Peter and I served on many committees of the club together. I served as President of Ridgeway for three years and was pleased to have Peter as a member of the Board of Governors during my term. Peter had been a close advisor of mine during my Presidency and I asked him handle many of the Human Resource problems that generally arise at a country club. As the person handling this area of the club, I had always found him to be a very fair and responsible to the personnel of the club. All of staff of Ridgeway always felt that they were treated with utmost care and respect in their dealings with Peter.

During my long term relationship with Peter I have always found him to be a person that I could always count on at any time, whether it was a club problem, business problem or personal problem, he was always there for me and nothing was ever too much for him when it came to helping a friend.

Again, I ask you to take this letter into consideration when imposing the sentence for Peter Arest.

Very Truly Yours,

Stanley Goldberg

# EXHIBIT 54

David R. Greenbaum
1000 Park Avenue
Apt. 11A
New York, New York 10028

June 25, 2008

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas, Room 533
White Plains, NY 10601

Dear Judge Karas:

I am writing to you as the brother-in-law of Peter Arest to provide you with some background information on behalf of Peter.

I am an attorney by training, having practiced tax law at Weil, Gotshal & Manges. Over the past 25 years, I have been an executive in the real estate development business in New York City with The Mendik Company which, in 1997, merged into Vornado Realty Trust. Vornado is a publicly traded real estate investment trust and, since 1997, I have been president of Vornado's New York Office Division. My civic responsibilities include serving as a member of the Board of Trustees and the Vice Chairman of the Citizens Budget Commission, a private watch-dog organization which oversees the City's and State's fiscal policies; a member of the Executive Committee of the Board of Governors of the Real Estate Board of New York; a Director the Realty Advisory Board, and the 34th Street Partnership as well the Grand Central Partnership, both public/private efforts to enhance New York's mid-town business districts.

I am 56 years old and have known Peter since I first met my wife in 1979. Peter is married to my wife's sister. While Peter lost his father at a young age, he obviously was taught the singular importance of family in his life. Since I have know Peter, his mother Lily, who currently is 98 years old, has lived with Peter and his wife Iris. I have also come to know Lily well since my father, who was the same age as Lily, died several years back, and I marvel at each of Lily's birthdays. Peter also has been extraordinarily caring with regards to my wife's parents as they have aged. At every medical emergency, which have become more frequent as Ruth and Murray approach their 90s,

Page 2
June 25, 2008
The Honorable Kenneth M. Karas

Peter has been there to lend support, care and assistance. Peter is a loving and thoughtful husband and father and has raised two terrific children, Justin and Alana, who join with us at every family gathering. It is always Peter who insists on having everyone over to his home, wanting to surround himself with family and friends.

In addition to being my brother-in-law, Peter has become a good friend. Based on my knowledge of Peter through the years, as a family member and as a friend and his deep and abiding love for his extended family, I find it incredibly difficult to reconcile the actions to which Peter has pled guilty, to the man that I have come to know. I offer these thoughts to your Honor, to give you a glimpse of a different Peter Arest, the man as his family and friends know him, love him and support him and who are suffering greatly from this experience.

Thank you for your consideration.

Very truly yours,

David R. Greenbaum

# EXHIBIT 55

ROBERT A. KUTNICK, M.D., F.C.C.P.
14 EAST 90TH STREET
NEW YORK, N. Y. 10128

TELEPHONE 212 - 427-4700

May 22, 2008

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas, Room 533
White Plains, NY 10601

Regarding : Mr. Peter Arest

Dear Judge Karas:

My name is Dr. Robert Kutnick.  I am a 59 year old board certified internist and pulmonologist with faculty affiliations at the Albert Einstein College of Medicine, NYU College of Medicine, and the Medical College of Cornell University, who has been Mr. Peter Arest's personal physician since April 25, 2002.

Mr. Arest is a 62 year old man with diabetes, hypertension, hypercholesterolemia, gout, and obstructive sleep apnea. Mr. Arest's medical conditions, although stable on multiple medications including atenolol, metformin, atorvastatin, allopurinol, and esomeprazole; and a special CPAP mask Mr. Arest wears every night to treat his sleep apnea, are substantive and require regular monitoring. Given my six year history with Mr. Arest, I would like to think that I am uniquely qualified to continue to treat his above medical problems as they certainly place Mr. Arest in a category that puts him at significant risk for both heart disease and stroke.

Yours truly,

Robert A. Kutnick., M.D. F.C.C.P.
RAK: hm

# EXHIBIT 56

The Honorable Kenneth M Karas
United States District Court
Southern District of New York
300 Quarropas  Room 533
White Plains, NY 10601                          June 16, 2008
Dear Judge Karas,


    I am Robert Rimberg, a long time friend of Peter Arest. I am a 51 year old CPA with an office in Yonkers, and  own a home with my wife Nancy and live in New Rochelle, we have three children. Peter and I met, when our daughters went to nursery school together at Temple Israel of New Rochelle in 1988. Peter grew up in Queens and I grew up in the Bronx, we immediately hit it off.

    We had just moved into the neighborhood, Peter and Iris went out of their way to make us feel comfortable, by inviting us to their home. I always admired Peter for the way he loved his family. I never heard him raise his voice, or make a disparaging remark to his wife. His son and daughter are the apples of his eye. I was amazed when Peter's mother came to live with them. In this day and age of placing the elderly in old age homes, Peter would have none of it.

    Peter Arest is a good man, please be lenient in regard to his sentencing.


Respectfully Submitted,


Robert Rimberg


Robert Rimberg
186 Tewkesbury Rd
New Rochelle, NY 10583

# EXHIBIT 57



16 Weathervane Hill
Westport, CT  06880
June 6, 2008


The Honorable Kenneth Karas
United States District Court
Southern District of New York
300 Quarropas Room 533
White Plains, New York  10601

Dear Sir,

I am writing this letter on behalf of Peter Arest, a close personal friend of mine for over 40 years.  Peter is not just a dear friend, but part of our family.  He is much loved and has always been there for us to give support in times of hardship.

Peter has always been a man of great moral character.  His example of hard work, social contribution, and dedication has had a great influence on our family and circle of friends.  Peter has been a guide and mentor to my children.

I have known Peter as a student, social worker, parent, children's advocate and successful businessman. In all of these varied roles, he has shown exemplary character.  I hope you will consider this letter in your judgment of Peter and respectfully request the court's compassion.  I thank you.


Sincerely,

Thomas Roth

# EXHIBIT 58

Theresa Roth LCSW, BCD
16 Weathervane Hill
Westport, CT 06880

June 1, 2008

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas, Room 533
White Plains, New York 10601

Dear Judge Karas,

I am writing today to share with you a little about my friend, Peter Arest.

I moved to Connecticut nearly 25 years ago and he and his wife adopted me, and my children, into their family immediately. As our lives progressed and our families grew, so did the depth of our friendship.

About 15 years ago, I decided to pursue a new career and Peter was especially involved in guiding and supporting me in my decision to become a social worker. He was never too busy to offer encouragement or write letters of recommendation. Since he graduated from Columbia University, he encouraged me to follow his lead, which I did. I completely my master's degree at Columbia in 1999 and did a Fellowship year at Yale Psychiatric Hospital before further training at Smith College. Clearly this has truly changed my life and I now have a thriving private practice in Norwalk, Connecticut working primarily with adolescents. I am also fortunate to be the President of the Board of Directors of a group home for adolescent girls in Westport, CT, called Project Return. I feel sure that I would not have had the courage to reach for such significant goals if it were not for the faith that Peter placed in me and the encouragement of his words as I went through the lengthy and challenging process. It is Peter's vision and belief in the possibilities that so many people are now being helped.

Peter has not only been a mentor and guide for me, he has also been a model to our family of what it is to be a family man. Peter is deeply devoted to his wife, Iris, and his two children, Alana and Justin. The newest addition to the family, Allison (Justin's bride), is as much a member of this family as if she were one of their own. Peter's mother lives with the family and they provide Lily with constant care and have for many years. I have been privileged to observe Peter in his family and have seen on innumerable occasions that they are his priority. I know that being away from is family will be the hardest time of his life and I hope that his devotion to them will be a consideration in your deliberations.

Along with his focus on family, Peter is also always able to be a kind ear for those times when there is nothing more important than a friend. He is a loyal and deeply valued friend upon whom I often depend. His is a generous spirit, giving his time, his warmth, his thoughts, and most importantly his friendship. This is clearly a meaningful gift – both in the giving and in the receiving.

I would like to thank you for reading my reflections regarding Peter Arest and trust that they will help you know him in a more complete way. He is a fine man.

Sincerely,

Theresa Roth